ORIGINAL

KUTAK ROCK LLP

PAUL F. DONSBACH, # 7108-0
CHRISTOPHER D. GLOS, *Pro Hac Vice*
18201 Von Karman Avenue
Suite 1100
Irvine, California 92612-1077
Telephone: (949) 417-0999
Facsimile: (949) 417-5394
E-mail: paul.donsbach@kutakrock.com

KESSNER, DUCA, UMEBAYASHI, BAIN
& MATSUNAGA

ELTON JOHN BAIN        #2443-0
E. MASON MARTIN, III   #7295-0
19th Floor Central Pacific Plaza
220 South King Street
Honolulu, Hawaii 96813
Telephone: (808) 536-1900
Facsimile: (808) 529-7177
E-mail:    mmartin@kdubm.com

Attorneys for Plaintiff
RELIANCE INSURANCE COMPANY
(IN LIQUIDATION)

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 2 2 2005

at 12 o'clock and 20 min. P M
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RELIANCE INSURANCE COMPANY (IN LIQUIDATION), a Pennsylvania corporation,<br><br>    Plaintiff,<br><br> v.<br><br>THE DOCTORS' COMPANY, a California corporation,<br><br>    Defendant. | CIVIL CASE NO. CV 02-00159 HG-BMK<br><br>**PLAINTIFF RELIANCE INSURANCE COMPANY'S (IN LIQUIDATION) MEMORANDUM IN OPPOSITION TO THE DOCTORS' COMPANY'S MOTION TO VACATE JUDGMENT AND DISMISS COMPLAINT; CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5**<br><br>**HEARING**<br>Date: **January 9, 2006**<br>Time: **10:30 a.m.**<br>Judge: **Hon. Helen Gillmor**<br><br>**Judgment: February 13, 2004**<br>**Affirmed: May 26, 2005** |

4823-0772-0192.2/0

## TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT ................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ................................... 4

III.  ARGUMENT ................................................................................... 11

  1.  This Court's Judgment Is Not Void But Is Supported by
      an Express Finding of Diversity of Citizenship That Was
      Not Challenged on Appeal and Has Become Final ........................ 11

  2.  TDC Fails to Establish that "Exceptional Circumstances"
      Exist ............................................................................................ 15

  3.  TDC's Motion is Untimely ............................................................ 16

  4.  Subject Matter Jurisdiction Is Res Judicata Because the
      Issue Was Expressly Litigated by the Parties ............................... 20

      a.  Subject Matter Jurisdiction Is Res Judicata Even if
          Diversity Is Determined in Error ............................................ 26

  5.  Subject matter Jurisdiction Is Res Judicata Even If It Had
      Not Been Disputed and Litigated by the Parties ........................... 27

  6.  TDC Has Failed to Demonstrate That It Is a Citizen of
      Pennsylvannia .............................................................................. 28

IV.   MONETARY SANCTIONS SHOULD BE AWARDED ........................... 30

V.    IN THE ALTERNATIVE, IN THE EVENT THE COURT WERE
      TO ENTERTAIN TDC'S MOTION, RELIANCE SHOULD BE
      ALLOWED TO CONDUCT DISCOVERY ON TDC'S NEWLY-
      ASSERTED ALLEGATIONS ON ITS CITIZENSHIP ............................ 33

VI.   CONCLUSION ................................................................................ 34

CERTIFICATE OF COMPLIANCE .............................................................. 35

# TABLE OF AUTHORITIES

## Cases:

*American Nat. Bank & Trust Co. of Chicago v. Taussig*
255 F.2d 765 (7th Cir. 1958) ........................................................ 14

*Arbuthnot v. State Auto. Ins. Ass'n.*
264 F.2d 260 (10th Cir. 1959) ........................................................ 28

*Ashford v. Steuart*
657 F.2d 1053 (9th Cir. 1981) ................................................ 17, 18

*Baer v. United Services Automobile Ass'n.*
503 F.2d 393 (2nd Cir. 1974) ........................................................ 28

*Bank One, Texas, N.A. v. Montle*
964 F.2d 48 (1st Cir. 1992) ........................................................ 29

*Basso v. Utah Power & Light Co.*
495 F.2d 906 (10th Cir. 1974) ........................................................ 14

*Bell v. Eastman Kodak Co.*
214 F.3d 798 (7th Cir. 2000) ........................................................ 15

*Berardinelli v. Castle & Cooke, Inc.*
587 F.2d 37 (9th Cir. 1978) ........................................................ 27

*Bitinas v. Roback*
2004 WL 327137 (D.Con. 2005) ........................................................ 28

*Brillhart v. Excess Insurance Co. of America*
316 U.S. 491 (1942) ........................................................ 22, 23, 24

*Carter v. United States*
973 F.2d 1479 (9th Cir. 1992) ........................................................ 16

*Chambers v. NASCO, Inc.*
501 U.S. 32 (1991) ........................................................ 30, 32

*Chicot County Drainage Dist. v. Baxter State Bank*
308 U.S. 371 (1940) ........................................................ 20, 27

*Chubb Custom Ins. Co. v. Untied Services Automobile Ass'n.*
   WL 2475314 (D.N.J. 2005) ..................................................................28

*Florida Physician's Ins. Co., Inc. v. Ehlers*
   8 F.3d 780 (11th Cir. 1993) ..................................................................16

*Ford v. Temple Hospital*
   790 F.2d 342 (3rd Cir. 1986) ................................................................31

*Government Employees Insurance Co. v. Dizol*
   133 F.3d 1220 (9th Cir. 1998) ..............................................................22

*Grubb v. Public Utilities Commission*
   281 U.S. 470 (1930) .............................................................................20

*Gschwind v. Cessna Aircraft Co.*
   232 F.3d 1342 (10th Cir. 2000) ............................................................15

*Heyman v. M. L. Marketing Co.*
   116 F.3d 91 (4th Cir. 1997) ..................................................................16

*Independence Mortgage Trust v. White*
   446 F. Supp. 120 (D. Or. 1978) ............................................13 14, 27

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*
   456 U.S. 694 (1982) .............................................................................20

*Jones v. Lincoln Elec. Co.*
   188 F.3d 709 (7th Cir. 1999) ................................................................15

*Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.*
   624 F.2d 822 (8th Cir. 1980) ................................................................26

*Kantor v. Warner Lambert Co.*
   265 F.3d 853 (9th Cir. 2001) ................................................................29

*Kantor v. Wellesley Galleries, Ltd.*
   704 F.2d 1088 (9th Cir. 1983) ..............................................................29

*Kenyon & Kenyon v. Advanced Engineering Research & Dev. Corp.*
   1998 WL 318712 (S.D.N.Y. 1998) ......................................................14

*L. Mcafee v. United States*
    2005 WF 3287227 (E.D. Cal. 2005)................................................................19

*LeBlanc v. Cleveland*
    248 F.3d 95 (2nd Cir. 2001)............................................................................29

*Lindauer v. Rogers*
    91 F.3d 1355 (9th Cir. 1996) .........................................................................33

*Lipsig v. National Student Marketing Corp.*
    663 F.2d 178 (D.C. Cir. 1980).......................................................................31

*Loftus v. Southeastern Penn. Transp. Auth.*
    8 F. Supp. 2d 458 (ED PA 1998)...................................................................30

*Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*
    50 F.3d 730 (9th Cir. 1995) ...........................................................................30

*Molloy v. Wilson*
    878 F.2d 313 (9th Cir. 1989) .........................................................................17

*In re Pacific Far East Lines, Inc.*
    889 F.2d 242 (9th Cir. 1989) .........................................................................17

*Patapoff v. Vollstedt's Inc.*
    267 F.2d 863 (1959) ......................................................................................12

*Price v. Seydel*
    961 F.2d 1470 (9th Cir. 1992) .......................................................................16

*Roads v. Houston*
    258 F. Supp. 546 (D. Neb. 1966)
    *aff'd,* 418 F.2d 1309 (8th Cir. 1966) .............................................................21

*Roadway Express, Inc. v. Piper*
    447 U.S. 752 (1980) ................................................................................30, 31

*Rodriguez v. Mitchell*
    252 F.3d 191 (2nd Cir. 2001).........................................................................17

*Sellers v. Mineta*
    350 F.3d 706 (8th Cir. 2003) .........................................................................15

*Servants of Paraclete v. Does*
    204 F.3d 1005 (10th Cir. 2000) ...................................................15

*Staefa Control System, Inc. v. St. Paul Fire & Marine Ins. Co.*
    875 F. Supp. 656 (N.D. Cal. 1994)..............................................17

*Stafford v. Russell*
    220 F.2d 853 (9th Cir. 1955) .......................................................13

*Tuck v. United Services Auto. Ass'n.*
    859 F.2d 842 (10th Cir. 1988) .....................................................28

*Yanow v. Weyerhaeuser Steamship Co.*
    274 F.2d 274 (9th Cir. 1959)...............................11, 12, 13, 14, 26


**Statutes:**

28 U.S.C. § 2201(a) ...........................................................24, 25

28 U.S.C. § 1927...................................................................30

FED. RULE CIV. P., Rule 8(a).....................................................18

FED. RULE CIV. P., Rule 59(b) ...................................................17

FED. RULE CIV. P., Rule 60(b) ...........................................16, 17, 18

FED. RULE CIV. P., Rule 60(b)(1)...........................................17, 18

FED. RULE CIV. P., Rule 60(b)(2)................................................17

FED. RULE CIV. P., Rule 60(b)(4)..............................11, 12, 15, 16, 21

FED. RULE CIV. P., Rule 60(b)(6)...............................12, 14, 15, 16

**Treatise:**

RESTATEMENT (SECOND) OF JUDGMENTS § 12 (1982) ...........................20

Dan B. Dobbs, *The Validation of Void Judgments:*
    *The Bootstrap Principle,* 53 Va. L. Rev. 1003 (1967)...................15

# MEMORANDUM IN OPPOSITION

## I.    SUMMARY OF ARGUMENT

Plaintiff Reliance Insurance Company (in Liquidation) ("Reliance") brought this action almost four years ago to obtain reimbursement for $2 million that it was forced to pay to settle the underlying medical malpractice claims, after Defendant The Doctors' Company ("TDC") refused to contribute its full policy limits to the settlement of behalf of its insured, Straub Clinic & Hospital, Inc. ("Straub").  On cross-motions for summary judgment, this Court determined that Reliance, as Straub's excess insurer, was entitled to reimbursement in the amount of $2 million under its claim for express and equitable subrogation against TDC, as primary insurer.  TDC brought an appeal, and the United States Court of Appeals for the Ninth Circuit affirmed this Court's Judgment.

Although TDC **admitted** and agreed throughout these proceedings that the parties have diverse citizenship, TDC now contends that the Judgment is void for lack of diversity jurisdiction.  TDC's Motion to Vacate the Judgment is a transparent attempt to delay and obstruct Reliance's collection of the Judgment. Throughout almost four years of litigation in this matter, TDC repeatedly agreed and admitted that the parties have diverse citizenship, and it never challenged or took issue with this Court's finding of diverse citizenship.  Beginning at the outset of this action when this Court ordered the parties to submit briefs on whether the

Court had jurisdiction over Reliance's claims, this Court gave TDC repeated opportunities to state its position on jurisdiction. On each occasion, TDC represented that the parties had diverse citizenship, and it agreed that the Court properly had diversity jurisdiction over this matter.

TDC's Motion must be denied as untimely and barred by this Court's Judgment and the Court of Appeals' decision to affirm the Judgment on appeal. This Court's Judgment is not void but, rather, is supported by an express finding of diverse citizenship that was not challenged on appeal and has become final. The doctrines of res judicata and collateral estoppel bar any further litigation of this issue. Moreover, TDC's Rule 60(b) Motion is untimely, as it was not brought within a "reasonable time" as required by Rule 60(b) of the Federal Rules of Civil Procedure. TDC's delay in raising this issue – two years after Judgment and several months after the appeal has been concluded – precludes it from raising it now.

Furthermore, TDC's evidence is directed at establishing only that certain of its policyholders (which TDC refers to as "members") are "residents" of Pennsylvania. TDC makes no effort to show that any of its members are <u>citizens</u> of Pennsylvania, as would be required to bring a Rule 60(b) motion. TDC has presented no competent evidence that any of its members are Pennsylvania citizens. Residency, alone, does not establish citizenship. Citizenship is a status

that requires domicile – that is, an intention to remain. TDC has presented no evidence whatsoever to satisfy this elementary aspect of citizenship. On this basis alone, its Motion must be denied.

TDC's Motion was filed only after Reliance was forced to file its motion to satisfy this Court's Judgment against the surety on the supersedeas bond. Reliance has diligently sought TDC's voluntary payment of the Judgment, but TDC has refused to pay. Reliance had no alternative than to file its motion on the appeal bond. TDC's Motion is completely devoid of merit and is directed solely at obstructing and delaying Reliance's efforts to collect the Judgment. TDC's Motion must be denied, and this Court should impose monetary sanctions against TDC. Reliance will submit a declaration setting forth the amount of its attorneys' fees incurred in opposing this Motion, and the sanctions award should be no less than that amount.

This Court's Judgment was properly decided and is now final after affirmance by the Ninth Circuit Court of Appeals. TDC has delayed payment of the amount owed to Reliance for far too long, and this Court should not tolerate TDC's abuse of Rule 60(b)'s extraordinary relief provisions in this manner. TDC's Motion must be denied, and TDC should be sanctioned for its bad faith in bringing this Motion.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

On March 18, 2002, Reliance filed an action in this Court for express and equitable subrogation, equitable contribution, indemnity and declaratory relief (the "Complaint"). On April 20, 2002, TDC filed a motion to dismiss. On May 30, 2002, TDC filed a scheduling conference statement stating that jurisdiction was undisputed. *See* TDC's Scheduling Conference Statement filed on or about May 30, 2002.

On August 5, 2002, the Court, acting *sua sponte*, ordered TDC and Reliance to brief whether it had jurisdiction over the action. *See* Court Minute Order filed on or about August 5, 2002. The Court also indicated that it would consider, after the jurisdiction issue was briefed, whether continued jurisdiction over Reliance's claim for declaratory relief was proper. While the Court may have primarily focused on the declaratory relief claim, the Order required the parties to address whether the Court had diversity jurisdiction in the first instance, so that the Court could consider whether to exercise jurisdiction over the declaratory relief claim.

On August 8, 2002, TDC filed a memorandum in which it agreed that the Court had jurisdiction over the action and all of Reliance's claims, including the claim for declaratory relief. *See* TDC's Memorandum Re Jurisdiction filed on or about August 8, 2002. On the same day, Reliance filed a memorandum and pointed out that because the Court had jurisdiction over Reliance's claims for

monetary relief, it must exercise jurisdiction over the claim for declaratory relief. *See* Reliance's Memorandum Re Jurisdiction filed on or about August 8, 2002.

At the August 9, 2002 hearing on TDC's motion to dismiss, TDC's conduct again confirmed the existence of diversity jurisdiction. *See* August 9, 2002 Court Transcript of Motion to Dismiss Hearing ("Transcript") attached as Exhibit 1 to Request for Judicial Notice. During the hearing, the Court raised questions about the substantive law to be applied. The parties' counsel discussed the possibility of applying Hawaii law on the basis that the underlying claims arose there, or the possibility of applying the law of California or Pennsylvania, in part on the basis of the citizenship of, respectively, TDC and Reliance. Without any objection from TDC's counsel, Reliance's counsel explained that, in addition to Hawaii law, "[t]he other two obvious alternatives would be the law of California, where the Doctors' Company is incorporated, or, Pennsylvania, where Reliance is incorporated." *See* Transcript at 13:1-4. Later in the proceedings, the Court again addressed the question of jurisdiction:

> I did ask you to address the question of the jurisdiction, and you did so. But I'm having some difficulty with this, because it appears that it should be Hawaii law; it appears that there are some issues of first impression; and, it appears that, whatever happened in that case over in state court was important to the resolution in this case.

*Id.* at 21:12-17.

In addressing the Court's concerns, counsel for Reliance stated that "[t]here's no dispute that it's a diversity case. The two parties have citizenship in different states. . . ." *Id.* at 23:10-15. TDC's counsel never objected or took any issue with this statement. Later in the hearing, counsel for Reliance again stated on the record in reference to choice of law issues that "[i]t is a diversity case, and it's not unusual to have issues arise in diversity cases that may not have expressly been decided on all fours in the state court." *Id.* at 32:6-9. Again, TDC never objected that diversity did not exist.

On August 25, 2002, the Court entered an Order denying TDC's motion to dismiss and ruled that it had jurisdiction over the action and would exercise that jurisdiction over the claim for declaratory relief as well. *See* Order Denying TDC's Motion to Dismiss Complaint and Exercising Jurisdiction Under the Declaratory Judgment Act filed on or about August 25, 2002.

On November 25, 2002, TDC filed a motion for summary judgment. Nowhere in TDC's motion was there any objection or argument that the Court lacked jurisdiction or that the parties did not have diverse citizenship. On December 10, 2002, Reliance filed a motion for partial summary judgment.

On December 11, 2002, TDC filed a motion for leave to file a Counterclaim against Reliance. On January 17, 2003, TDC filed a reply brief in support of its request to file an amended answer. *See* TDC's Reply Memorandum in Support of

Its Motion for Leave to File First Amended Answer to Complaint filed on or about January 17, 2003. In its reply brief, TDC included a discussion under the heading: "This Court Has Jurisdiction Over TDC's Proposed Counterclaim". TDC argued that it had the "unequivocal right to assert a counterclaim for setoff against Reliance in this forum [referring to the district court]." *See* Motion for Leave to Amend at 10. TDC's motion for leave was granted on or about January 31, 2003.

On March 25, 2003, TDC answered the First Amended Complaint and filed a Counterclaim. *See* TDC's Answer to First Amended Complaint filed on or about March 25, 2003. In its Counterclaim, TDC expressly alleged that the parties had diverse citizenship. TDC alleged that it is organized and existing under the laws of the State of California with its principal place of business in California. *See* Counterclaim at ¶ 1. TDC further alleged that subject matter jurisdiction exists under 28 U.S.C. § 1332(a)(1) because the controversy was between citizens of different states. *See id.* at ¶ 4.

Reliance filed a motion to dismiss TDC's Counterclaim, and TDC filed an opposition on May 9, 2003. TDC argued that "Reliance has *subjected itself* to the jurisdiction of this court and should not be permitted now to argue that the Court's power is artificially limited." *See* Motion to Dismiss at 6 (emphasis in original). On June 17, 2003, the Court dismissed TDC's Counterclaim, holding that it should abstain from exercising jurisdiction over the Counterclaim because the

Commonwealth Court of Pennsylvania has exclusive jurisdiction on the issue. *See* Order Granting Plaintiff's Motion for Dismissal of Counterclaim for Set Off filed on or about June 17, 2003. TDC continued to argue the Court had jurisdiction over Reliance's claims and TDC's Counterclaim all the way through an appeal.

On September 25, 2003, this Court ruled on the parties' cross-motions for summary judgment. *See* Order Denying TDC's Motion for Summary Judgment Filed on November 25, 2002, and Recognizing TDC's Cross-Motion Filed on February 6, 2003 as Moot, and Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment Filed on January 8, 2003, and Denying Reliance's Motion for a Continuance under Federal Rules of Civil Procedure 56(f) Raised in Its Memorandum in Opposition of February 4, 2003 to TDC's Motion for Summary Judgment filed on or about September 25, 2003. The Court entered summary judgment in favor of Reliance and awarded the amount of $2 million under Reliance's claim for express and equitable subrogation. In its Summary Judgment Order, the Court expressly determined that the parties had diverse citizenship and that diversity jurisdiction existed. The Court stated in its Order that "[t]he instant case is a diversity action." *See id.* at 15.

On October 9, 2003, TDC filed a motion for reconsideration on the ground that, among other things, it was entitled to relief from judgment under Rule 60(b) based on newly-discovered evidence. That motion was denied on January 29,

4823-0772-0192.2/8                     - 8 -

2004.

On February 13, 2004, this Court entered judgment in favor of "[Reliance], a Pennsylvania corporation, and against [TDC], a California corporation.". Reliance's motion for attorneys' fees was granted, and Reliance was awarded $200,000 for its attorneys' fees incurred in this Court. *See* Judgment in Civil Case entered on or about February 13, 2004.

On March 12, 2004, TDC filed a notice of appeal of this Court's Judgment. In conjunction with the appeal, TDC submitted a Civil Appeals Docketing Statement. *See* United States Court of Appeals for the Ninth Circuit, Civil Appeals Docketing Statement, attached as Exhibit 2 to Reliance's Request for Judicial Notice, filed and served herewith. TDC once again admitted that diversity of citizenship existed. Under the "Jurisdiction" section of the Docketing Statement, TDC responded: "Diversity."

On August 5, 2004, TDC filed its Opening Brief with the Ninth Circuit Court of Appeals. *See* TDC's Opening Brief, attached as Exhibit 3 to Reliance's Request for Judicial Notice, filed and served herewith. Nowhere in TDC's Opening Brief did TDC raise any issue with respect to this Court's finding that the parties had diverse citizenship. Rather, TDC stated in its Opening Brief that the Court of Appeals had jurisdiction to hear the appeal.

TDC filed a Reply Brief on November 1, 2004. In its Reply Brief, TDC reiterated its argument that this Court erred in dismissing its Counterclaim. *See* Reply Brief at 1, attached as Exhibit 4 to Reliance's Request for Judicial Notice, filed and served herewith. This argument rested in part on TDC's position that this Court had diversity jurisdiction over Reliance's claims and, in TDC's view, should also have exercised its jurisdiction over TDC's Counterclaim. *Id.* at 1. TDC emphasized that "Reliance brought its own claims, based upon the same state statutory scheme, to the district court sitting in diversity." *Id.* at 2-3.

On May 26, 2005, the Court of Appeals affirmed the Court's February 13, 2004 judgment in favor of Reliance. Reliance was subsequently awarded its attorneys' fees incurred on appeal.[1]

On December 9, 2005, almost four years after this action was filed – and after failing to raise any issue on appeal with respect to this Court's finding of diverse citizenship – TDC filed this Motion to Vacate the Court's Judgment on the ground that the parties are not diverse.

---

[1]    The amount of attorneys' fees to be awarded to Reliance has not yet been determined by the Court of Appeals. This issue was referred to the Circuit Mediator. TDC has not meaningfully participated in this process, and Reliance has requested that the issue be referred back to the Court of Appeals for a ruling.

## III.  ARGUMENT

### 1.  This Court's Judgment Is Not Void But Is Supported by an Express Finding of Diversity of Citizenship That Was Not Challenged on Appeal and Has Become Final

Despite its repeated admissions and agreement that the parties had diverse citizenship and that diversity jurisdiction existed, TDC now maintains that the parties were not diverse and the judgment should be voided under Rule 60(b)(4) of the Federal Rules of Civil Procedure.  Rule 60(b)(4) is an extraordinary remedy that only applies if it can be demonstrated that a judgment is void.  TDC's Motion must be denied because the Judgment in this case is not void.  TDC's Motion amounts to a collateral attack on this Court's Judgment on a factual finding of diverse citizenship that TDC failed to challenge on appeal.  The courts have consistently held that Rule 60(b)(4) cannot be used in these circumstances.

In *Yanow v. Weyerhaeuser Steamship Co.*, 274 F.2d 274 (9th Cir. 1959), the court held that it is "clear that if the court in question determines that [existence of diversity of citizenship and the requisite amount in controversy] requirements are satisfied, and that it has jurisdiction, it is certain that such a determination, even if demonstrably wrong, is not a nullity or a truly void judgment, for it cannot be questioned collaterally."  *Id.* at 279.  The Ninth Circuit went on to reason that "certain facts are necessary to be alleged and proved in order to set the machinery of the law in motion, but which, when properly alleged, and established to the

satisfaction of the court is as conclusively presumed to be correct as its finding with respect to any other matter in issue between the parties." *Id.* The *Yanow* court held that allegations of diversity and the amount in controversy are such facts, and when those facts are found by the court, they cannot be questioned collaterally. *Id.* at 279-280.

In *Yanow*, the Ninth Circuit held that the judgment at issue was not void, and hence the motions were not properly made under subdivision (4) of Rule 60(b). *Id.* at 281. Rather, the court held that the applicable subdivision of Rule 60(b) was (6), which refers to "any other reason justifying relief from the operation of the judgment." *See* FED. R. CIV. P. 60(b)(6).

After properly classifying the motion under FRCP, Rule 60(b)(6), the court examined whether the motion was timely. *Id.* at 281. The court relied in part on *Patapoff v. Vollstedt's Inc.*, 267 F.2d 863, 866 (1959). The Ninth Circuit found that the *Patapoff* court "took pains to note that the applicant in presenting her motion "made that showing very promptly." *Id.* at 281 (quoting *Patapoff*, 267 F.2d at 866). The motion was made 10 days after the order against which it was directed. *Id.* By contrast, the Ninth Circuit found that the appellee in *Yanow* delayed almost 11 months after the date of the original decision to move under Rule 60(b). *Id.* The court considered this to be untimely in light of the fact it determined the period was substantially longer than the eight months, which it had

held to be an unreasonable time in *Stafford v. Russell*, 220 F.2d 853, 885 (9th Cir. 1955). *Id.*

The *Yanow* decision is consistent with the similar decision of another court in the Ninth Circuit. In *Independence Mortgage Trust v. White*, 446 F. Supp. 120, 121 (D. Or. 1978), the defendant challenged the jurisdiction of the district court following its grant of summary judgment for the plaintiff, and after the time for appeal expired. In its motion to vacate the judgment, the plaintiff contended that, at the time suit was filed, no diversity jurisdiction had existed. *Id.* Although the court in *Independence Mortgage* determined that its finding of diversity jurisdiction was "in error" and that diversity had not existed, it held, relying on the Ninth Circuit's opinion in *Yanow*, that "the [erroneous] finding of jurisdiction is res judicata, and cannot be reversed by this court (or apparently by any other court.)."

The *Indepedence Mortgage* court reasoned as follows:

> Once final judgment is entered, however, the situation is different. At this stage, when the proceedings are completed, the federal court has expressly or impliedly found that it has subject matter jurisdiction and the parties have exhausted or waived (by inaction) their rights to review such finding. The finding is thus res judicata. Put another way, the district court has jurisdiction to determine its subject matter jurisdiction over an action. . . .

> But where a court acts in a type of case within its competency (e.g., diversity case), has personal jurisdiction over the parties, and erroneously finds that the particular case falls within its general grant of authority, *the judgment is not void*. A comment to the Restatement covers the precise situation as follows:

- 13 -

> "Thus, if an action is brought in a federal court on the ground of diversity of citizenship, the judgment is not void although in fact there was not the necessary diversity of citizenship." *Restatement,* **[Judgments]** *supra s 7*, comment c.

*Id.* at 123 (emphasis added).

Even TDC concedes in its Motion that *Yanow* and *Independence Mortgage* are good law in the Ninth Circuit. On this basis alone, TDC's Motion must be denied.[2]

As demonstrated by *Yanow* and *Independence Mortgage*, Rule 60(b) is not intended as, and is not a substitute for, a direct appeal from a purportedly erroneous judgment and was not designed to circumvent the need for finality and timely disposition of cases. *See American Nat. Bank & Trust Co. of Chicago v. Taussig*, 255 F.2d 765 (7th Cir. 1958). A judgment may be vacated as void under

---

[2]    The non-binding authority TDC cites from other jurisdictions do not support its Motion. For example, the primary decision upon which TDC relies – *Basso v. Utah Power & Light Co.*, 495 F.2d 906 (10th Cir. 1974) – does not apply here because the motion to vacate in *Basso* was "filed along with a timely notice of appeal." *See Independence Mortgage*, 446 F. Supp. at 123 ("The many cases defendant cites involving dismissals . . . almost all involve action taken prior to final judgment. . . .").

TDC's reliance on *Kenyon & Kenyon v. Advanced Engineering Research & Dev. Corp.*, 1998 WL 318712 (S.D.N.Y. 1998), and other direct appeals is also misplaced. None of the cases cited by TDC supports the proposition it advocates here: that nearly two years after the facts underlying jurisdiction have been litigated and decided, by both the district court and appellate court, those final decisions may be reversed on an untimely motion to vacate. In the Ninth Circuit, the holding in *Yanow* is binding precedent, and even if the prior determinations concerning diversity were "demonstrably wrong" (which Reliance disputes), the judgment is not void; it is final, and cannot be disturbed at this late date.

Rule 60(b)(4) only where there is a plain usurpation of power, in that a court wrongfully extends its jurisdiction beyond the scope of its authority.    *See Gschwind v. Cessna Aircraft Co.*, 232 F.3d 1342 (10th Cir. 2000).

A commentator, in *The Validation of Void Judgments*, aptly summarizes the reasons for denying TDC's Motion:

> A rule that voids a solemn judgment whenever one of the parties chooses to attack it is a rule asking for trouble. A judgment ought to settle a dispute, and rights and titles derived from a judgment today ought not be overturned twenty years from now. No society can be stable if judicially secured rights are not secure at all.

*See* DAN B. DOBBS, *The Validation of Void Judgments: The Bootstrap Principle*, 53 Va. L.Rev. 1003, 1003 (1967).

### 2.    TDC Fails to Establish that "Exceptional Circumstances" Exist

Rule 60(b) is an extraordinary remedy and is granted only in exceptional circumstances. *See Sellers v. Mineta*, 350 F.3d 706, 716 (8th Cir. 2003); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999). In general, Rule 60(b) relief is available only on a ground that could not have been presented in a direct appeal. *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000) (holding no relief for lack of subject matter jurisdiction where that issue could have been raised on direct appeal).

Further, the extraordinary relief of vacating judgment pursuant to Rule 60(b) rests in the sound discretion of this Court. *Carter v. United States*, 973 F.2d 1479, 1489 (9th Cir. 1992). A district court has discretion to deny relief under Rule 60(b) where a party's culpable conduct led to the issue before the court. *See Price v. Seydel*, 961 F.2d 1470, 1473 (9th Cir. 1992); *Heyman v. M. L. Marketing, Co.*, 116 F.3d 91, 94 (4th Cir. 1997); *Florida Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783-84 (11th Cir. 1993).

TDC has failed to make any showing that exceptional circumstances exist to require the extraordinary remedy it seeks in vacating not only the district court judgment but also the appellate court's affirmation of that judgment. To the contrary, TDC is solely responsible for the failure to raise this issue in this Court or in the Court of Appeals. At the outset of this action, this Court ordered the parties to submit briefs stating their positions on whether diversity jurisdiction exists. TDC responded that the parties were in fact diverse, and it can hardly complain that almost four years later it has had a Judgment entered against it that is now final after an unsuccessful appeal.

### 3.    TDC's Motion Is Untimely

Even if TDC could somehow demonstrate that exceptional circumstances exist, Rule 60(b)(4) still requires that its Motion be made within a "reasonable

time."[3]  *See* FED. RULE CIV. P. 60(b); *Molloy v. Wilson*, 878 F.2d 313, 316, (9th Cir. 1989).  TDC has failed to offer any evidence demonstrating that its Motion is timely by addressing why, after nearly four years of protracted litigation – often specifically involving jurisdictional issues – it only now came to realize it is a corporate citizen of Pennsylvania.  Further, TDC has made no offer of proof as to why this issue was not brought before the appellate court.

What is "reasonable" depends upon the specific factual circumstances of each case and certain systemic issues, including society's interest in finality, whether the moving party acted with diligence, the moving party's ability to have brought the motion earlier, and whether the nonmoving party suffered prejudice. *See In re Pacific Far East Lines, Inc.*, 889 F.2d 242, 249 (9th Cir. 1989); *Rodriquez v. Mitchell*, 252 F.3d 191, 201 (2nd Cir. 2001) (holding that motion brought three-and-one-half years after entry of judgment not reasonable time).  *See Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981); *Staefa Control System, Inc. v. St. Paul Fire & Marine Ins. Co.*, 875 F. Supp. 656 (N.D. Cal. 1994).

---

[3]  FRCP 60(b)(1) limits the time to bring a motion for "mistake, inadvertence, surprise, or excusable neglect" to not more than one year after the judgment was entered.  FRCP 60(b)(2), newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b), is also limited to not more than one year after judgment was entered.  TDC's purported "mistake" in identifying its appropriate citizenship or "new" evidence argument are more appropriately brought before the Court pursuant to these subsections (rather than subsections (4) and (6), and should be denied on the ground that it exceeds the one year time limitation.

For example, in *Ashford*, the district court denied plaintiff leave to file a complaint because the plaintiff had improperly named a party defendant and failed to allege facts to satisfy Rule 8(a) of the Federal Rules of Civil Procedure. *Id.* at 1054. The plaintiff's Rule 60(b) motion for reconsideration was filed more than 30 days after the order denying leave to file. *Id.* The court construed the plaintiff's motion to reconsider as a request for relief from judicial "mistake" under 60(b)(1) and denied the motion as untimely. *Id.* at 10540-1055.

In holding the motion untimely, the court reasoned that the facts of each case must be taken into account in determining what constitutes a "reasonable time." *Id.* at 1055. A review of those facts must also take into consideration the interest of finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties. *Id.* The court held that the time for appeal had passed and, therefore, "the interest of finality must be given great weight." *Id.* It also held that the plaintiff failed to provide any reason for failing to timely challenge the court's ruling as there was nothing to suggest his awareness of the court's ruling was impeded or that he did not have access to all the relevant facts and law. *Id.*

TDC's Motion is similarly absent of any explanation as to why it failed to identify its purported place of citizenship for nearly four years. Throughout this lawsuit, TDC has not only asserted, but in fact advocated, the existence of diversity

jurisdiction. The presence of diversity jurisdiction was a major component in TDC's appellate argument that the district court erred in dismissing its counterclaim for setoff. *See* TDC's Opposition to Motion to Dismiss and TDC's appellate Opening Brief and Rely Brief.

Further, TDC's attempt to create a lengthy delay in execution of the judgment constitutes a substantial prejudice on the prevailing party. *See L. Mcafee v. United States*, 2005 WL 3287227 at * 2 (E.D. Cal. 2005). Judgment was entered on February 13, 2004. The appellate court affirmed the judgment on May 26, 2005. TDC failed to satisfy the judgment against it and Reliance was forced to bring a Motion to enforce the supersedeas bond, which is currently set for hearing on January 9, 2006. TDC's Motion is brought to further delay satisfying the amount owed under the judgment and the delay constitutes a substantial prejudice on Reliance as it is prevented from collecting assets as required in the liquidation proceedings in Pennsylvania.

In sum, TDC fails to demonstrate that extraordinary circumstances exist to warrant vacating the judgment and the appellate ruling affirming the judgment. TDC also fails to provide a scintilla of evidence demonstrating that its Motion should be considered brought in a timely manner. The mere absence of this prerequisite information should alone be grounds for the Court to exercise its discretion and deny TDC's Motion.

**4.     Subject Matter Jurisdiction Is Res Judicata Because the Issue Was Expressly Litigated by the Parties**

A federal court has authority to pass upon its own jurisdiction, and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action. *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377 (1940). The United States Supreme Court questioned "whether a party's failure to raise the question of diversity jurisdiction in the proceeding to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit." *Id.* at 378. The Court held that affirmation of such a "view is contrary to the well-settled principle that res judicata may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end.'" *Id.* at 378 (quoting *Grubb v. Public Utilities Commission*, 281 U.S. 470 (1930). In *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982), the Court held that the principles of res judicata apply to issues of subject matter jurisdiction, and that "[a] party that has had an opportunity to litigate the question of subject matter jurisdiction may not . . . reopen that question in a collateral attack upon adverse judgment." *See also* RESTATEMENT (SECOND) OF JUDGMENTS § 12 (1982) ("judgment precludes the parties from litigating the question of the court's subject

matter jurisdiction").

In *Rhodes v. Houston*, 258 F. Supp. 546 (D. Neb. 1966), *aff'd*, 418 F.2d 1309 (8th Cir. 1966), the finding that two district judges dismissed civil rights actions on the ground that the complaint failed to state a claim on which relief could be granted and that the defendants were immune from suit, was held to constitute an implicit acceptance by the judges of the plaintiff's original position that they had jurisdiction of the subject matter of the litigation. The judgments of dismissal were affirmed on appeal and certiorari was denied by the United States Supreme Court. The court held that the jurisdictional issue was res judicata and denied the plaintiff's motion under Rule 60(b)(4) to vacate the judgments, in which motion he reversed his position and claimed that the judgments of dismissal were void for lack of subject matter jurisdiction. The district court judges' judgments accepting jurisdiction was found not to be void. The court stated that the judgments were subject to reversal on appeal if adjudged to be erroneous, but on its affirmance on appeal and the coming down of the Court of Appeal's mandate it became res judicata on the issue of subject matter jurisdiction.

The proceedings in this case make clear that the issue of subject matter jurisdiction was litigated. On August 5, 2002, this Court exercised its authority – despite TDC's admission that jurisdiction was proper – to decide whether subject matter jurisdiction existed when it *sua sponte* issued a Minute Order ruling that it

would "consider the factors in *Government Employees Insurance Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998) and *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) to determine whether its continued exercise of jurisdiction over this declaratory judgment action is proper." The focus of the Minute Order on the one claim did not foreclose the fact that the Court ordered TDC and Reliance to address "whether the exercise of jurisdiction over the action [was] proper." In other words, the Court directed the parties to brief the diversity jurisdiction issue and did not limit the analysis to the declaratory relief claim.

Even if the focus were limited to the declaratory relief claim, the analysis inherently required a determination as to subject matter jurisdiction on all the claims. In *Government Employees Insurance Co.*, a case the Court considered in ruling that diversity jurisdiction existed, the court held that before a court determines whether a declaratory relief claim may be entertained by the court's discretionary power, the court must determine that the lawsuit presents an actual case or controversy under the United States Constitution and fulfills the statutory jurisdictional prerequisites. *Government Employees Insurance Co.*, 133 F.3d at 1222-1223. It is only if the lawsuit passes "constitutional and statutory muster that the district court may entertain the declaratory relief claim. *Id.* Therefore, the Court had to reach the conclusion based on the facts that diversity jurisdiction existed.

On August 8, 2002, pursuant to the Court's order that the parties submit briefs on the subject matter jurisdiction issue, TDC filed a pleading entitled Memorandum Re Jurisdiction.    In TDC's brief, it argues that "given the considerations as set forth in [citing *Government Employees Ins. Co.* and *Brillhart*], this Court may exercise jurisdiction over this action for Declaratory Relief." *See* TDC Memorandum Re Jurisdiction at 2.  TDC went on to argue:

> Specifically, jurisdiction may be proper because the coverage issues raised by this case do not require the Court to engage in a needless determination of state law issues, it does not appear that [Reliance] has engaged in forum shopping, and a determination of the present coverage dispute does not require duplicative litigation.  In addition, the Court's jurisdiction over this action will settle all aspects of the instant controversy, clarify the respective legal relations of the parties hereto, and will not result in entanglement between the state and federal court systems. *Id.*

TDC concluded:  "TDC respectfully submits that jurisdiction by this Court over the instant action may be proper." *Id.* at 3.

TDC's long ago admitted that the parties have diverse citizenship and on that basis the district court could hear the declaratory relief claim.    TDC acknowledged that the district court's jurisdiction over the action will settle all aspects of the instant controversy.  TDC had every opportunity to attack subject matter jurisdiction by arguing that under *Government Employees Ins. Co.* the statutory jurisdictional requirements had not been met.  TDC did not raise this argument when it had the opportunity, and it is far too late for it to do so now.

Although the Ninth Circuit has held that a district court may proceed with a declaratory judgment action without *sua sponte* addressing its discretion under the Declaratory Judgment Act, the Ninth Circuit has stated that "the preferable practice is for the district court expressly to consider whether a properly filed declaratory judgment action should be entertained and to record its reasons for doing so." *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1226 (9th Cir. 1998) (en banc). This Court did just that on or about August 25, 2002 and exercised its jurisdiction under the Declaratory Judgment Act. The Court reasoned:

> The instant action seeks a declaratory judgment. The Declaratory Judgment Act, 28 U.S.C. § 2201 provides a remedy to litigants who are seeking a judicial declaration of rights. Section 2201(a) provides:
>
>> In a case of actual controversy within its jurisdiction, . . ., any court of the United States, upon the filing of an appropriate pleading, **may** declare the rights and other legal relations of any interested party seeking such declaration. . . . [citing 28 U.S.C. §2201(a) (emphasis added by the Court)].

*See* 8/25/02 Order at 8.

This Court recognized that the Declaratory Judgment Act requires a separate basis for jurisdiction and that in "the instant action jurisdiction is based on diversity." *Id.* at 8. The Court's Order also reflects that TDC had agreed to diversity of citizenship by arguing that Hawaii law should apply to the action. *Id.* at 12.

Several months later, TDC again admitted that the parties had diverse citizenship. In its Counterclaim, TDC alleged that it existed "under the laws of the State of California with its principal place of business in California", see TDC Counterclaim to Plaintiff's First Amended Complaint Filed March 14, 2003 ("TDC Counterclaim") at ¶ 1, and "subject matter jurisdiction exists under 28 U.S.C. § 1332(a)(1), as the controversy is between citizens of different states and the amount in controversy exceeds $75,000." See TDC Counterclaim at ¶ 4.

On appeal, TDC failed to raise any issue concerning this Court's diverse citizenship finding. Instead, TDC took the contrary position and argued that this Court erred in refusing to extend its diversity jurisdiction to hear TDC's Counterclaim. TDC's Opening Brief on appeal makes its position clear. TDC argued that "[t]he most obvious flaw in the District Court's reasoning" was to dismiss [its] counterclaim in setoff under the *Burford* Doctrine. *Id.* at 25-26 (emphasis original). The *Burford* Doctrine generally provides that a federal court must decline to interfere with the proceedings or orders of state administrative agencies. *Id.* The Court correctly reasoned that the *Burford* Doctrine applied as to TDC's counterclaim and dismissed the setoff claim. However, on appeal, TDC argues that the setoff claim should not have been dismissed but should have been retained and heard by the federal court. Such a position is directly contrary to TDC's newly-asserted position that the Judgment is void for lack of diversity of

citizenship.

**a.    Subject Matter Jurisdiction Is Res Judicata Even if Diversity Is Determined in Error**

Competing policies are at issue in vacating a judgment as void for lack of subject matter jurisdiction:  observation of limits on federal jurisdiction and the need for judgments that are final.  When the challenge is based on an alleged erroneous interpretation, and the judgment is not appealed, thus becoming final, the policy favoring certainty in judicial resolution of controversies must prevail. *See Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.*, 624 F.2d 822 (8th Cir. 1980).  The *Kansas City Southern* court went on to hold that "since federal courts have jurisdiction to determine jurisdiction, an error in making a decision to grant jurisdiction was not equivalent to acting with total want of jurisdiction, and did not render the judgment a nullity. *Id.*

The impropriety of a collateral attack on the judgment in this case is even more blatant than in *Yanow.*  In this case, the Court of Appeals affirmed this Court's Judgment on May 26, 2005. The Judgment is therefore res judicata and TDC is barred and collaterally estopped from arguing a lack of subject matter jurisdiction.

5.    **Subject Matter Jurisdiction Is Res Judicata Even If It Had Not Been Disputed and Litigated by the Parties**

Questions of subject matter jurisdiction must be justifiable if the legal rules governing competency are to be given effect; some tribunal must determine them, either the court in which the action is commenced or some other court of referral. Every court in every case has subject matter jurisdiction to decide whether the particular case is within its subject matter jurisdiction. *See Berardinelli v. Castle & Cooke, Inc.*, 587 F.2d 37, 39 (9th Cir. 1978).

Further, a court is presumed to decide that it has subject matter jurisdiction over a case unless it expressly decides that it does not, whether or not the issue is litigated. *See Chicot County Drainage Dist.,* 308 U.S. at 371 (res judicata applies to jurisdiction even when the parties had the opportunity to litigate subject matter jurisdiction but did not). If a trial court is incorrect in its decision on subject matter jurisdiction, the mistake is merely error and does not render the court's final judgment void. Once the judgment is final and not subject to further appeal, the question of subject matter jurisdiction is res judicata and cannot be attacked directly or collaterally.

In *Independence Mortgage Trust*, 446 F. Supp. at 123, the court, after reviewing the cases cited by the defendant involving dismissals by a court upon finding that it lacked subject matter jurisdiction almost always involved action taken prior to final judgment, held:

4823-0772-0192.2/27

Once final judgment is entered, however, the situation is different. At this stage, when the proceedings are completed, the federal court has expressly or impliedly found that it has subject matter jurisdiction and the parties have exhausted or waived (by inaction) their rights to review such finding. The finding is thus res judicata. *Id.* at 23.

**6.    TDC Has Failed to Demonstrate That It Is a Citizen of Pennsylvania**

TDC attacks the Judgment as void for lack of diversity jurisdiction on the premise that TDC is a citizen of each state in which it has members. TDC argues that because it had members who are residents in the State of Pennsylvania, TDC and Reliance are not completely diverse and subject matter jurisdiction is lacking. However, "residency" is not the proper test in determining whether TDC's members/insureds are citizens of the State of Pennsylvania and thereby convey citizenship upon TDC.

Citizenship of an unincorporated interinsurance exchange is determined by looking to the citizenship, not residence, of each individual member. *See Tuck v. United Services Auto. Ass'n*, 859 F.2d 842 (10th Cir. 1988); *Baer v. United Services Automobile Ass'n*, 503 F.2d 393 (2nd Cir. 1974); *Arbuthnot v. State Auto. Ins. Ass'n*, 264 F.2d 260 (10th Cir. 1959); *Chubb Custom Ins. Co. v. United Services Automobile Ass'n*, 2005 WL 2475314 (D.N.J. 2005); *Bitinas v. Roback*, 2005 WL 327137 (D.Conn. 2005). To establish citizenship for diversity purposes, a natural person must be *both* (a) a citizen of the United States, and (b) a domiciliary of one particular state. *See Kantor v. Wellesley Galleries, Ltd.*, 704

F.2d 1088, 1090 (9th Cir. 1983). For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. As with other jurisdictional determinations, courts look to the parties' domicile at the time the lawsuit was *filed* (not when the cause of action arose, or later when the case comes to trial). *LeBlanc v. Cleveland*, 248 F.3d 95, 100 (2nd Cir. 2001). A person's domicile is the place he or she resides with the intention to remain or to which he or she intends to return. A person residing in a given state is not necessarily domiciled there and thus is not necessarily a citizen of that state. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). For diversity purposes, residence alone is not enough. Domicile is determinative. *See Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 53 (1st Cir. 1992).

TDC contends it has physician members/insureds that are residents of Pennsylvania. *See* TDC's Motion at 12; Affidavit of Tamera K. Clark at 11, 13, 14 (including Exhibit "C"), 15 (including Exhibit "D"). However, TDC has failed to offer any evidence that any physician member/insured is a <u>citizen</u> of the State of Pennsylvania. TDC seeks to vacate a Judgment that has become final after an appeal without any competent evidence that the Court erred in finding diversity of citizenship. For this reason alone, the Motion must be denied.

## IV.  MONETARY SANCTIONS SHOULD BE AWARDED

Federal courts have the inherent power to impose sanctions against both parties and attorneys for "bad faith" conduct in litigation or for "willful disobedience" of a court order. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764-766 (1980). The court's inherent powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. *Chambers*, 501 U.S. at 43. Sanctions under the court's inherent power may be imposed even after entry of judgment. *See Loftus v. Southeastern Penn. Transp. Auth.*, 8 F. Supp. 2d 458, 461 n. 4 (ED PA 1998). Further, "bad faith" conduct may be sanctioned under the court's inherent powers even if it is also sanctionable under other rules, such as 28 U.S.C. § 1927: "These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions." *Id.* at 46-48.

In order to impose sanctions, the Court need only find that the party "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Id.* at 45-46. The presence of a colorable claim or defense does not prevent a finding of "bad faith." *Mark Industries, Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995). In *Mark Industries*, the court held that "[a] finding of bad faith 'does not

require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion of a colorable claim will not bar assessment of attorneys' fees.'" *Id.* at 732 (quoting *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178, 181 (D.C. Cir. 1980).

It is not only in the claims asserted, but also in the conduct of the litigation that "bad faith" may be found. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980). In a Third Circuit case, the court held that continued litigation of a matter already resolved is evidence of bad faith. *See Ford v. Temple Hospital*, 790 F.2d 342, 348-349 (3rd Cir. 1986). The court reasoned that the fact the statute of limitations has run on a claim does not prove the action was filed in "bad faith" because the defense may be waived or subject to an estoppel. *Id.* But once the defense has been raised, continued litigation may be evidence of "bad faith." *Id.*

TDC repeatedly admitted that the parties in this case have diverse citizenship. On this basis, Reliance litigated this case to Judgment, and the parties and the Court expended considerable resources in resolving this matter. TDC went so far as to expressly allege diversity jurisdiction in its Counterclaim. This Court made an express finding of diversity jurisdiction before entering Judgment in favor of Reliance, and TDC never challenged this finding on appeal. It is manifest that TDC's sole purpose in raising this issue now is to delay and obstruct collection of

the Judgment.    Such conduct is vexatious and in bad faith and warrants the imposition of sanctions.

A party may also be shown to have acted in "bad faith" by intentionally delaying or disrupting litigation, or hampering enforcement of a court's order. *See Chambers,* 501 U.S. at 45-46.   The court's inherent power resembles its power under Rule 11 to sanction for papers filed for an "improper purpose such as to harass or to cause unnecessary delay. . . ." *Id.* at 46.

On or about November 8, 2005, Reliance filed a Motion to Satisfy Judgment and Enforce Supersedeas Bond and for Attorneys' Fees in the Amount of $5,775.00 ("Bond Motion").   Reliance had no alternative but to file the Bond Motion after TDC refused to pay the Judgment of more than $2.2 million.   The Bond Motion is to be heard on January 9, 2005.

TDC's Motion – also set for January 9, 2005 – is aimed to delay payment under the supersedeas bond.   This case's long procedural history demonstrates TDC's constant and repeated attempts to avoid its contractual obligations.   The Court denied TDC's motion to reconsider the parties' motions for summary judgment.   The Ninth Circuit affirmed the judgment.   Some finality must now come to this matter.   However, TDC continues to delay any final resolution by, among other things, improperly collaterally attacking a valid Judgment.

TDC's actions alone demonstrate that its current assertion of lack of diversity jurisdiction is meritless. The facts, pleadings, orders and other documents on file in this action prove not only the lack of merit in TDC's Motion, but also the bad faith in which the Motion was brought before this Court.

Reliance therefore respectfully requests that the Court impose monetary and/or other sanctions in an amount to be determined by the Court.

## V.    IN THE ALTERNATIVE, IN THE EVENT THE COURT WERE TO ENTERTAIN TDC'S MOTION, RELIANCE SHOULD BE ALLOWED TO CONDUCT DISCOVERY ON TDC'S NEWLY-ASSERTED ALLEGATIONS ON ITS CITIZENSHIP

TDC's Motion should be denied for all the reasons set forth above. Nevertheless, should the Court consider entertaining TDC's Motion, Reliance respectfully requests that Reliance be permitted to conduct discovery on TDC's "new" evidence.[4]

Good cause exists for an order to reopen discovery on this limited issue as TDC's Motion identifies witnesses and documents that were never disclosed in the initial litigation. Reliance has never had the opportunity to examine these witnesses and TDC's evidence on its citizenship. In the event this Court were inclined to consider TDC's Motion, Reliance should be permitted to undertake discovery concerning TDC's "new" evidence. *See Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996).

---

[4]    Filed concurrently herewith and incorporated herein are Reliance's Objections to TDC's impermissible "new" evidence.

## VI.    CONCLUSION

TDC's Motion to Vacate is untimely and barred by this Court's Judgment and the finality of the appeal thereof.  Even TDC concedes in its Motion that Ninth Circuit authority prohibits this collateral attack on the Court's Judgment.  TDC's Motion is intended solely to delay and obstruct collection of the Judgment and must be denied.

DATED:  December 22, 2005

KUTAK ROCK LLP

By: _____
PAUL E. DONSBACH
CHRISTOPHER D. GLOS
Attorneys for Plaintiff
RELIANCE INSURANCE
COMPANY (IN LIQUIDATION)

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5

Pursuant to Local Rule 7.5(e), I hereby certify that Plaintiff Reliance Insurance Company's (In Liquidation) Memorandum In Opposition to The Doctors' Company's Motion to Vacate Judgment and Dismiss Complaint is proportionately spaced, has a typeface of 14 points, and contains 7,856 words and 703 lines, excluding this page, but including headnotes, footnotes and quotations. I have relied on Microsoft Word's calculation of the word count.

DATED: December 22, 2005

PAUL F. DONSBACH
CHRISTOPHER D. GLOS
Attorney for Plaintiff RELIANCE
INSURANCE COMPANY (IN
LIQUIDATION)

E. MASON MARTIN III