```
                                    080902c.txt
0001
 1             IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF HAWAII
 3
 4 RELIANCE INSURANCE COMPANY, ETC.,) CIVIL NO. 02-00159HG
                                    )
 5              PLAINTIFF,           )
                                    )
 6      VS.                          )
                                    )
 7 THE DOCTORS COMPANY, ETC.,        )
                                    )
 8              DEFENDANT.           )
   _____)
 9
10                  TRANSCRIPT OF PROCEEDINGS
11       THE ABOVE-ENTITLED MATTER CAME ON FOR HEARING ON
12 FRIDAY, AUGUST 9, 2002, AT 9:50 A.M., AT HONOLULU, HAWAII,
13 BEFORE:         THE HONORABLE HELEN GILLMOR
                   UNITED STATES DISTRICT JUDGE
14                 DISTRICT OF HAWAII
15 REPORTED BY:    STEPHEN B. PLATT, RMR, CRR
                   OFFICIAL U. S. DISTRICT COURT REPORTER
16                 DISTRICT OF HAWAII
17 APPEARANCES:    PAUL F. DONSBACH, ESQ.
                   620 NEWPORT CTR. DRIVE, SUITE 450
18                 NEWPORT BEACH, CALIFORNIA  92660
19                        ATTORNEY FOR THE PLAINTIFF
20                 DAROLYN H. LENDIO, ESQ.
                   PHILIP W. MIYOSHI, ESQ.
21                 500 ALA MOANA BLVD., FL 4
                   HONOLULU, HAWAII   96813
22
                                   ATTORNEYS FOR THE DEFENDANT
23
24
25
0002
 1 FRIDAY, AUGUST 9, 2002                              9:50 A.M.
 2                         -oOoOo-
 3            THE CLERK:  CIVIL NUMBER 02-159, RELIANCE INSURANCE
 4 COMPANY VERSUS THE DOCTORS' COMPANY.
 5            THIS CASE IS CALLED FOR HEARING ON DEFENDANT THE
 6 DOCTORS' COMPANY'S MOTION TO DISMISS COMPLAINT.
 7            MR. DONSBACH:  GOOD MORNING, YOUR HONOR.
 8            PAUL DONSBACH APPEARING ON BEHALF OF RELIANCE
 9 INSURANCE COMPANY.
10            THE COURT:  GOOD MORNING.
11            MR. MIYOSHI:  GOOD MORNING, YOUR HONOR.
12            PHILIP MIYOSHI AND DAROLYN LENDIO ON BEHALF OF THE
13 DOCTORS COMPANY.
14            THE COURT:  GOOD MORNING.
15            IT IS THE DOCTORS' COMPANY'S MOTION, SO IF YOU WANT
16 TO SPEAK FIRST AT THE LECTERN, PLEASE.
17            MR. MIYOSHI:  THANK YOU, YOUR HONOR.
18            YOUR HONOR, THE DOCTORS' COMPANY IS MOVING TO
19 DISMISS THE CLAIMS FOR EQUITABLE CONTRIBUTION AND INDEMNITY ON
20 THE BASIS THAT THE COMPLAINT, ON THE FACE OF IT, FAILS TO
21 STATE A CLAIM.
22            SPECIFICALLY WITH RESPECT TO THE EQUITABLE
23 CONTRIBUTION CLAIM, THE PLAINTIFFS FAILED TO ALLEGE THAT
24 THERE'S A COMMON BURDEN OBLIGATION --
25            THE COURT:  OKAY, NOW, BEFORE YOU GET STARTED, IT
                                    Page 1
```

EXHIBIT 1
PAGE 2

```
                                080902c.txt
0003
 1 SEEMS TO ME, BEFORE I CAN DECIDE WHETHER OR NOT THERE IS A
 2 CLAIM STATED, I HAVE TO KNOW WHAT LAW I AM APPLYING, AND I AM
 3 A LITTLE CONFUSED AS TO BOTH SIDES' BELIEF AS TO WHAT LAW I
 4 SHOULD BE APPLYING.  I DON'T SEE HOW I CAN POSSIBLY MAKE A
 5 DECISION ABOUT WHETHER OR NOT A CLAIM HAS BEEN STATED UNLESS I
 6 KNOW WHAT LAW I AM APPLYING.  IT'S NOT AN ABSTRACT THING THAT
 7 I CAN DO WITHOUT MAKING A FINDING UNDER A PARTICULAR
 8 JURISDICTION.
 9           SO WHAT'S THE LAW I AM APPLYING IN ORDER TO DECIDE
10 YOUR MOTION.
11           MR. MIYOSHI:  YOUR HONOR, WE WOULD SAY THAT THE LAW
12 OF HAWAII APPLIES.  WE HAVEN'T SET THAT FORTH IN OUR BRIEFING;
13 I DO UNDERSTAND THAT, BUT, EVEN BEYOND THAT, I THINK THAT THE
14 LAW IS SO WELL ESTABLISHED WITH RESPECT TO CONTRIBUTION --
15           THE COURT:  BUT IT STILL HAS TO BE A PARTICULAR
16 JURISDICTION'S LAW.  I JUST CAN'T DO IT IN THE ABSTRACT.  I'M
17 NOT A LAW PROFESSOR; I AM SUPPOSED TO BE APPLYING LAW OF A
18 PARTICULAR JURISDICTION.
19           MR. MIYOSHI:  AND, AS I STATED PREVIOUSLY,
20 YOUR HONOR, I BELIEVE THAT THE LAW OF HAWAII WOULD APPLY IN
21 THIS CIRCUMSTANCE.
22           THE COURT:  OKAY.
23           MR. MIYOSHI:  AND, GIVEN THAT, I THINK HAWAII IS NO
24 DIFFERENT FROM ANY OF THE OTHER JURISDICTIONS THAT WE HAVE
25 CITED TO, WHICH ESSENTIALLY PROVIDE THAT WHEN A CLAIM FOR
0004
 1 CONTRIBUTION IS MADE, THE INITIAL -- OR THRESHOLD INQUIRY HAS
 2 TO BE WHETHER OR NOT A COMMON OBLIGATION, BURDEN OR LIABILITY
 3 EXISTS.  AND, AS ALLEGED IN PLAINTIFF'S COMPLAINT, I DON'T
 4 BELIEVE THEY WILL CONTEST, AND, IN FACT, THEY PROBABLY WOULD
 5 AGREE THAT BY DEFINITION, PRIMARY AND EXCESS INSURANCE
 6 POLICIES DO NOT IMPLICATE A COMMON BURDEN OBLIGATION.  THEY
 7 ARE INDEPENDENT, UNIQUE AND SEPARATE COVERAGES; WHERE ONE
 8 COVERAGE LEAVES OFF, THE OTHER TAKES ON.
 9           AND I THINK THAT THIS IS PRETTY MUCH
10 WELL-ESTABLISHED IN ALL OF THE CASE LAW THAT WE CITED,
11 PARTICULARLY IN THE CASES THAT WE CITED IN OUR REPLY MEMO THAT
12 HAVE SPECIFICALLY LOOKED AT THE ISSUES OF EXCESS AND PRIMARY
13 INSURER ISSUES AND HAVE STATED THAT THE GENERAL RULE IN THOSE
14 CASES IS THAT THERE IS NO CONTRIBUTION BECAUSE OF THE SEPARATE
15 AND UNIQUE NATURE OF THE DIFFERENT COVERAGES.  AND, ON THAT
16 BASIS ALONE, THE MOTION TO DISMISS WITH RESPECT TO THE
17 EQUITABLE CONTRIBUTION SHOULD BE GRANTED.
18           I'M NOT REALLY CLEAR ON WHAT THE PLAINTIFF'S
19 POSITION IS ON THAT, BECAUSE THERE REALLY WAS NO RESPONSE AS
20 TO THAT PART OF OUR ARGUMENT.
21           IN ADDITION, THE SECOND PART, WHICH WAS ADDRESSED
22 PRIMARILY BY THE PLAINTIFFS, IS WHETHER OR NOT THE PAYMENT, OR
23 THE ALLEGED -- THE PURPORTED OVERPAYMENT WAS DONE NOT
24 VOLUNTARILY BUT UNDER THREAT OF LEGAL COMPULSION -- OR, BY
25 LEGAL COMPULSION.
0005
 1           PLAINTIFF PRIMARILY RELIES ON CERTAIN CASES FROM
 2 OTHER JURISDICTIONS FOR THE PROPOSITION THAT THE VOLUNTEER
 3 DOCTRINE WITH RESPECT TO AN INSURER -- WHERE AN INSURER PAYS
 4 MORE THAN HIS FAIR SHARE, THAT THOSE JURISDICTIONS STAND FOR
 5 THE PROPOSITION THAT -- THAT'S KIND OF AN OLD AND ARCHAIC
 6 DOCTRINE, BUT MOST OF THE CASES THAT HE CITES TO ARE DEALING
 7 WITH CIRCUMSTANCES WHERE THERE WERE CO-INSURERS, AND WHERE
 8 THEY WERE OBLIGATED COMMONLY IN THE FIRST INSTANCE.  SO, IN
 9 THE FIRST CIRCUMSTANCE, THE DOCTORS' COMPANY DOES NOT DISPUTE
10 THAT CONTRIBUTION IS PROPER; BUT, WHEREAS HERE, WHEN THEY ARE
                                 Page 2
```

EXHIBIT 1
PAGE 3

```
                        080902c.txt
11 SEPARATE, AND UNIQUE AND INDEPENDENT COVERAGES, THAT
12 CONTRIBUTION CERTAINLY ISN'T WARRANTED.
13           THE HAWAII CASES THAT PLAINTIFF RELIES ON, THE FIRST
14 ONE IS ALAMEDA, THE ALAMEDA CASE, AND, IN THAT CASE, THAT CASE
15 IS DISTINGUISHABLE.  AND, IN FACT, I BELIEVE THAT CASE
16 SUPPORTS OUR INITIAL PROPOSITION THAT YOU NEED TO ESTABLISH A
17 COMMON BURDEN OR OBLIGATION OF LIABILITY.  IN THERE, THERE WAS
18 AN ACCIDENT THAT OCCURRED, AND THE PLAINTIFF SUED A DEFENDANT
19 WHO ULTIMATELY FILED A THIRD-PARTY ACTION AGAINST MULTIPLE
20 OTHER THIRD-PARTY DEFENDANTS.  AND WHAT HAPPENED WAS, SEVERAL
21 OF THE DEFENDANTS GOT TOGETHER, INCLUDING THIRD-PARTY
22 DEFENDANTS, AND SETTLED THAT CLAIM.  THERE WAS ONE NONSETTLING
23 DEFENDANT; I BELIEVE THAT WAS THE CITY -- OR THE COUNTY OF
24 HAWAII.  THE REMAINING -- THE SETTLING DEFENDANTS THEN SUED
25 THE NONSETTLING DEFENDANT FOR, I BELIEVE IT WAS, CONTRIBUTION.
0006
 1 THE COURT THERE SAID, LISTEN, YOU REALLY DON'T HAVE A CLAIM
 2 FOR CONTRIBUTION AGAINST THESE GUYS.  AND, ADMITTEDLY, THAT
 3 WAS UNDER THE STATUTORY PROVISION, BUT I THINK THEIR ANALYSIS
 4 IS INSTRUCTIVE, NEVERTHELESS, BECAUSE THERE THEY SAID, LISTEN,
 5 THERE WAS NO JOINT OBLIGATION OR LIABILITY; THUS, YOUR CLAIM
 6 IS REALLY A SUBROGATION CLAIM.
 7           SO, IN THAT CONTEXT, ALAMEDA ACTUALLY SUPPORTS OUR
 8 POSITION THAT THAT CONTRIBUTION IS NOT WARRANTED HERE.  BUT
 9 WHAT PLAINTIFF PRINCIPALLY RELIES ON, ON ALAMEDA, FOR IS THE
10 DOCTRINE THAT A PERSON UNDER THREAT OF CIVIL SUIT ISN'T A
11 VOLUNTEER.  SO, IF YOU MADE A PAYMENT WHEN THERE IS SOME
12 THREAT OF LEGAL ACTION, THEN THEY ARE NOT A VOLUNTEER, AND
13 THEY ARE ENTITLED TO CONTRIBUTION.
14           ASSUMING, IN THE FIRST INSTANCE, THAT THERE IS A
15 COMMON OBLIGATION OR BURDEN AMONGST THE PARTIES, WHICH WE
16 ASSERT THERE IS NOT; BUT, ASSUMING SO, EVEN UNDER ALAMEDA, IN
17 THE VOLUNTEER -- IN THEIR VOLUNTEER DOCTRINE, THAT DOESN'T
18 SUPPORT THE CLAIMS THAT THEY HAVE ALLEGED IN THEIR COMPLAINT,
19 BECAUSE NOWHERE IN THE COMPLAINT HAVE THEY ALLEGED THAT THEY
20 WERE UNDER A LEGAL THREAT TO MAKE THIS PURPORTED OVERPAYMENT.
21 ESSENTIALLY, IF YOU LOOK AT THE COMPLAINT --
22           THE COURT:  WELL, BUT WASN'T THERE A LAWSUIT
23 ALREADY?
24           MR. MIYOSHI:  THERE WAS A LAWSUIT, AND IT WAS
25 BEING -- THE DEFENSE WAS BEING HANDLED BY THE DOCTORS'
0007
 1 COMPANY, AND NO RESERVATION OF RIGHTS LETTERS WERE SENT.  SO
 2 THERE WAS FULL INDEMNIFICATION.  THE PLAINTIFFS IN THE
 3 UNDERLYING TORT ACTION WERE GOING TO BE INDEMNIFIED
 4 REGARDLESS, BECAUSE THERE WAS PRIMARY COVERAGE BEING PROVIDED
 5 BY THE THE DOCTORS'S COMPANY, AND THEN RELIANCE HAD A $25
 6 MILLION EXCESS POLICY.  SO, REGARDLESS, THERE WAS GOING TO BE
 7 SOME PAYOUT.
 8           THERE MAY HAVE BEEN A DISPUTE AS TO WHO ACTUALLY
 9 OWED WHAT --
10           THE COURT:  BUT I AM A LITTLE CONFUSED THAT YOU ARE
11 TALKING ABOUT THERE WAS NO THREAT OF CIVIL SUIT WHEN YOU WERE
12 IN THE MIDDLE OF A LAWSUIT.
13           MR. MIYOSHI:  WE WERE IN --
14           THE COURT:  AND WAS RELIANCE IN THAT LAWSUIT?
15           MR. MIYOSHI:  WELL, HERE, IN THIS INSTANCE, WE WERE
16 NOT PARTIES TO THIS LAWSUIT; WE WERE INSURING THE INSUREDS WHO
17 ARE PART OF THE LAWSUIT.  SO I THINK --
18           THE COURT:  WHO WAS PROVIDING THE DEFENSE?
19           MR. MIYOSHI:  THE DOCTORS' COMPANY.
20           THE COURT:  OKAY.
21           MR. MIYOSHI:  WE WERE PROVIDING THE --
                        Page 3
```

EXHIBIT 1
PAGE 4

```
                               080902c.txt
22              THE COURT:  OKAY.  SO YOU WERE IN THAT LAWSUIT --
23              MR. MIYOSHI:  YES.
24              THE COURT:  -- AS PROVIDING THE DEFENSE.  AND WAS
25   RELIANCE IN THE LAWSUIT?
0008
 1              MR. MIYOSHI:  RELIANCE WAS PARTICIPATING IN, I
 2   BELIEVE, WHAT EVENTUALLY ENDED UP BEING THE SETTLEMENT OF THE
 3   CASE; BUT, IN TERMS OF --
 4              THE COURT:  OKAY, WHAT I AM HAVING DIFFICULTY WITH,
 5   MR. MIYOSHI, IS HOW WE GOT HERE.  YOU'VE GOT THE PLAINTIFF IN
 6   THE UNDERLYING ACTION; YOU'VE GOT THE DEFENDANTS IN THE
 7   UNDERLYING ACTION -- STRAUB, THE TWO DOCTORS -- YOU'VE GOT
 8   BOTH INSURANCE COMPANIES INVOLVED.
 9              MR. MIYOSHI:  UH-HUH.
10              THE COURT:  YOU HAVE A SETTLEMENT.
11              MR. MIYOSHI:  UH-HUH.
12              THE COURT:  AND HERE WE ARE... HOW DID THIS HAPPEN?
13   AND YOU'RE TALKING ABOUT THERE BEING NO THREAT OF CIVIL SUIT.
14   THERE WAS A CIVIL SUIT.  EVERYBODY WAS INVOLVED.  SO HOW CAN
15   WE TALK ABOUT THERE BEING NO THREAT OF CIVIL SUIT?
16              MR. MIYOSHI:  WELL, THERE WAS NO THREAT OF CIVIL
17   SUIT IN THE SENSE THAT THEY ARE TALKING ABOUT IT, BECAUSE THEY
18   SAID THAT THEY WERE COMPELLED TO PAY, SOMEHOW, AN AMOUNT OF
19   MONEY THAT THEY WEREN'T OBLIGATED TO PAY.  NOW, IF THEY
20   WEREN'T OBLIGATED TO PAY THAT IN THE FIRST INSTANCE -- OR
21   THAT'S THEIR ARGUMENT --
22              THE COURT:  YOU KNOW, IF WE GO AROUND AND AROUND
23   LIKE THIS, THIS JUST TELLS ME I NEED TO DISMISS THIS SUIT AND
24   SEND IT BACK TO STATE COURT WHERE THIS HAPPENED, BECAUSE, IF
25   WE CAN'T GET TO THE BOTTOM OF THIS, THEN IT REALLY DOESN'T
0009
 1   BELONG IN FEDERAL COURT; IT NEEDS TO GO BACK TO STATE COURT,
 2   WHERE THIS THING HAPPENED.  I MEAN, THIS REALLY -- I DON'T
 3   THINK YOU ANSWERED MY QUESTION.
 4              MR. MIYOSHI:  YOUR HONOR, YOU MAY VERY WELL BE --
 5   THAT MAY VERY WELL HAVE TO BE THE CASE IN THIS ACTION, BECAUSE
 6   ALL OF -- IN FACT, IF WE GO FORWARD, THIS IS PROBABLY GOING TO
 7   BE A MATTER WHERE WE ARE GOING TO HAVE TO ESSENTIALLY LITIGATE
 8   THE UNDERLYING ACTION AGAIN, AS WELL.  BUT IT'S BEEN SETTLED
 9   ALREADY, SO, I MEAN --
10              THE COURT:  AND EVERYBODY WAS THERE, AND EVERYBODY
11   WAS PARTICIPATING.
12              MR. MIYOSHI:  EXACTLY.  AND I THINK THAT'S PART OF
13   THE DOCTORS' COMPANY'S POSITION.  AND MAYBE FRUSTRATION WITH
14   THIS WHOLE PROCESS IS THAT, YOU KNOW, EVERYBODY
15   PARTICIPATED -- THIS IS ESSENTIALLY -- THE SETTLEMENT HAPPENED
16   AND OCCURRED OVER TWO YEARS AGO, AND ONLY NOW THERE HAS BEEN A
17   LAWSUIT FILED TRYING TO ESSENTIALLY GET BACK MONEY THAT THEY
18   PURPORTEDLY OVERPAID IN THE SETTLEMENT.  AND, IN THAT SENSE,
19   WE, I GUESS ALTERNATIVELY, WOULD FEEL THAT THIS CASE COULD BE
20   DISMISSED ON THOSE GROUNDS, AS WELL.
21              THANK YOU, YOUR HONOR.
22              THE COURT:  THANK YOU.
23              MR. DONSBACH:  GOOD MORNING, YOUR HONOR.
24              THE COURT:  GOOD MORNING.
25              MR. DONSBACH:  PAUL DONSBACH.
0010
 1              YOUR HONOR, INITIALLY, I SHOULD ADDRESS THE ISSUE OF
 2   HOW WE GOT HERE, AND --
 3              THE COURT:  WELL, INITIALLY, LET'S ADDRESS WHAT LAW
 4   I AM APPLYING.
 5              MR. DONSBACH:  VERY GOOD.
 6              AS WE INDICATED IN OUR POSITION, WE THINK IT'S EARLY
                                  Page 4
```

EXHIBIT 1
PAGE 5

```
                              080902c.txt
 7 IN THE LITIGATION --
 8          THE COURT:  IT'S NOT EARLY IN THE LITIGATION IF I'M
 9 DECIDING A LEGAL ISSUE.  A LEGAL ISSUE HAS BEEN RAISED AS TO
10 WHETHER OR NOT THERE IS LIABILITY UNDER WHAT'S BEEN ALLEGED IN
11 THE COMPLAINT, AND IT IS -- IT'S BEFORE ME.  I CAN'T DECIDE A
12 LEGAL ISSUE WITHOUT KNOWING WHAT LAW I APPLY.  IT CAN'T BE
13 EARLY IN THE CASE.  YOU FOLKS HAVE TO ADDRESS THAT.  IT'S JUST
14 NOT POSSIBLE FOR ME TO OPERATE IN A VACUUM.  HOW CAN I DO
15 THAT?
16          MR. DONSBACH:  I AGREE.  AND WE ARE AT A LITTLE BIT
17 OF A DISADVANTAGE BECAUSE IT WASN'T RAISED IN THE MOTION;
18 HOWEVER, FOR PURPOSES SIMPLY OF THIS MOTION, RELIANCE WOULDN'T
19 OBJECT TO THE APPLICATION OF HAWAII LAW; HOWEVER, IT WOULD
20 RESERVE ITS RIGHTS WITH RESPECT TO THE REMAINDER OF THE
21 LITIGATION AFTER IT DOES --
22          THE COURT:  I DON'T THINK YOU CAN DO THAT.  I MEAN,
23 I DON'T SEE HOW I CAN START OUT APPLYING ONE LAW TO THE ACTUAL
24 UNDERLYING THEORIES AND CHANGE MY MIND LATER.  HOW CAN I DO
25 THAT?  BASICALLY, A MOTION TO DISMISS IS, HAS THERE BEEN
0011
 1 SUFFICIENT ALLEGATIONS UNDER THE LAW THAT'S APPLICABLE OF A
 2 CLAIM?  THAT'S JUST, IN A VERY STREAMLINED FASHION, THE ISSUE
 3 BEFORE ME.  SO I CAN'T PROVISIONALLY DECIDE THAT THERE'S BEEN
 4 A CLAIM UNDER ONE LAW, AND THEN -- UNLESS THERE'S A VERY GOOD
 5 REASON WHY THERE'S BEEN SOME MISTAKE THAT I'VE MADE.  I MEAN,
 6 IT IS POSSIBLE THAT THAT COULD HAPPEN.
 7          I'M NOT SAYING -- BUT, ONCE WE RECOGNIZE THAT WE
 8 HAVE THIS AS AN ISSUE, I REALLY CAN'T AGREE WITH THE IDEA THAT
 9 YOU'RE GOING TO DO IT PROVISIONALLY AND THEN LATER ON TRY TO
10 TALK ME OUT OF IT IF YOU CHOOSE TO.  IT SEEMS TO ME IT HAS TO
11 BE RESOLVED TO THE BEST OF OUR ABILITY, AND THEN IF SOMETHING
12 CAME UP IN A TRIAL, SOMETHING DEVELOPED, IT WOULD BE
13 APPROPRIATE FOR ME TO CHANGE WHAT LAW.  BUT THAT WOULD BE AN
14 EXTREMELY RARE SITUATION.  BUT I THINK IT'S A PRIMARY
15 QUESTION.
16          I MEAN, IF YOU WANT TO TAKE THAT POSITION, THAT'S
17 FINE, BUT I AM JUST SAYING THAT I REALLY HAVE PROBLEMS WITH
18 THE IDEA THAT YOU ARE RESERVING THE RIGHT TO CHANGE YOUR MIND.
19          MR. DONSBACH:  I CERTAINLY UNDERSTAND YOUR HONOR'S
20 VIEWS ON THAT, AND I GUESS, FOR THESE PURPOSES, IT'S VERY
21 LIKELY THAT --
22          THE COURT:  YOU CAN TAKE THAT POSITION; I AM JUST
23 TELLING YOU THAT I HAVE A PROBLEM WITH IT.
24          MR. DONSBACH:  I CERTAINLY UNDERSTAND THAT,
25 YOUR HONOR.  I GUESS MY RELUCTANCE TO COMMIT ONE WAY OR
0012
 1 ANOTHER DERIVES FROM THE FACT THAT OUR OFFICE HASN'T DONE THE
 2 CHOICE OF LAW ANALYSIS AT THIS POINT.  AGAIN, IT IS EARLY IN
 3 THE LITIGATION, AND I -- THAT RELATES TO -- YOU KNOW, ONE OF
 4 THE ISSUES HERE IS, IN ALL OF THE CASES CITED BY THE DOCTORS'
 5 COMPANY, AND IN OUR OPPOSITION, THE ISSUE OF WHERE THEIR
 6 CONTRIBUTION WOULD LIE WAS AN ISSUE THAT WAS DECIDED ON THE
 7 MERITS.  AND IN ALL OF THESE CASES, THE COURTS LOOKED AT WHAT
 8 WAS EQUITABLE.  AND IN DOING SO, IN LOOKING AT ALL OF THE
 9 MERITS, AT THAT POINT IT WOULDN'T BE A DIFFICULT ISSUE TO
10 DETERMINE WHAT STATE'S LAW WOULD APPLY.  HERE I THINK IT IS A
11 BIT OF A DISADVANTAGE FOR US, FACED WITH A MOTION THAT RELIES
12 ON THE LAW OF VARIOUS STATES WITHOUT EVER SPECIFYING WHAT LAW
13 WAS PURPORTED --
14          THE COURT:  BUT, YOU SEE, YOU BROUGHT THE LAWSUIT.
15          MR. DONSBACH:  THAT'S CORRECT, YOUR HONOR.
16          THE COURT:  SO --
17          MR. DONSBACH:  SO, WITHOUT BELABORING THE ISSUE, I
                                Page 5
```

EXHIBIT 1
PAGE 6

```
                              080902c.txt
18 THINK THE COURT --
19           THE COURT:  WE SHOULD PROBABLY MOVE ON, BUT YOU ARE
20 THE PLAINTIFF.
21           MR. DONSBACH:  CORRECT.  AND THE COURT, I THINK,
22 COULD CERTAINLY APPLY THE LAW OF HAWAII IN THIS LITIGATION.  I
23 WOULD LIKE -- TO THE EXTENT I CAN -- TO RESERVE THE RIGHT TO
24 ADDRESS THAT ISSUE FURTHER AFTER WE HAVE LOOKED MORE
25 SPECIFICALLY AT THE CHOICE OF LAW ISSUES.
0013
 1           THE OTHER TWO OBVIOUS ALTERNATIVES WOULD BE THE LAW
 2 OF CALIFORNIA, WHERE THE DOCTORS' COMPANY IS INCORPORATED, OR,
 3 PENNSYLVANIA, WHERE RELIANCE IS INCORPORATED.  AND, AT SOME
 4 POINT, I WOULD LIKE THE OPPORTUNITY TO LOOK AT THAT FURTHER
 5 AND SEE WHETHER EITHER OF THOSE STATES MIGHT APPLY, AT LEAST
 6 IN PART, ON SOME ISSUES IN THE LITIGATION.  BUT, AT THIS
 7 POINT, I THINK, PROBABLY, THE MOTION COULD BE DECIDED UNDER
 8 HAWAII LAW.
 9           THE COURT:  GO AHEAD.
10           MR. DONSBACH:  WHAT I THINK THE DOCTORS' COMPANY HAS
11 DONE, WITH RESPECT TO THEIR MOTION, IS, THEY HAVE TAKEN SOME
12 LANGUAGE OUT OF A VARIETY OF CASES, AND WITHOUT LOOKING AT
13 REALLY WHAT WAS GOING ON IN EACH OF THOSE CASES, AS TO WHAT
14 WAS EQUITABLE, HAVE TRIED TO CONSTRUCT THIS RULE THAT WHERE
15 YOU HAVE AN EXCESS INSURER THAT PAYS A SETTLEMENT IN ORDER TO
16 SETTLE THE CASE, THAT IT'S FOR SOME REASON NOT ENTITLED TO GO
17 BACK AND GET THAT AMOUNT IN CONTRIBUTION.
18           THERE IS NO CASE THAT HAS EVER HELD THAT, TO MY
19 KNOWLEDGE, AND THERE'S CERTAINLY NONE CITED IN ANY OF THE
20 BRIEFS.  INSTEAD, WHAT WE SEE ARE A COLLECTION OF CASES ON
21 CONTRIBUTION THAT ARE WHOLLY INAPPLICABLE AND NOWHERE HOLD
22 THAT AN EXCESS INSURER IS NOT ENTITLED TO CONTRIBUTION.
23           IN ALL THESE CASES, THE COURTS -- BECAUSE THESE WERE
24 CONTRIBUTION CLAIMS -- WERE REALLY LOOKING AT WHAT WAS
25 EQUITABLE.  AND, IN EACH OF THESE CASES, THEY WERE FACED WITH
0014
 1 A CASE THAT HAD BEEN LITIGATED ON THE MERITS, AND ALL OF THE
 2 VARIOUS CIRCUMSTANCES COULD BE LOOKED AT IN DETERMINING WHAT
 3 WAS EQUITABLE.
 4           WHAT THE DOCTORS' COMPANY HAS PRESENTED ARE CASES
 5 THAT FALL INTO A VARIETY OF CATEGORIES, AND ONE OF THEM IS,
 6 THEY HAVE CITED SOME CASES WHERE A PRIMARY INSURER SOUGHT
 7 CONTRIBUTIONS FROM AN EXCESS INSURER, WHERE -- AND THE
 8 DECISION THAT THE APPELLATE COURT MADE IN EACH OF THOSE CASES
 9 WAS THAT THE PRIMARY POLICY LIMITS HAD NOT BEEN EXHAUSTED.
10 THEREFORE, OBVIOUSLY, IF THE PRIMARY INSURER HAS PAID A CLAIM
11 WITHIN ITS POLICY LIMITS, IT'S NOT, OBVIOUSLY, GOING TO BE
12 ENTITLED TO CONTRIBUTION AS AGAINST AN EXCESS INSURER.  AND
13 THAT IS THE RELIANCE CASE FROM CALIFORNIA, AS WELL AS THE
14 USF&G CASE FROM OKLAHOMA, IN THE TENTH CIRCUIT -- I BELIEVE
15 BOTH FROM LAST YEAR.
16           IN ALL OF THOSE CASES, WHAT WAS INVOLVED WAS A
17 PRIMARY GOING AGAINST AN EXCESS FOR CONTRIBUTION.  IN THOSE
18 CASES, AND IN SOME OF THE CASES THAT WE DISCUSSED IN OUR
19 BRIEF, THE COURTS, IN ADDITION TO LOOKING AT WHETHER THE
20 PRIMARY POLICY HAD, IN FACT, BEEN EXHAUSTED, ALSO LOOKED AT,
21 REALLY, WHAT WAS THE RELATIONSHIP BETWEEN THE PRIMARY AND THE
22 EXCESS INSURER.  AND, IN SOME OF THESE CASES WHICH WERE CITED
23 IN OUR OPPOSITION, THE COURTS HAD POINTED OUT THAT AN EXCESS
24 INSURER, WHEN IT'S FACED WITH A CONTRIBUTION CLAIM FROM A
25 PRIMARY INSURER, REALLY IS IN A DIFFERENT EQUITABLE SITUATION
0015
 1 THAN THE PRIMARY INSURER, BECAUSE IT, IN CALCULATING ITS
 2 PREMIUMS, NEVER ANTICIPATED THAT IT COULD BE LIABLE FOR THE
                                 Page 6
```

EXHIBIT 1
PAGE 7

080902c.txt

3  ENTIRE JUDGMENT. UNDER AN EXCESS POLICY, THE DUTY TO
4  INDEMNIFY ONLY ARISES WHEN THE UNDERLYING PRIMARY HAS BEEN
5  EXHAUSTED.
6         SO, WHEN A PRIMARY ASSERTS A CONTRIBUTION CLAIM
7  AGAINST AN EXCESS INSURER, IN A NUMBER OF CASES THE COURTS
8  HAVE SAID, YOU CAN'T DO THAT BECAUSE THE EQUITIES ARE NOT THE
9  SAME. THE EXCESS INSURER HAS NOT OBLIGATED ITSELF TO THE SAME
10 OBLIGATIONS THAT THE PRIMARY HAS, UNDER ITS POLICY.
11        WE DID CITE, IN OUR OPPOSITION, CASES FROM AT LEAST
12 THREE JURISDICTIONS SPECIFICALLY HOLDING THAT WHERE AN EXCESS
13 INSURER COMES IN, PAYS A SETTLEMENT, AND SEEKS A PORTION OF
14 WHAT IT PAID AS AGAINST THE PRIMARY BECAUSE OF THE EXISTENCE
15 OF THE COVERAGE DISPUTE, THAT CONTRIBUTION WILL LIE. THE
16 EXCESS INSURER IS ENTITLED TO CONTRIBUTION. THE THREE
17 JURISDICTIONS, I BELIEVE, WERE COLORADO, ARKANSAS AND IOWA.
18        IN ITS REPLY, THE DOCTORS' COMPANY, IN EFFECT,
19 PROVED THE POINT THAT WE WERE MAKING WITH RESPECT TO THE
20 SIGNIFICANCE OF THOSE CASES AS PRECEDENT. AND --
21        THE COURT: DO YOU THINK THAT ISSUE HAS BEEN DECIDED
22 IN HAWAII?
23        MR. DONSBACH: IT HAS IN THE ALAMEDA CASE BEFORE THE
24 HAWAII SUPREME COURT, AND ALSO THE NINTH CIRCUIT CASE, THE
25 FIRST INSURANCE CASE, WHICH WAS APPLYING HAWAII LAW.
0016
1         WHAT THEY LOOKED AT IN THAT CASE WAS THE EQUITIES
2  INVOLVED IN A CONTRIBUTION CLAIM BETWEEN INSURERS. AND THE
3  ISSUE WAS -- OR AT LEAST THE ARGUMENT BY ONE OF THE INSURERS
4  WAS THAT THERE WAS -- IN THEIR VIEW, THERE WASN'T A LEGAL
5  THREAT, OR AN ACTUAL CLAIM PENDING BY THE INSURED AS AGAINST
6  THE INSURED THAT WAS SEEKING CONTRIBUTION.
7         AND WHAT THE COURT SAID IS THAT, IN THE INTEREST OF
8  PROTECTING THE INSURED, AS A PUBLIC POLICY MATTER, THAT YOU
9  WANT TO BE ABLE TO HAVE THE INSURERS, WHERE THERE'S A COVERAGE
10 DISPUTE, TO GO AHEAD AND SETTLE THE CLAIM, AND THEN BE ABLE
11 TO -- THROUGH EQUITABLE DOCTRINES -- ALLOCATE THE LOSS
12 ACCORDING TO COVERAGE. AND THE HAWAII SUPREME COURT
13 SPECIFICALLY REJECTED THIS NOTION OF THE VOLUNTEER, THAT WHERE
14 AN INSURER PAYS MORE THAN ITS PRO RATA SHARE, IT'S SOMEHOW
15 ACTING AS A VOLUNTEER AND IS NOT ENTITLED TO REIMBURSEMENT.
16        SO I THINK THE HAWAII SUPREME COURT HAS COME DOWN
17 VERY SPECIFICALLY IN FAVOR OF ALLOWING INSURERS TO GO AHEAD
18 AND SETTLE CASES, AND THEN, IN ACCORDANCE WITH EQUITY, HAVE A
19 REIMBURSEMENT BETWEEN THE INSURERS.
20        WE DID POINT OUT IN OUR OPPOSITION THAT THE ALAMEDA
21 CASE ACTUALLY INVOLVES THE JOINT AND SEVERAL LIABILITY, AND
22 THE STATUTE RELATING TO THAT. AND THE COURT THERE WAS BOUND
23 BY STATUTORY GUIDELINES, AS OPPOSED TO EQUITABLE ONES, AND DID
24 SAY, IN DICTUM, THAT THE SPECIFIC REMEDY WOULD BE SUBROGATION
25 RATHER THAN CONTRIBUTION. HOWEVER, THAT REALLY IS DICTUM
0017
1  BECAUSE THE CASE CAME UP TO THE SUPREME COURT AS A
2  CONTRIBUTION CASE, A JUDGMENT WAS ENTERED IN FAVOR OF THE
3  PLAINTIFF IN THAT CASE, AS A CONTRIBUTION JUDGMENT, AND THE
4  SUPREME COURT AFFIRMED. IF IT HAD REALLY BELIEVED THAT
5  SUBROGATION HAD TO BE THE REMEDY AND NOT CONTRIBUTION, IT
6  WOULD HAVE HAD TO HAVE REVERSED AND SENT IT BACK DOWN FOR
7  A DETERMINATION ON SUBROGATION, WHICH IS A VERY DIFFERENT
8  DOCTRINE THAN CONTRIBUTION.
9         AS A PUBLIC POLICY MATTER, IT WOULD BE A DRACONIAN
10 PRECEDENT TO SAY THAT WHERE AN EXCESS INSURER PAYS A CLAIM ON
11 BEHALF OF THE INSURED AND IS ENTITLED TO CONTRIBUTION AS --
12 FOR PURPOSES OF THIS MOTION, IT'S UNDISPUTED THAT RELIANCE DID
13 PAY $2 MILLION THAT WAS ACTUALLY TDC'S OBLIGATION TO PAY. IT

EXHIBIT 1
PAGE 8

080902c.txt
```
14 WOULD BE A DEVASTATING PRECEDENT TO SAY THAT THAT INSURER IS
15 NOT ENTITLED TO CONTRIBUTION, AND THAT IT SHOULD BE LIMITED TO
16 THE MUCH MORE RESTRICTIVE DOCTRINE OF SUBROGATION.  THAT WOULD
17 BE A GRAVE DETERRENT TO INSURERS --
18           THE COURT:  BUT WOULDN'T I BE DOING THAT, IN TERMS
19 OF HAWAII LAW, AS A CASE OF FIRST IMPRESSION?  AND I WOULD BE
20 ATTEMPTING TO FIGURE OUT WHAT THE HAWAII SUPREME COURT WOULD
21 DO WITHOUT THE PRESENCE OF A STATUTE, AND BETWEEN PRIMARY AND
22 EXCESS CARRIERS.  AND ALAMEDA INVOLVES, YOU KNOW, JOINT TORT-
23 FEASORS; IT'S NOT THE INSURANCE COMPANY.  SO, AREN'T YOU
24 REALLY SAYING THAT THIS IS A CASE OF FIRST IMPRESSION IN TERMS
25 OF HAWAII LAW?
0018
 1           MR. DONSBACH:  IT DEPENDS ON HOW YOU LOOK AT THE
 2 DOCTRINE.  THE WAY THE CASES HAVE LOOKED AT THIS, THEY HAVEN'T
 3 SEPARATED OUT THIS VOLUNTEER IDEA FROM THE IDEA OF COMMON
 4 LIABILITY.  IN A NUMBER OF THE CASES -- AND WE DISCUSS THIS IN
 5 OUR BRIEF --
 6           THE COURT:  WELL, WOULDN'T IT BE A FIRST CASE WHERE
 7 THE INSURERS WERE INVOLVED IN THE STATE OF HAWAII, IF I WERE
 8 TO RULE ON THIS?
 9           MR. DONSBACH:  THE FIRST INSURANCE CASE WAS A NINTH
10 CIRCUIT CASE APPLYING HAWAII LAW.  SO I THINK WE CAN LOOK TO
11 THAT.  BUT, WITH RESPECT TO --
12           THE COURT:  WELL, LET'S TALK ABOUT THAT.  TELL ME
13 HOW THAT IS SIMILAR HERE.
14           MR. DONSBACH:  THAT WAS A CASE THAT DID INVOLVE
15 INSURERS -- (PERUSING DOCUMENTS) -- AND THE ARGUMENT WAS
16 ESSENTIALLY THE SAME ARGUMENT THAT WAS RAISED HERE, THAT THE
17 ONE INSURER THAT HAD PAID THE CLAIM WAS DOING SO AS A
18 VOLUNTEER AND WASN'T ACTING --
19           THE COURT:  WAS THERE A PRIMARY INSURER AND AN
20 EXCESS CARRIER INSURED THERE, OR --
21           MR. DONSBACH:  NO, IT WAS A CGL INSURER AND A
22 PROFESSIONAL LIABILITY INSURER.
23           THE COURT:  SO THEY DIDN'T HAVE -- IT WASN'T A
24 PRIMARY AND THE EXCESS?
25           MR. DONSBACH:  NO.  SO IF YOUR HONOR'S QUESTION IS,
0019
 1 HAVE THE HAWAII STATE COURTS SPECIFICALLY ADDRESSED THE ISSUE
 2 OF CONTRIBUTION BY AN EXCESS INSURER AS AGAINST A PRIMARY
 3 INSURER, I'M NOT AWARE OF ANY AUTHORITY.  SO, TO THAT EXTENT,
 4 IT MIGHT BE DEEMED AN ISSUE OF FIRST IMPRESSION.  BUT I THINK
 5 BOTH THE FIRST INSURANCE AND THE ALAMEDA CASES PROVIDE VERY
 6 STRONG GUIDANCE --
 7           THE COURT:  WELL, THEY PROVIDE SOME GUIDANCE, BUT IT
 8 ISN'T -- WE DON'T HAVE A HAWAII CASE ON POINT.
 9           MR. DONSBACH:  I THINK, TO THAT EXTENT, THAT THAT'S
10 CORRECT.  AND THESE CASES, THOUGH, DO TELL US HOW THE HAWAII
11 COURTS LOOK AT WHAT THE PUBLIC POLICY ISSUES ARE, IN TERMS OF
12 SETTLEMENTS WITH RESPECT TO INSUREDS.
13           IN THIS CASE IT'S UNDISPUTED, FOR PURPOSES OF THE
14 MOTION, THAT THE DOCTORS' COMPANY OWED $3 MILLION IN INSURANCE
15 COVERAGE; THAT WAS FOR THE THREE CLAIMS.
16           THE COURT:  I DON'T THINK YOU CAN SAY THAT'S
17 UNDISPUTED.  I THINK THAT'S WHY WE'RE HERE.
18           MR. DONSBACH:  WELL, FOR PURPOSES OF THE MOTION TO
19 DISMISS, THE ALLEGATIONS OF THE COMPLAINT ARE ACCEPTED AS
20 TRUE, AND THAT IS ONE OF THE ALLEGATIONS, IS THAT TDC, THE
21 DOCTORS' COMPANY, OWED $3 MILLION IN COVERAGE.  AND, AS A
22 PUBLIC POLICY ISSUE, WHICH IS WHAT THE HAWAII COURT WAS
23 LOOKING AT IN ALAMEDA, HOW DO YOU WANT TO APPROACH ALLOCATION
24 AMONG THE INSUREDS?  DO YOU WANT TO HAVE AN IMPEDIMENT OR A
                              Page 8
```

EXHIBIT 1
PAGE 9

```
                               080902c.txt
25 DETERRENT TO THE INSUREDS TO SETTLE THOSE CASES BY DISALLOWING
0020
 1 THE DOCTRINE OF CONTRIBUTION IN THAT CIRCUMSTANCE AND LIMITING
 2 THEM TO SUBROGATION, OR -- AND THIS IS THE WAY THE HAWAII
 3 SUPREME COURT CAME DOWN IN ALAMEDA -- DO YOU WANT TO GO AHEAD
 4 AND ENCOURAGE THE INSURERS TO SETTLE THE CASE, PROTECT THE
 5 INSURED, TAKE CARE OF THE THIRD-PARTY CLAIMANT?  AND, HERE, IT
 6 WAS A $4.3 MILLION SETTLEMENT, WHICH OBVIOUSLY INVOLVED VERY
 7 SIGNIFICANT INJURIES AND A COMPELLING NEED FOR COMPENSATION.
 8 THAT'S THE WAY THAT THE HAWAII SUPREME COURT HAS COME DOWN.
 9 AND, FRANKLY, THE COURTS IN ALL OF THE OTHER JURISDICTIONS, IN
10 MODERN TIMES, HAVE ALSO MADE THAT DETERMINATION, THAT YOU WANT
11 TO ENCOURAGE SETTLEMENTS; YOU DON'T WANT TO DETER AN INSURER
12 FROM PAYING MORE THAN IT THINKS IS OWED UNDER ITS POLICY.
13          I WANTED TO ADDRESS THE ISSUE OF THE LEGAL THREAT,
14 BECAUSE THAT WAS SOMETHING THAT TDC DISCUSSED IN ITS REPLY.
15 AND WHAT I THINK THEIR POSITION IS, ALTHOUGH THEY DON'T SAY
16 THIS, IS THAT, UNLESS THERE IS AN ACTUAL LAWSUIT FILED AGAINST
17 THE INSURER, THEN THEY WOULDN'T CONSIDER THAT A LEGAL THREAT.
18 AND THAT IS EXACTLY CONTRARY TO WHAT ALL OF THE MODERN CASES
19 SAY, IS THAT -- AND, IN FACT, THIS IS ALSO STATED IN HAWAII
20 CASES, ALAMEDA AND FIRST INSURANCE, THAT THERE SIMPLY NEEDS TO
21 BE A THREAT OF LEGAL ACTION, NOT, IN FACT, LEGAL ACTION
22 PENDING AGAINST AN INSURER.  IT'S SIMPLY THE THREAT OF THAT
23 ALONE SHOULD BE SUFFICIENT TO TAKE THEM OUT OF THE UMBRELLA OF
24 BEING A VOLUNTEER.
25          AND, OBVIOUSLY, THE POLICY UNDERLYING THAT IS THAT
0021
 1 AN INSURER SHOULDN'T HAVE TO, IN EVERY INSTANCE, BRING A
 2 LAWSUIT WHERE THERE'S A COVERAGE DISPUTE IN ORDER TO GET A
 3 THIRD-PARTY CLAIM SETTLED.  IT'S NOT UNUSUAL TO HAVE COVERAGE
 4 DISPUTES BETWEEN INSURERS WHEN YOU HAVE A VERY SIGNIFICANT
 5 CLAIM LIKE THIS ONE THAT IMPLICATES MORE THAN ONE POLICY
 6 LEVEL.  AND, IN THOSE CIRCUMSTANCES, THE COURTS HAVE VERY
 7 STRONGLY COME DOWN ON THE SIDE OF ALLOWING THE INSURERS TO
 8 SETTLE THE CASE AND LATER WORK OUT BETWEEN THEMSELVES WHAT THE
 9 ACTUAL COVERAGE WAS UNDER THE VARIOUS POLICIES.
10          THANK YOU, YOUR HONOR.
11          THE COURT:  I HAVE A COUPLE QUESTIONS:
12          I DID ASK YOU TO ADDRESS THE QUESTION OF THE
13 JURISDICTION, AND YOU DID SO.  BUT I'M HAVING SOME DIFFICULTY
14 WITH THIS, BECAUSE IT APPEARS THAT IT SHOULD BE HAWAII LAW; IT
15 APPEARS THAT THERE ARE SOME ISSUES OF FIRST IMPRESSION; AND,
16 IT APPEARS THAT, WHATEVER HAPPENED IN THAT CASE OVER IN STATE
17 COURT WAS IMPORTANT TO THE RESOLUTION OF THIS CASE.
18          I HEARD THE DEFENDANT'S CHARACTERIZATION OF WHO WAS
19 THERE AND WHAT WENT ON.  WHAT'S YOUR TAKE ON THAT?
20          MR. DONSBACH:  THE CASE WAS NOT DETERMINED ON THE
21 MERITS; IT WAS SETTLED.  THERE WAS NO DETERMINATION OF
22 LIABILITY THAT WOULD AFFECT HOW COVERAGE WOULD BE APPLIED IN
23 THIS CASE.  THAT CASE WAS SETTLED AFTER -- WELL BEFORE THE
24 TRIAL DATE, AND THERE WERE NO DISPOSITIVE MOTIONS EVEN
25 PENDING, AS FAR AS I'M AWARE OF, AND CERTAINLY NONE THAT HAD
0022
 1 BEEN DECIDED --
 2          THE COURT:  HOW WAS YOUR PLAINTIFF INVOLVED?
 3          MR. DONSBACH:  WAS NOT A PARTY, NOR WAS THE DOCTORS'
 4 COMPANY A PARTY.  THE PARTIES WERE THE MAGDA PLAINTIFFS,
 5 STRAUB, AND THE TWO -- I BELIEVE IT'S TWO DOCTORS WERE
 6 PARTIES.
 7          THE COURT:  AND YOU WEREN'T INVOLVED IN ANY WAY?  I
 8 MEAN, DOCTORS SAID THEY PROVIDED THE ATTORNEYS.
 9          MR. DONSBACH:  THAT'S CORRECT.  SINCE THE DOCTORS
                                Page 9
```

EXHIBIT 1
PAGE 10

```
                              080902c.txt
10 HAD THE PRIMARY POLICY, THEY HAD THE DUTY TO DEFEND, AND THEY
11 WERE PAYING --
12           THE COURT:  HOW DID IT END UP THAT YOUR FIRM WROTE A
13 CHECK?
14           MR. DONSBACH:  THE DOCTORS' COMPANY TOOK THE
15 POSITION THAT THEY CONSIDERED IT ONLY ONE CLAIM.  THEY FELT
16 THAT STRAUB WAS THE ONLY ENTITY THAT WAS IMPLICATED UNDER
17 THEIR POLICY, EVEN THOUGH THEY AGREED THAT THE OTHER DOCTORS
18 WERE ADDITIONAL NAMED INSUREDS UNDER THEIR POLICY.  THEY JUST
19 WANTED TO IGNORE THAT.
20           THE COURT:  WELL, SOMEBODY CALLED UP ON THE
21 TELEPHONE AND SAID, WRITE ME A CHECK FOR $3.3, AND YOU FOLKS
22 SAID, FINE?
23           MR. DONSBACH:  THERE WERE SIGNIFICANT DISCUSSIONS
24 OVER A PERIOD OF ABOUT SIX MONTHS BETWEEN THE PARTIES, AND
25 STRAUB WAS VERY UPSET AND FELT THAT THE DOCTORS' COMPANY WAS
0023
 1 HOLDING UP THE SETTLEMENT.  RELIANCE, EARLY ON, RECOGNIZED
 2 THAT ITS EXCESS POLICY WAS IMPLICATED, ALTHOUGH IT FELT ONLY
 3 ABOVE THE $3 MILLION THRESHOLD.
 4           THE COURT:  AND THESE WERE SETTLEMENT DISCUSSIONS
 5 OVER IN CIRCUIT COURT, IN THE STATE OF HAWAII, WITH THE JUDGE
 6 PRESIDING?
 7           MR. DONSBACH:  THAT IS CORRECT.
 8           THE COURT:  OKAY.
 9           SO, WHAT HAPPENED HAPPENED OVER IN STATE COURT?
10           MR. DONSBACH:  THE THIRD PARTY LAWSUIT, YES,
11 YOUR HONOR, WAS IN STATE COURT.  AND I DON'T BELIEVE THAT
12 OPERATES AS ANY LIMITATION ON FEDERAL JURISDICTION HERE.
13 THERE'S NO DISPUTE THAT IT'S A DIVERSITY CASE.  THE TWO
14 PARTIES HAVE CITIZENSHIP IN DIFFERENT STATES, AND WE FELT THIS
15 WAS THE APPROPRIATE FORUM TO BE IN.  THE CASE, WHEN IT WAS IN
16 STATE COURT, ACTUALLY WAS BEFORE JUDGE CHANG, WHOM I
17 UNDERSTAND IS NO LONGER A STATE COURT JUDGE, SO THERE WOULDN'T
18 BE ANY VALUE --
19           THE COURT:  SO I SHOULD JUST SEND IT DOWN TO HIM...
20 YOU FOLKS WANT TO -- OKAY, YOU WANT TO AGREE TO HAVE JUDGE
21 CHANG TRY THIS CASE?  HE'S HERE.  HE'S A MAGISTRATE.  YOU CAN
22 AGREE TO HAVE HIM TRY THIS CASE.
23           MR. DONSBACH:  THAT WOULD BE SOMETHING THAT I WOULD
24 BE HAPPY TO TAKE BACK TO MY CLIENT AND HAVE THEM CONSIDER.
25 BUT THE REASON I MENTION THAT IS, THERE'S NO VALUE TO THE
0024
 1 PARTIES IN GOING BACK TO STATE COURT, BECAUSE THE JUDGE WHO
 2 WAS INVOLVED IN THE SETTLEMENT DISCUSSIONS, WHO HAD SOME
 3 KNOWLEDGE OF THE LITIGATION, IS NO LONGER --
 4           THE COURT:  IS AVAILABLE TO YOU HERE.
 5           MR. DONSBACH:  WELL, HE IS NO LONGER IN THE STATE
 6 COURT, AND I --
 7           THE COURT:  WELL, HE IS HERE IN THE BUILDING, AND I
 8 AM HAPPY TO MAKE HIM AVAILABLE TO YOU, AND I AM SURE HE WOULD
 9 BE HAPPY TO HELP.
10           IT WOULDN'T SOLVE THE PROBLEM, THOUGH, OF THE FACT
11 THAT THIS IS HAWAII LAW.  AND HE ISN'T A STATE JUDGE ANY
12 LONGER.  AND, WHILE I ADMIRE AND APPRECIATE HIS EXPERTISE, HE
13 WOULDN'T BE ACTING AS A STATE JUDGE WHEN HE PRONOUNCED ANY
14 DECISION, IN TERMS OF HAWAII LAW, THOUGH HE PROBABLY WOULD BE
15 A LOT BETTER AT IT THAN I AM, HAVING HAD HIS EXPERIENCE.  BUT
16 I REALLY DO FEEL THERE IS A QUESTION HERE ABOUT WHETHER OR NOT
17 THIS SHOULD BE IN THIS COURT.  THAT IS ONE WAY OF RESOLVING
18 IT...
19           WHAT'S THE POSITION OF THE DEFENDANTS ON HAVING
20 JUDGE CHANG -- HAVING IT DESIGNATED TO JUDGE CHANG?
                              Page 10
```

EXHIBIT 1
PAGE 11

```
                              080902c.txt
21            MR. MIYOSHI:  WELL, CERTAINLY, I THINK WE WOULD HAVE
22  TO TALK TO OUR CLIENT ABOUT THAT; BUT, WE WOULD CERTAINLY
23  OFFER AND CONSIDER THAT.
24            THE COURT:  JUDGE CHANG WILL BE SO PLEASED...
25            ANYTHING ELSE YOU WANTED TO SAY, MR. DONSBACH?
0025
 1            MR. DONSBACH:  IF THE COURT WERE LOOKING FOR THE
 2  DISCUSSION OF THE DISCRETIONARY JURISDICTION UNDER THE
 3  DECLARATORY JUDGMENT ACT, I WOULD CERTAINLY BE HAPPY TO
 4  ADDRESS THAT BRIEFLY.
 5            THE COURT:  SURE, GO AHEAD.
 6            MR. DONSBACH:  THE TWO SIGNIFICANT --
 7            THE COURT:  BECAUSE THAT REALLY IS OF CONCERN TO ME.
 8  BUT I DIDN'T KNOW IT WAS JUDGE CHANG WHO HAD PRESIDED, SO
 9  THAT'S JUST A NEW WRINKLE.  BUT GO AHEAD.
10            MR. DONSBACH:  AND I DO THINK THE COURT IS WELL
11  TAKEN IN WANTING TO ADDRESS THAT ISSUE AND HAVE SOME WRITTEN
12  FINDINGS, SINCE THE NINTH CIRCUIT HAS INDICATED THAT THAT IS
13  THE PREFERABLE PRACTICE.  SO I THINK THAT THAT DOES MAKE SENSE
14  TO DO THAT FAIRLY EARLY.
15            THE TWO REALLY SIGNIFICANT FACTORS HERE THAT ARE
16  RELEVANT UNDER THE NINTH CIRCUIT PRECEDENT IS THAT, NUMBER
17  ONE, THERE IS NO PENDING STATE COURT ACTION INVOLVING THESE
18  ISSUES BETWEEN THESE PARTIES.  THE EARLIER THIRD-PARTY
19  LITIGATION DID NOT INVOLVE ANY ISSUES OF COVERAGE, WAS SIMPLY
20  THE LAWSUIT THAT WAS FILED AGAINST STRAUB THAT GAVE RISE TO
21  THE INSURANCE CLAIM.  SO THAT'S NOT AT ALL A FACTOR UNDER THE
22  NINTH CIRCUIT'S TEST.  IN FACT, THAT TEST WAS DEVELOPED TO
23  GIVE THE FEDERAL COURTS DISCRETION TO DISMISS DECLARATORY
24  JUDGMENT CLAIMS WHERE THERE WAS A CLAIM PENDING UNDER STATE
25  LAW INVOLVING THE SAME ISSUES, THE SAME PARTIES -- BASICALLY
0026
 1  THE SAME LITIGATION.  THAT'S NOT AT ALL THE CASE HERE.
 2  THERE'S NO CLAIM PENDING OR IMPENDING IN STATE COURT.
 3            THE OTHER SIGNIFICANT FACTOR HERE, WHICH I THINK IS
 4  DISPOSITIVE, IS THAT THERE ARE, IN ADDITION TO THE DECLARATORY
 5  RELIEF CLAIM, THERE ARE THREE MONETARY RELIEF CLAIMS ALLEGED
 6  IN THE COMPLAINT FOR SUBROGATION, EQUITABLE SUBROGATION,
 7  CONTRIBUTION AND INDEMNITY.  AND THE CASES -- BOTH DIZOL AND
 8  TWO RECENT CASES -- HAVE SAID THAT WHERE THAT IS THE CASE,
 9  THERE REALLY IS NO REASON TO CONSIDER DISMISSING THE CASE
10  UNDER THE DECLARATORY JUDGMENT ACT, AND, IN FACT, IT WOULD
11  PROBABLY BE AN ABUSE OF DISCRETION TO DO THAT, BECAUSE NONE OF
12  THE FACTORS WOULD SUPPORT THAT DISMISSAL.
13            WHEN YOU LOOK AT THE FACTORS, THE UNDERLYING
14  CONSIDERATION IS NOT TO HAVE DUPLICATIVE LITIGATION.  HERE
15  THAT WOULD ACTUALLY -- IT WOULD ACTUALLY POTENTIALLY OPERATE
16  THAT WAY, BECAUSE THE COURT DOESN'T HAVE DISCRETIONARY
17  JURISDICTION, BUT, INSTEAD, HAS MANDATORY JURISDICTION OVER
18  THE CLAIMS FOR MONETARY RELIEF.  SO, IF THE COURT WERE TO
19  DISMISS THE DECLARATORY RELIEF CLAIM ON THE BASIS THAT IT
20  SHOULD BE LITIGATED IN STATE COURT, THE RESULT WOULD BE THE
21  RISK OF HAVING DUPLICATIVE LITIGATION AT THAT POINT.
22            THE COURT:  WELL, WE ALSO NEED TO LOOK AT THE
23  QUESTION OF MY PRONOUNCING STATE LAW, WHEN IT IS AVAILABLE TO
24  SEND, FOR EXAMPLE, SEND A QUESTION TO THE STATE SUPREME COURT
25  FOR A DECLARATION AS TO WHAT THEY WOULD DO IN A SITUATION LIKE
0027
 1  THIS.
 2            MR. DONSBACH:  THE LAW, I THINK, IS SUFFICIENTLY
 3  WELL DEVELOPED WITH ALAMEDA, AND THE WEALTH OF AUTHORITY FROM
 4  OTHER STATES, SHOWING THAT THE MODERN DOCTRINE ALLOWS
 5  CONTRIBUTION UNDER THE CIRCUMSTANCE.  SO, ALTHOUGH PERHAPS
                              Page 11
```

EXHIBIT 1
PAGE 12

```
                             080902c.txt
  6  THERE IS NO HAWAII CASE DIRECTLY ON POINT SPECIFICALLY
  7  ADDRESSING THAT NARROW ISSUE, I THINK THE AUTHORITY THAT DOES
  8  EXIST IS PROVIDING SUFFICIENT GUIDANCE TO ALLOW THIS COURT TO
  9  MAKE A DECISION.  AND I DON'T THINK IT REPRESENTS A
 10  PARTICULARLY NOVEL ISSUE FOR -- ONE THAT CAN'T BE DECIDED BY
 11  REFERENCE TO THE EXISTING PRECEDENT.  SO I DON'T THINK THAT
 12  CIRCUMSTANCE WOULD REALLY BE A BASIS FOR DISMISSING THIS CASE
 13  IN FAVOR OF HAVING IT LITIGATED IN STATE COURT.
 14          I THINK YOU ALSO HAVE TO LOOK AT THE FACT THAT THIS
 15  CASE WAS FILED, I THINK, IN MARCH, AND -- WHILE WE ARE JUST
 16  NOW GETTING TO THE MOTION TO DISMISS, THERE HAVE BEEN SOME
 17  DISCOVERY PROPOUNDED AND SOME RESPONSES SERVED.  SO WE ARE
 18  GETTING TO THE MID-POINT OF THE LITIGATION, AND I THINK IT
 19  WOULD BE DISRUPTIVE TO HAVE IT DISMISSED AND IT HAVE TO BE
 20  REFILED IN STATE COURT.
 21          THE COURT:  IS THERE A STATUTE OF LIMITATIONS
 22  PROBLEM OF ANY KIND?
 23          MR. DONSBACH:  NOT THAT I AM AWARE OF.  BUT I DON'T
 24  KNOW WHAT TDC'S POSITION IS ON THAT.
 25          THE COURT:  OKAY, THANK YOU.
0028
  1          MR. DONSBACH:  THANK YOU.
  2          THE COURT:  MR. MIYOSHI, WHAT IS YOUR POSITION ON
  3  THE STATUTE OF LIMITATIONS QUESTION?
  4          MR. MIYOSHI:  I THINK WE HAVE BEEN LOOKING AT THAT
  5  ISSUE QUITE INTENTLY.  WE HAVEN'T REALLY COME TO ANY KIND OF A
  6  CONCRETE DETERMINATION ON WHAT THE --
  7          THE COURT:  DO YOU BELIEVE THAT THERE IS A STATUTE
  8  OF LIMITATIONS PROBLEM FOR THEM REFILING IN STATE COURT?
  9          MR. MIYOSHI:  I WOULD BE RELUCTANT TO GIVE A
 10  CONCRETE ANSWER ONE WAY OR THE OTHER, JUST BECAUSE I DON'T
 11  THINK WE'VE DONE ENOUGH TO LOOK AT THAT ISSUE TO SAY ONE WAY
 12  OR THE OTHER WHETHER, IF THEY REFILED AT THIS POINT, WHETHER
 13  THERE WOULD BE A STATUTE OF LIMITATIONS PROBLEM.
 14          IF I MAY, I WOULD JUST LIKE TO MAKE A -- ADDRESS A
 15  COUPLE POINTS:  FIRST, I WOULD LIKE TO JUST -- WITH RESPECT TO
 16  THE FACTS IN THE UNDERLYING CASE, AND I DON'T WANT TO GET TOO
 17  MUCH INTO THEM, BUT I JUST WOULD LIKE TO SAY THAT, WHEN THEY
 18  INITIALLY FILED THE COMPLAINT, THE COMPLAINT WAS FILED AGAINST
 19  STRAUB DIRECTLY, AND IT DID NOT NAME ANY OF THE ADDITIONAL
 20  NAMED INSUREDS, AND THAT'S ONE OF THE REASONS WHY --
 21          THE COURT:  WHEN YOU SAY THEY FILED THE COMPLAINT --
 22          MR. MIYOSHI:  WHEN THE PLAINTIFFS IN THE UNDERLYING
 23  TORT ACTION --
 24          THE COURT:  OKAY.
 25          MR. MIYOSHI:  -- FILED THE COMPLAINT AGAINST STRAUB,
0029
  1  IT WAS FILED SOLELY AGAINST STRAUB, INITIALLY, AND IT WAS
  2  TDC'S POSITION THAT, BECAUSE THEY WERE THE ONLY ONES NAMED AS
  3  DEFENDANTS, THAT IT ONLY TRIGGERED ONE INSURANCE LIMITS --
  4          THE COURT:  I THOUGHT THERE WAS AN AMENDMENT THAT
  5  NAMED TWO DOCTORS --
  6          MR. MIYOSHI:  THERE WAS AN AMENDMENT, AND THAT'S
  7  WHAT HAPPENED, IS, RELIANCE BECAME, I THINK, SIGNIFICANTLY
  8  INVOLVED IN THE SETTLEMENT MATTERS, AND THAT BECAME THE ISSUE
  9  OF WHETHER OR NOT THE ADDITIONAL NAMED INSUREDS WERE ACTUALLY
 10  PART OF THE SUIT.  AND I BELIEVE IT WAS NOVEMBER 2ND, WHICH
 11  WAS SEVEN DAYS BEFORE THE SETTLEMENT, THEY ACTUALLY AMENDED
 12  THE COMPLAINT TO ADD THESE -- THE TWO DOCTORS IN, AND THEN IT
 13  SETTLED ON THE 9TH.  THE POINT BEING IS THAT, RELIANCE HAD
 14  THEIR HAND IN THIS THING THE WHOLE WAY.  AND, IN FACT, I
 15  BELIEVE -- IT'S MY UNDERSTANDING THAT THEY ARE THE ONES WHO
 16  WERE PRESSING FOR THE PLAINTIFFS TO ESSENTIALLY AMEND THE
                                Page 12
```

EXHIBIT 1
PAGE 13

```
                              080902c.txt
17 COMPLAINT SO THAT IT WOULD IMPLICATE THE ADDITIONAL POLICY
18 LIMITS, UNDER OUR OWN THEORY.  SO I THINK THAT THAT NEEDS
19 TO -- YOU KNOW, THAT THERE IS SOME ADDITIONAL CONTEXT, IN
20 TERMS OF THE FACTS, OF HOW SETTLEMENT CAME ABOUT.
21           RELIANCE WAS SIGNIFICANTLY INVOLVED IN THE
22 SETTLEMENT OF THIS MATTER.
23           ADDITIONALLY, WITH RESPECT TO THE CHOICE OF LAW
24 ISSUE, IT'S OUR POSITION THAT ALL THE EVENTS OCCURRED IN
25 HAWAII.  THE CONTRACT WAS EXECUTED IN HAWAII.  THE UNDERLYING
0030
 1 MATTER OCCURRED HERE IN HAWAII.  THE INSUREDS ARE HERE IN
 2 HAWAII.  THUS, I THINK THAT THE CORRECT CHOICE OF LAW WOULD BE
 3 HAWAII.
 4           AND IF THIS COURT WOULD ENTERTAIN -- OR WOULD LIKE
 5 TO HAVE ADDITIONAL BRIEFING ON THAT PARTICULAR ISSUE, WE
 6 CERTAINLY WOULD BE AMENABLE TO DOING SO.
 7           FINALLY, THE PLAINTIFFS ATTEMPT TO MAKE A
 8 DISTINCTION BETWEEN THE EXCESS PRIMARY INSURER CASES THAT WE
 9 HAVE CITED IN OUR REPLY MEMO BY ESSENTIALLY SAYING THAT, WELL,
10 THESE CASES INVOLVE PRIMARY INSURERS SEEKING RECOVERY AGAINST
11 THE EXCESS INSURER.  I THINK THAT MISSES THE POINT OF THOSE
12 CASES.  AND IF YOU LOOK AT THE GENERAL PROPOSITIONS THAT WERE
13 SET OUT IN ALL OF THOSE CASES, IT'S ESSENTIALLY THAT PRIMARY
14 AND EXCESS INSURERS HAVE COMPLETELY AND SEPARATE AND DIFFERENT
15 OBLIGATIONS OF COVERAGE; AND, THEREFORE, THERE'S NO COMMON
16 OBLIGATION, BURDEN OR LIABILITY AS BETWEEN PRIMARY AND EXCESS
17 INSURERS.  AND THAT, I THINK, IS THE POINT HERE:
18           AND I THINK YOUR HONOR IS CORRECT IN SAYING THAT
19 THIS WOULD BE A CASE OF FIRST IMPRESSION HERE IN HAWAII, FOR A
20 HAWAII STATE DECISION, BECAUSE, EVEN THOUGH ALAMEDA TALKS
21 ABOUT THE DOCTRINE OF VOLUNTEER AND HOW THAT WOULD AFFECT
22 ONE'S STATUS IN THE SUBROGATION CLAIM, THERE REALLY IS NO CASE
23 LAW WITH RESPECT TO HOW TWO DIFFERENT INSURERS WHO HAVE
24 SEPARATE AND COMPLETELY INDEPENDENT OBLIGATIONS, HOW THE COURT
25 WOULD VIEW THEIR OBLIGATIONS IN CIRCUMSTANCES SIMILAR TO THE
0031
 1 ONE WE HAVE HERE.  SO, IN THAT SENSE, I DO BELIEVE THAT THIS
 2 WOULD BE A CASE OF FIRST IMPRESSION FOR THIS COURT.
 3           AND, IN THAT SENSE, MAYBE IT IS SOMETHING THAT THE
 4 COURT MAY EXERCISE DISCRETION IN SAYING, LISTEN, THIS SHOULD
 5 BE HANDLED BY THE STATE COURT.
 6           THANK YOU, YOUR HONOR.
 7           THE COURT:  THANK YOU.
 8           DID YOU WANT TO SAY ANYTHING ELSE, MR. DONSBACH?
 9           MR. DONSBACH:  YES, YOUR HONOR, IF I COULD JUST
10 ADDRESS A COUPLE OF QUICK POINTS.
11           FIRST, WITH RESPECT TO THE CHOICE OF LAW ISSUE, IF
12 THE COURT WOULD LIKE ADDITIONAL BRIEFING ON THAT, I THINK
13 MR. MIYOSHI --
14           THE COURT:  WELL, YOU CONCEDED, AT LEAST FOR
15 PURPOSES OF THIS DECISION, HAWAII LAW.  THEY SAY HAWAII LAW
16 APPLIES, SO IT DOESN'T SEEM LIKE THERE'S ANY REASON TO -- IT
17 APPEARS THAT HAWAII LAW APPLIES, SO I DON'T SEE ANY REASON TO
18 DO ANYTHING FURTHER ON THAT.
19           MR. DONSBACH:  THAT'S FINE.  I WAS JUST GOING TO
20 SUGGEST THAT IF THE COURT FELT IT APPROPRIATE, WE WOULD BE
21 HAPPY TO DO THAT, BUT --
22           THE COURT:  WELL, I DON'T SEE ANYTHING THAT GETS US
23 ANYPLACE ELSE, AND NOBODY SAID ANYTHING TODAY THAT GETS US
24 ANYPLACE ELSE, SO, IT SEEMS TO ME, SINCE YOU HAVE AGREED TO
25 HAVE IT APPLY, AND THEY SAY IT DOES APPLY, THERE'S NO REASON
0032
 1 TO DO ANYTHING ELSE ON IT AT THIS POINT, IN TERMS OF THIS
                                 Page 13
```

EXHIBIT 1
PAGE 14

```
                              080902c.txt
 2 MOTION.
 3           MR. DONSBACH:  THAT'S FINE, YOUR HONOR.
 4           JUST A COUPLE OTHER POINTS:  FIRST, I WOULD DISAGREE
 5 THAT, TO THE EXTENT THERE IS AN ISSUE OF FIRST IMPRESSION,
 6 THAT THAT WOULD BE A BASIS FOR DISMISSAL OF THE CASE.  IT IS A
 7 DIVERSITY CASE, AND IT'S NOT UNUSUAL TO HAVE ISSUES ARISE IN
 8 DIVERSITY CASES THAT MAY NOT HAVE EXPRESSLY BEEN DECIDED ON
 9 ALL FOURS IN THE STATE COURT.  AND I THINK THAT THAT WOULD NOT
10 BE A BASIS FOR DISMISSING THE CASE, TO THE EXTENT THE COURT
11 DID FEEL THERE WAS AN ISSUE OF FIRST IMPRESSION.
12           AND, WITH RESPECT TO THE IDEA OF HAVING JUDGE CHANG
13 ASSUME THE HANDLING OF THE CASE, I THINK THAT WOULD BE
14 SOMETHING THAT I WOULD BE INCLINED TO RECOMMEND TO THE CLIENT.
15 BUT, AGAIN, I THINK, AS BOTH PARTIES HAVE INDICATED, THAT
16 WOULD BE SOMETHING THAT WOULD BE A CLIENT DECISION.
17           AND, ON THE ISSUE OF COMMON LIABILITY, IF I COULD
18 JUST ADDRESS THAT A LITTLE BIT FURTHER, BECAUSE I MAY NOT HAVE
19 SUFFICIENTLY DISCUSSED THAT EARLIER, I THINK THE KEY FACT HERE
20 IS THAT WE HAVE A PRIMARY POLICY THAT, AS ALLEGED IN THE
21 COMPLAINT, WAS EXHAUSTED; THEREFORE, AN EXCESS POLICY THAT WAS
22 TRIGGERED.  AND THIS IS DIFFERENT THAN THE CASES THAT TDC
23 RELIES ON, WHERE YOU HAD A PRIMARY POLICY THAT WAS NOT
24 EXHAUSTED, AND THE COURT SAID THERE'S NO COMMON LIABILITY, THE
25 EXCESS POLICY IS NOT EVEN IMPLICATED, THEREFORE, THE PRIMARY
0033
 1 INSURER IS NOT ENTITLED TO CONTRIBUTION AGAINST THE EXCESS
 2 INSURER.
 3           HERE, WE DO HAVE A SPECIES OF COMMON LIABILITY, AT
 4 LEAST SUFFICIENT COMMON LIABILITY TO HAVE A CONTRIBUTION
 5 CLAIM, BECAUSE THE PRIMARY POLICY WAS EXHAUSTED, AND YOU HAD A
 6 SITUATION WHERE THE CASE COULD BE SETTLED FOR $4.3 MILLION,
 7 AND THERE WAS A DISPUTE BETWEEN THE TWO INSURERS AS TO HOW
 8 MUCH PRIMARY COVERAGE WAS AVAILABLE.  AND YOU DID HAVE, IN
 9 FACT, A SCENARIO WHERE BOTH INSURERS WERE GOING TO BE
10 RESPONSIBLE FOR SETTLING THIS CASE, AND IF THEY DIDN'T DO
11 THAT, WOULD BE AT RISK OF A BAD FAITH JUDGMENT LATER BEING
12 ENTERED FOR THE FULL AMOUNT OF WHATEVER JUDGMENT THE THIRD-
13 PARTY PLAINTIFFS COULD GET IN A TRIAL.
14           SO, UNLIKE THE CASES THAT TDC RELIES UPON, YOU DID
15 HAVE TWO INSURERS THAT HAD SOME COMMON OBLIGATIONS TO THE
16 INSURED TO GO AHEAD AND SETTLE THE CASE.
17           THE COURT:  THAT'S AN INTERESTING IDEA, THE IDEA
18 THAT THERE WAS A SANDWICH, AND WE'RE JUST FIGHTING ABOUT THE
19 HAM IN THE MIDDLE.
20           ANYTHING ELSE?
21           MR. DONSBACH:  NO, YOUR HONOR.
22           THE COURT:  OKAY.
23           MR. DONSBACH:  THANK YOU.
24           THE COURT:  THANK YOU.
25           I AM GOING TO APPLY HAWAII LAW FOR THE REASONS I
0034
 1 HAVE STATED, AND I AM GOING TO DENY THE MOTION TO DISMISS,
 2 BECAUSE I BELIEVE THERE ARE SOME CLAIMS STATED, AND IT IS NOT
 3 SUFFICIENTLY CLEAR ON THE BASIS OF THIS COMPLAINT THAT THERE
 4 IS NO THEORY THAT WOULD NOT APPLY.
 5           NOW, THE REMAINING QUESTION, THEN, IS WHETHER OR NOT
 6 THE COURT SHOULD EXERCISE JURISDICTION.  AND I HAVE HAD YOU
 7 BRIEF THAT.  AND, IN DECIDING THE MOTION TO DISMISS, I AM JUST
 8 LOOKING WITHIN THE FOUR CORNERS OF THE DOCUMENT.  WHILE WE
 9 HAVE HAD A LOT OF INFORMATION PUT BEFORE THE COURT TODAY ABOUT
10 WHAT HAPPENED IN THE SETTLEMENT, AND WHERE THE CONTRACTS WERE
11 SIGNED, AND THAT TYPE OF THING, I'M NOT CONSIDERING THAT WITH
12 RESPECT TO THE MOTION TO DISMISS; THAT WOULD BE IMPROPER, AND
                               Page 14
```

EXHIBIT 1
PAGE 15

```
                              080902c.txt
13 I'M NOT DOING THAT.
14            BUT I DID ASK THOSE QUESTIONS, AND I AM INTERESTED
15 FOR WHAT ACTUALLY WENT ON WHEN I AM TRYING TO DECIDE WHETHER
16 OR NOT THIS IS SOMETHING THAT THE COURT SHOULD RETAIN
17 JURISDICTION OVER.  AND I THINK IT'S A CLOSE QUESTION IN THIS
18 CASE, BECAUSE, EVEN THOUGH THERE'S NOTHING PENDING, IT WAS A
19 MATTER DECIDED WITH THE ASSISTANCE OF A STATE JUDGE; AND,
20 THERE IS THE ISSUE OF THE STATE QUESTION.  NOW, THE MONETARY
21 RELIEF THAT'S BEEN REQUESTED, THAT MUDDIES THE WATERS
22 SOMEWHAT.  YOU COULD TAKE THE POSITION THAT YOU CAN'T REACH
23 THE OTHER TWO -- THE OTHER THREE THEORIES WITHOUT DOING A
24 DECLARATORY JUDGMENT AS TO LIABILITY, ETC.  BUT IT SEEMS TO ME
25 THERE ARE SEVERAL ARROWS IN OUR QUIVER THAT WE CAN LOOK AT:
0035
 1            ONE, THIS IDEA THAT JUDGE CHANG ACTUALLY KNOWS
 2 SOMETHING ABOUT THIS CASE.  AND IT WOULD MAKE A LOT OF
 3 SENSE -- AND WE DO ALLOW, IN THIS JURISDICTION, FOR PARTIES TO
 4 AGREE TO A PARTICULAR MAGISTRATE JUDGE.  WE HAVE THREE
 5 TALENTED MAGISTRATE JUDGES, AND SO WE DON'T WORRY TOO MUCH
 6 ABOUT CHOOSING ONE OR THE OTHER.  AND THEY WORK IT OUT.  BUT,
 7 WE COULD, IN THIS CASE, HAVE THIS MATTER DESIGNATED, AND JUST
 8 HAVE JUDGE CHANG DECIDE IT.  AND IT MIGHT REALLY SAVE A LOT OF
 9 ATTORNEY'S FEES, OVERALL, BECAUSE HE IS ALREADY CONVERSANT
10 WITH IT AND WOULD BE ABLE TO ASSIST YOU.  THAT'S THE FIRST
11 QUESTION.
12            THE SECOND QUESTION IS, WE COULD SEND -- IF THE
13 MONETARY RELIEF ISSUES REALLY ARE GOING TO PREVENT SENDING IT
14 OVER TO STATE COURT, DISMISSING IT AND HAVING IT REFILED IN
15 STATE COURT, THEN WE CAN DO A CERTIFIED QUESTION TO THE
16 SUPREME COURT AS TO WHAT THEY WOULD WANT TO DO IN THIS
17 SITUATION.  BUT THAT COULD DRAG IT OUT A BIT.
18            SO, WHAT I AM GOING TO ASK YOU TO DO IS TO GO BACK
19 TO YOUR CLIENTS AND SEE WHETHER OR NOT YOU WILL AGREE TO
20 DESIGNATE IT TO MAGISTRATE CHANG.  I DON'T WANT TO PRESSURE
21 YOU -- I'M NOT SAYING ANYBODY HAS TO DO THIS -- BUT I AM NOT
22 GOING TO DECIDE WHETHER OR NOT WE SHOULD KEEP THE
23 JURISDICTION, OR WHETHER OR NOT WE NEED TO CERTIFY A QUESTION
24 TO THE HAWAII SUPREME COURT -- WHICH WOULD COME LATER IF WE DO
25 DO THAT -- UNTIL YOU FOLKS CONSIDER THAT OPTION.  BECAUSE I
0036
 1 DIDN'T KNOW IT WAS JUDGE CHANG, AND MAYBE YOU HADN'T EVEN
 2 THOUGHT ABOUT THAT BEFORE AS AN OPTION.  AND I THINK IT'S A
 3 VERY INTERESTING OPTION.  SO I'M GOING TO GIVE YOU A WEEK TO
 4 CONTACT YOUR CLIENTS AND LET ME KNOW ABOUT THAT.
 5            IS THERE SOMETHING YOU WANTED TO SAY, MS. LENDIO?
 6            MS. LENDIO:  YES, YOUR HONOR.  WE'LL BRING THAT BACK
 7 TO OUR CLIENTS AND SERIOUSLY CONSIDER THAT, ALONG WITH THE
 8 COMMENTS OF THE COURT.  JUST OFF THE TOP OF MY HEAD, I DO SEE
 9 THAT AS BEING A LITTLE BIT PROBLEMATIC, BECAUSE I BELIEVE THAT
10 WE HAD INTENDED TO LIST JUDGE CHANG AS A WITNESS.  SO THAT
11 WOULD BE -- BUT THAT'S SOMETHING THAT WE --
12            THE COURT:  HEY, YOU DON'T EVEN HAVE TO DO A
13 SUBPOENA...
14            MS. LENDIO:  (LAUGHING.)
15            THE COURT:  I MEAN, REALISTICALLY, THAT'S A VERY
16 GOOD REASON WHY JUDGE CHANG OUGHT TO DO IT.
17            MS. LENDIO:  I UNDERSTAND, YOUR HONOR, AND WE WILL
18 SERIOUSLY CONSIDER THAT AND BRING THAT BACK TO OUR CLIENT.
19            THE COURT:  AND I THINK HIS REPUTATION IS SUCH THAT
20 EVERYBODY MAY BE COMFORTABLE WITH THAT.
21            SO, I AM GOING TO GIVE YOU UNTIL NEXT FRIDAY TO
22 NOTIFY THE COURT WHETHER OR NOT YOU WOULD BE WILLING TO HAVE
23 IT DESIGNATED TO JUDGE CHANG.  IF NOT, IF YOU CAN'T AGREE TO
                                Page 15
```

EXHIBIT 1
PAGE 16

```
                              080902c.txt
24 DO THAT, THEN I WILL DECIDE WHETHER OR NOT TO RETAIN
25 JURISDICTION.
0037
 1          MR. DONSBACH:  YOUR HONOR, COULD I ASK THAT THAT BE
 2 EXTENDED TO THE FOLLOWING MONDAY?  I MAY HAVE ONE OF THE
 3 DECISION MAKERS OUT ON VACATION --
 4          THE COURT:  SURE.  I MEAN, IT ISN'T -- WELL, WE
 5 CAN'T -- WE'RE GOING TO LOSE THIS LAW CLERK AT THE END OF THE
 6 MONTH, SO WE CAN'T EXTEND IT TOO MUCH...
 7          MR. DONSBACH:  AND, IF I GET AN ANSWER SOONER,
 8 WHENEVER I GET THE ANSWER, I'LL CONTACT THE COURT AND OPPOSING
 9 COUNSEL --
10          THE COURT:  OKAY --
11          MR. DONSBACH: -- BUT I JUST DON'T WANT TO --
12          THE COURT:  SURE.  IS THE 19TH SUFFICIENT TIME?  OR
13 THE 20TH?  OR WHATEVER?  THE 19TH IS A MONDAY.  IS THAT --
14          MR. DONSBACH:  THAT WOULD BE FINE, YOUR HONOR.
15          THE COURT:  -- SUFFICIENT TIME?
16          MR. MIYOSHI:  YES, YOUR HONOR.
17          THE COURT:  OKAY.  AND IF YOU WOULD JUST FILE
18 SOMETHING INDICATING ONE WAY OR ANOTHER, IN WRITING, SO WE
19 HAVE THE RECORD, AND THEN I WILL DECIDE WHETHER OR NOT TO
20 RETAIN IT.  AND, AS I SAY, I CAN DEAL WITH THE ISSUE OF THE --
21 BY CERTIFICATION TO THE HAWAII SUPREME COURT; THAT'S A
22 POSSIBILITY.
23          OKAY, IF NOTHING FURTHER, THANK YOU.
24          MR. DONSBACH:  THANK YOU, YOUR HONOR.
25          MR. MIYOSHI:  THANK YOU, YOUR HONOR.
0038
 1          THE BAILIFF:  ALL RISE, PLEASE.
 2          THE COURT STANDS IN RECESS.
 3          (THE HEARING IN THE ABOVE-ENTITLED.
 4          CAUSE WAS CONCLUDED AT 10:45 A.M.)
 5                          -OO0OO-
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
0039
 1
 2
 3
 4
 5
 6
 7                          -OO0OO-
 8      I, STEPHEN B. PLATT, OFFICIAL COURT REPORTER,
                              Page 16
```

EXHIBIT 1
PAGE 17

```
                        080902c.txt
 9 UNITED STATES DISTRICT COURT, DISTRICT OF HAWAII, DO HEREBY
10 CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF
11 PROCEEDINGS BEFORE THE HONORABLE HELEN GILLMOR, UNITED STATES
12 DISTRICT JUDGE.
13
14
15
16
17
18
19                                  _____
20 TUESDAY, JUNE 15, 2004           STEPHEN B. PLATT, CSR NO. 248
21
22
23
24
25
```