Appeal Nos. 04-15558, 04-15598
(Dist. Ct. Civil No. CV-02-00159 HG-BMK)

FILED

AUG - 5 2004

UNITED STATES COURT OF APPEALS

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RELIANCE INSURANCE CO., (in Liquidation), a Pennsylvania corporation, | ) ON APPEAL FROM THE UNITED ) STATES DISTRICT COURT FOR ) THE DISTRICT OF HAWAII ) |
| Plaintiff-Counter-Defendant-Appellee-Cross-Appellant, | ) THE HONORABLE HELEN ) GILLMOR ) |
| vs. | ) ) |
| THE DOCTORS COMPANY, | ) ) |
| Defendant-Counter-Claimant-Appellant-Cross-Appellee. | ) ) ) |

DEFENDANT-COUNTER-CLAIMANT-APPELLANT-
CROSS-APPELLEE THE DOCTOR'S COMPANY'S OPENING BRIEF

**McCORRISTON MILLER
MUKAI MacKINNON LLP**

**DAROLYN HATSUKO LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT**
500 Ala Moana Boulevard
Five Waterfront Plaza, 4th Flr.
Honolulu, Hawaii 96813
Tel.: (808) 529-7300 Fax: (808) 524-8293
E-mail: lendio@m4law.com

Attorneys for Defendant-Counter-
Claimant-Appellant-Cross-Appellee
THE DOCTOR'S COMPANY

89993_2.DOC

EXHIBIT 3
PAGE 21

Appeal Nos. 04-15558, 04-15598
(Dist. Ct. Civil No. CV-02-00159 HG-BMK)

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RELIANCE INSURANCE CO., (in Liquidation), a Pennsylvania corporation,<br><br>    Plaintiff-Counter-Defendant-Appellee-Cross-Appellant,<br><br>    vs.<br><br>THE DOCTORS COMPANY,<br><br>    Defendant-Counter-Claimant-Appellant-Cross-Appellee. | ) ON APPEAL FROM THE UNITED<br>) STATES DISTRICT COURT FOR<br>) THE DISTRICT OF HAWAII<br>)<br>) THE HONORABLE HELEN<br>) GILLMOR<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DEFENDANT-COUNTER-CLAIMANT-APPELLANT-
CROSS-APPELLEE THE DOCTOR'S COMPANY'S OPENING BRIEF

89993_2.DOC

EXHIBIT 3
PAGE 22

## CORPORATE DISCLOSURE STATEMENT

The Doctor's Company is not a corporation, but is an inter-insurance exchange.  The Doctor's Company has no parent corporations, and is not owned, in whole or in part, by any publicly traded company.

DATED:    Honolulu, Hawaii, _____ AUG 2 2004 _____

_____
DAROLYN H. LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT

Attorneys for Defendant-Counter-
Claimant-Appellant-Cross-Appellee
THE DOCTOR'S COMPANY

89993_2.DOC

EXHIBIT 3
PAGE 23

## TABLE OF CONTENTS

**Page**

I.    JURISDICTIONAL STATEMENT ................................................................ 1

II.   ISSUES PRESENTED FOR REVIEW ........................................................ 1

III.  STATEMENT OF THE CASE.................................................................... 2

IV.   STATEMENT OF THE FACTS.................................................................. 4

     A.    The Underlying Malpractice Action ................................................ 5

     B.    The Insurance Companies.................................................................. 6

     C.    TDC's Claims Against Reliance ...................................................... 7

     D.    Liquidation Proceedings Against Reliance..................................... 8

     E.    The Litigation Below ........................................................................ 9

V.    SUMMARY OF ARGUMENT .................................................................. 12

     A.    The District Court Erred in Dismissing TDC's Counterclaim in
         Setoff.................................................................................................. 12

     B.    The District Court Erred in Denying TDC's Motion for
         Summary Judgment and Granting in Part and Denying in Part
         Reliance's Motion for Partial Summary Judgment ........................... 13

     C.    The District Court Abused its Discretion in Denying TDC's
         Motion for Reconsideration............................................................... 13

VI.   STANDARD OF REVIEW ........................................................................ 14

VII.  ARGUMENT .............................................................................................. 15

     A.    The District Court Erred in Dismissing TDC's Counterclaim in
         Setoff.................................................................................................. 15

          1.    Recognition of Full Faith and Credit to Orders of the
              Pennsylvania Commonwealth Court Does Not Preclude
              Setoff ....................................................................................... 15

EXHIBIT 3
PAGE 24

2.    Policy Concerns Favor Setoff.................................................. 22

3.    The Court Erred in Dismissing TDC's Setoff Claim under
      the *Burford* Doctrine .............................................. 25

B.    The District Court Erred in Denying TDC's Motion for
      Summary Judgment and Granting in Part and Denying in Part
      Reliance's Motion for Partial Summary Judgment ......................... 32

1.    Drs. Kubota and Pearce Have Not Been Determined to
      Be Legally Liable for Any Amounts Related to the
      Underlying Claim................................................................ 32

      a.    Drs. Kubota and Pearce were not Legally Liable at
            Settlement................................................................. 33

      b.    Drs. Kubota and Pearce Were Not Properly
            Brought as Defendants.................................................. 37

      c.    The Magdays' Claim Against Drs. Kubota and
            Pearce Was Barred by the Statute of Limitations......... 42

2.    Even if Legal Liability is Established Against Drs.
      Kubota and Pearce, Such Liability Must be Properly
      Allocated................................................................................ 45

C.    The District Court Erred in Denying TDC's Motion for
      Reconsideration ............................................................................. 46

VIII. CONCLUSION .......................................................................... 49

89993_2.DOC                            -ii-

EXHIBIT 3
PAGE 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Sec. Life Assur. Co. of North Carolina v. Mason,*
36 F. Supp. 333 (E.D.N.C. 1993) ........................................................ 31

*Buck v. Miles,*
89 Hawai`i 244, 971 P.2d 717 (1999)................................................... 43

*Burford v. Sun Oil Co.,*
319 U.S. 315 (1943)................................................................... passim

*Carr v. Hamilton,*
129 U.S. 252 (1889).......................................................................... 23

*City of Tucson v. U.S. West Communications, Inc.,*
284 F.3d 1128 (9th Cir. 2002) ........................................................... 14

*Clark v. Fitzgibbons,*
105 F.3d 1049 (5th Cir. 1997) ..................................................... 20, 27

*Comm'r of Ins. v. Munich American Reins. Co.,*
706 N.E.2d 694 (Mass. 1999) ........................................................... 24

*Corcoran v. Universal Reinsurance Corp.,*
713 F.Supp. 77 (S.D.N.Y. 1989) ....................................................... 26

*Crawford v. Employers Reins. Corp.,*
896 F.Supp. 1101 (W.D. Okla. 1995).................................................. 30

*Delta Savings Bank v. United States,*
265 F.3d 1017 (9th Cir. 2001) ........................................................... 15

*Dubin v. Wakuzawa,*
89 Hawai`i 188, 970 P.2d 496 (1998)................................................. 39

*Fireman's Fund Ins. Co. v. Quackenbush,*
87 F.3d 290 (9th Cir. 1996) .............................................................. 14

EXHIBIT 3
PAGE 26

*Four Star Ins. Agency v. Hawaii Elec. Indus., Inc.,*
  89 Hawai`i 427, 974 P.2d 1017 (1999)................................................. 18

*Garcia v. Kaiser Found. Hosp.,*
  90 Hawai`i 425, 978 P.2d 863 (1999)......................................... 38, 40

*Grode v. Mutual Fire, Marine & Inland Ins. Co.,*
  8 F.3d 953 (3d Cir. 1993)................................................. 28, 29, 30, 31

*In re Midland,*
  167 A.D.2d 75, *aff'd,* 590 N.E.2d 1186 (N.Y. 1992)........................... 24

*Kemp v. Metabolife Int'l, Inc.,*
  2003 WL 1936381 (E.D. La. 2003) ...................................................... 27

*Koken v. Cologne Reinsurance (Barbados), Ltd.,*
  34 F. Supp. 2d 240 (M.D. Pa. 1999)........................................ 27, 28, 31

*Lee v. Corregedore,*
  83 Hawai'i 154, 925 P.2d 324 (1996) ................................................. 22

*Lum v. Queens Med. Ctr.,*
  69 Haw. 419, 744 P.2d 1205 (1987) ................................................... 39

*Matter of McLinn,*
  739 F.2d 1395 (9th Cir. 1984) ........................................................... 14

*Meade v. Cedarapids, Inc.,*
  164 F.3d 1218 (9th Cir. 1999) ........................................................... 15

*New Orleans Public Service, Inc. v. Council of City of New Orleans,*
  491 U.S. 350 (1989)................................................................... 25, 29

*New York Title & Mortgage Co. v. Irving Trust Co.,*
  241 A.D. 246 (Sup. Ct. App. Div. 1934), *aff'd* 198 N.E. 397 (N.Y. 1935)... 19, 20

*O'Connor v. Insurance Company of North America,*
  622 F. Supp. 611 (N.D. Ill. 1985)............................... 17, 18, 24, 25, 27

*Prudential Reins. Co. v. Superior Court,*
  842 P.2d 48 (Cal. 1992) *(en banc)* ................................................... 16

89993_2.DOC

EXHIBIT 3
PAGE 27

*Quackenbush v. Allstate Insurance Co.,*
  517 U.S. 706 (1996) .................................................................. 25, 27

*Reliance Ins. Co. v. Shriver, Inc.,*
  224 F.3d 641 (8th Cir. 2000) ........................................................ 18, 27

*Rose v. Fidelity Mutual Life Insurance Co.,*
  207 F. Supp. 2d 50 (E.D.N.Y. 2002) ...................................................... 20

*Schenck v. Coordinated Coverage Corp.,*
  50 A.D.2d 50 (N.Y. App. Div. 1975) ...................................................... 20

*Scott v. Armstrong,*
  146 U.S. 499 (1892).................................................................... 23

*State v. Mallan,*
  86 Hawai'i 440, 950 P.2d 178 (1998) ..................................................... 23

*Taylor et al. v. Mayor, etc., of City of New York,*
  82 N. Y. 10 (1880)...................................................................... 19

*Transit Cas. Co. v. Selective Ins. Co. of the Southeast,*
  137 F.3d 540 (8th Cir. 1998) ........................................................ 23, 24

*Tyree v. Taylor,*
  965 F.2d 773 n.1 (9th Cir. 1992) ........................................................ 15

*Williamson v. General Dynamics Corp.,*
  208 F.3d 1144 (9th Cir. 2000) ........................................................... 14

## Statutes

28 U.S.C. § 1291 ........................................................................... 1

28 U.S.C. § 1294 ........................................................................... 1

28 U.S.C. § 1332(a)(1) ..................................................................... 1

Haw. Rev. Stat. Chapter 431:15 ........................................................... 19

Haw. Rev. Stat. § 431:15-319 (Michie 2002) ..................................... 12, 16, 18, 27

Haw. Rev. Stat. § 431:15-323 ............................................................. 16

89993_2.DOC

EXHIBIT 3
PAGE 28

Haw. Rev. Stat. § 657-7.3 ............................................................... 42, 43

Haw. Rev. Stat. § 663-12 .................................................................... 46

Haw. Rev. Chapter 671 ................................................................... 38, 40

Haw. Rev. Stat. § 671-12 ............................................................... 38, 40

Haw. Rev. Stat. § 671-15.5 .................................................................. 40

Haw. Rev. Stat. § 671-16 .................................................................... 38

Pa. Stat. 40 § 221.33 .......................................................................... 21

Pa. Stat. Ann. tit. 40 § 221.32 (West 2003)............................... 12, 16, 28

## Rules

Fed. R. App. P. 4(a)(1)(A)...................................................................... 1

Fed. R. Civ. P. 56(c) ........................................................................... 15

EXHIBIT 3
PAGE 29

DEFENDANT-COUNTER-CLAIMANT-APPELLANT-
CROSS-APPELLEE THE DOCTOR'S COMPANY'S OPENING BRIEF

I.    JURISDICTIONAL STATEMENT

In its Complaint, Plaintiff-Appellee Reliance Insurance Company (In Liquidation) ("Reliance") invoked the District Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)(1), asserting that the case is between citizens of different states and the amount in controversy exceeds the statutory threshold of $75,000. *See* Excerpts of the Record ("ER") 1. Subsequent to the February 13, 2004 entry of Judgment, ER 12, Defendant-Appellants The Doctor's Company ("TDC") timely filed its Notice of Appeal on March 12, 2004, pursuant to Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure. ER 13. Because the Judgment constitutes a final decision, this Court has jurisdiction to hear this appeal by authority of 28 U.S.C. § 1291 and § 1294.

II.    ISSUES PRESENTED FOR REVIEW

A.    Whether the District Court erred as a matter of law in dismissing TDC's counterclaim in setoff.

B.    Whether the District Court erred as a matter of law in denying TDC's motion for summary judgment and granting in part summary judgment to Reliance, specifically:

EXHIBIT 3
PAGE 30

1.    Whether the District Court erred in finding that Drs.
Kubota and Pearce were legally liable to the plaintiffs in the underlying medical
malpractice litigation;

2.    Even if all three limits of liability were exposed, whether
the District Court erred in not making a determination of the appropriate
apportionment of fault.

C.    Whether the District Court erred as a matter of law in denying
TDC's motion for reconsideration.

III.    STATEMENT OF THE CASE

This is an appeal from the June 17, 2003 Order Granting Plaintiff's
Motion for Dismissal of Counterclaim for Set Off ("Setoff Order," ER 8), the
September 25, 2003 Order Denying Defendant's Motion for Summary Judgment,
ER 9, the September 25, 2003 Order Granting in Part and Denying in Part
Plaintiff's Motion for Summary Judgment, ER 9, and the January 29, 2004 Order
Denying Defendant The Doctors' Company's Motion for Reconsideration of the
Order Filed September 25, 2003, ER 11. Reliance filed this action seeking
recovery of amounts that Reliance, a medical malpractice excess insurance carrier,
had paid on behalf of an insured, Straub Clinic & Hospital ("Straub"), toward
settlement of a medical malpractice claim. *See* ER 1. Although TDC, as the
primary medical malpractice carrier for Straub, had contributed the maximum per-

claim policy limit under the TDC policy, Reliance alleges that three separate limits
of liability were triggered under the TDC policy and that TDC was thus obligated
to pay under all three limits. *Id.* TDC moved for summary judgment on
November 25, 2002, and Reliance filed a motion for partial summary judgment on
January 8, 2003. Docket, ER 14 at 47 and 66. After oral argument on those
motions, the District Court took the motions under advisement.

      Subsequently, TDC filed a Counterclaim for setoff, ER 5, arguing that
Reliance owed TDC sums in excess of Reliance's claims under certain reinsurance
agreements and due to the circumstances of settlement in *Mau, et al. v. Straub
Clinic & Hospital, Inc., et al*, Civil No. 00-1-3605-11 (Circuit Court of the First
Circuit, State of Hawaii, filed November 24, 2000) ("*Mau* Litigation"), discussed
below. By order filed June 17, 2004, the District Court dismissed the
Counterclaim on grounds that dismissal was warranted on the basis of full faith and
credit, that policy reasons favored abstention, and that abstention was appropriate
under the *Burford* doctrine. *See* Setoff Order, ER 8. On September 25, 2003 the
District Court denied TDC's motion for summary judgment and granted in part
Reliance's motion for summary judgment, concluding that Reliance was entitled to
equitable or express subrogation. *See* Order Denying Defendant's Motion for
Summary Judgment Filed on 11/25/02 and Recognizing Defendant's Cross-Motion
Filed on 2/6/03 as Moot and Granting in Part and Denying in Part Plaintiff's

EXHIBIT 3
PAGE 32

Motion for Summary Judgment Filed on 1/8/03 and Denying Plaintiff's Motion for

a Continuance Under Fed. R. Civ. P. 56(f) Raised in its Memorandum of

Opposition of 2/4/03 to Defendant's Motion for Summary Judgment. ER 9.

On October 9, 2003, TDC filed a Motion for Reconsideration of the

Summary Judgment Order. "Motion for Reconsideration," Docket 136. On

January 29, 2004, the District Court filed its Order denying the Motion for

Reconsideration. "Reconsideration Order," ER 10.

TDC appeals the District Court's decisions and respectfully submits

that this Court should: (1) reverse the June 17, 2003 Order Granting Plaintiff's

Motion for Dismissal of Counterclaim for Set Off and find that TDC is entitled to

set off its claims against any judgment amount as matter of state law; (2) reverse

the September 25, 2003 Order Granting in Part and Denying in Part Plaintiff's

Motion for Summary Judgment Filed on January 8, 2003; (3) reverse the

September 25, 2003 Order Denying Defendant's Motion for Summary Judgment

filed on November 25, 2002; and (4) reverse the January 29, 2004 Reconsideration

Order.

IV.    STATEMENT OF THE FACTS

    A.    The Underlying Malpractice Action

In or around September 1996, incidents occurred at Straub in which a

patient, Arsenio Magday ("Magday"), suffered serious injuries. *See* TDC's

EXHIBIT 3
PAGE 33

Separate and Concise Statement of Facts in Support of Its Motion for Summary

Judgment, ER 2 at ¶ 1.  As a result of those injuries, the Magdays, by letter dated

July 31, 1998, brought an action against Straub before a medical claim conciliation

panel as required by Hawaii Revised Statutes ("HRS") Chapter 671.  ER 2 at ¶ 2.

Earl Kubota, M.D. ("Dr. Kubota") and James Pearce, M.D. ("Dr. Pearce") were not

named in that action.  ER 2 at ¶¶ 2, 3.  Straub and the Magdays agreed to a

withdrawal of the pending claim on or about November 1998.  ER 2 at ¶ 4.

Subsequently, on February 4, 1999, the Magdays filed the underlying lawsuit

against Straub in the First Circuit Court, State of Hawaii.  ER 2 at ¶ 5.  In this

action also, Straub was the only named defendant.  *Id.*

On November 2, 1999, seven days before settlement and more than

three years after the events cited in their complaint, the Magdays amended their

complaint to add Dr. Kubota and Dr. Pearce as defendants.  ER 2 at ¶ 6.  On or

about November 9, 1999, a court supervised settlement conference was held at

which TDC, Reliance, the Magdays, and Straub agreed to settle the Magdays'

claim for $4.3 million ("*Magday* Settlement").  ER 2 at ¶ 7.  TDC and Reliance

paid $1 million and $3.3 million, respectively, toward the settlement.  ER 2 at ¶ 8.

The Magdays executed a Release and Indemnification Agreement in favor of

Straub, TDC and Reliance National Insurance Company[1] on December 20, 1999. ER 2 at ¶ 9.

B.    The Insurance Companies

Straub and Drs. Kubota and Pearce were covered under two liability insurance policies at issue in the instant case. TDC provided *primary coverage* to Straub under a claims-made Hospital Professional and General Liability Insurance Policy with effective dates of coverage from April 1, 1996 to April 1, 1997 (the "TDC Policy"). ER 2 at ¶ 10 and Exhibit ("Exh.") "G".[2] Drs. Kubota and Pearce were additional named insureds under the TDC Policy. ER 2 at ¶ 11. The Hospital Professional Liability Per-Claim Limit of Liability (the "Per-Claim Limit of Liability"), as stated on the Declarations Page of the TDC Policy, was $1 million, and the TDC Policy also included a per-incident deductible amount of $250,000, also as stated on the Declarations Page. ER 2 at ¶ 12. As a primary carrier, TDC provided coverage up to the available limits, but only to the extent Straub and Drs. Kubota and Pearce were *legally liable* for conduct that was covered under the TDC Policy. ER 2 at ¶ 13.

---

[1] Reliance National, a subsidiary of Reliance Insurance Company, issued the policy.

[2] TDC Policy, ER 2, Exh. "G" contains all of the declarations, endorsements and general provisions. The declarations and endorsements are contained in the beginning of Exh. "G" at pages 2-36 to 2-83. The general provisions are at pages 2-85 to 2-142.

Reliance issued a Commercial Umbrella Liability Policy, with effective dates of coverage from April 1, 1996 to April 1, 1997, to named insured Straub (the "Reliance Policy"). ER 2 at ¶ 14.  Under the Reliance Policy, Reliance was the *excess insurer* for Straub and Drs. Kubota and Pearce, and Reliance was thus obligated to provide coverage to Straub and Drs. Kubota and Pearce to the extent the amount of liability incurred by Straub, Dr. Kubota or Dr. Pearce, individually or collectively, *exceeded the available limits of coverage provided by TDC*. ER 2 at ¶ 15.  Reliance provided excess coverage to Straub in the amount of $25 million.

C.    <u>TDC's Claims Against Reliance</u>

Prior to the filing of the *Magday* action and Reliance's liquidation, Reliance had provided reinsurance to TDC pursuant to Medical and Dental Quota Share Reinsurance Agreements and Accident and Health Quota Share Reinsurance Contracts (collectively, the "Reinsurance Policies").  Counterclaim, ER 5 at ¶ 6.  In TDC's Counterclaim, discussed below, TDC alleged that Reliance failed to satisfy its reinsurance obligations under these policies and, as a result, Reliance owes to TDC more than $3.3 million in reinsurance claims, and that TDC has had to reserve an additional $2.4 million for reinsurance claims, all accruing prior to the date Reliance was ordered into liquidation. ER 5 at ¶¶ 7-9.

Also in its Counterclaim, TDC alleged that Reliance owes an outstanding debt to TDC arising from the *Mau* Litigation, which was an action against Straub and Timothy F. Olderr, M.D. ("Olderr"), arising from injuries to plaintiff Diana Mau on or about March 14, 2000. ER 5 at ¶ 4, ER 7 at 7-4 to 7-5. TDC alleged that, although Reliance, as Straub and Olderr's secondary insurer, owed obligations to Straub and Olderr under an umbrella Hospital and Professional Liability insurance policy issued for the period April 1, 1999 to April 1, 2000, Reliance was dismissed from the case by stipulation because it was in liquidation. ER 7 at 7-5. Straub, Olderr and the plaintiffs finalized settlement of the suit on or around April 2003 and TDC, as Straub and Olderr's primary carrier, indemnified them. ER 7 at 7-5 to 7-6. In its Counterclaim, TDC alleged that, in return for assignment of their claims against Reliance under the umbrella policy, TDC paid an amount in excess of its own liability on behalf of Straub and Olderr. ER 5 at ¶ 11. TDC prayed that any damages awarded to Reliance be set off against the amount of Reliance's obligations to TDC, and requested its attorneys' fees and costs. ER 5.

D.    Liquidation Proceedings Against Reliance

By order dated May 29, 2001, the Commonwealth Court of Pennsylvania placed Reliance in rehabilitation, pursuant to Pennsylvania law, and appointed M. Diane Koken, the Commonwealth's Insurance Commissioner, as

EXHIBIT 3
PAGE 37

Rehabilitator. "Rehabilitation Order," ER 6, Exh. "A". Soon thereafter, on

October 31, 2001, the Commonwealth Court issued a superseding Order of

Liquidation. "Liquidation Order," ER 6, Exh. "C". On September 9, 2002, the

Commonwealth Court issued an order establishing a claims filing procedure in the

case. "Claims Filing Order," ER 6, Exh. "D".

    E.   The Litigation Below

        In its initial Complaint filed March 18, 2002, ER 1, Reliance asserted

that TDC is liable for contribution, indemnity and/or subrogation for the $2 million

Reliance believes it paid above and beyond its purported obligation. Reliance

alleged that, by the terms of the respective insurance policies, TDC was liable for

$3 million of the Magday Settlement, and Reliance was liable for the remaining

$1.3 million:

> 13.   The Reliance policies were *excess medical liability policies to*
> *those issued by TDC*, and by their terms, were not implicated
> unless and until the primary coverage afforded by TDC had
> been fully exhausted.
>
>    . . . .
>
> 18.   *By the terms of the TDC policies, TDC had an obligation to*
> *indemnify Straub and Drs. Kubota and Pearce up to the total*
> *of $3 million*, which was the total of $1 million per claim limits
> for Straub and the separate additional $1 million limits for each
> of the two doctors against whom claims were asserted.

ER 1 at 1-3 (emphases added).

EXHIBIT 3
PAGE 38

Notwithstanding Reliance's position that TDC was liable for $3 million of the Magday Settlement, Reliance paid $3.3 million and TDC paid $1 million in settlement of the Magdays' claim:

> 23.    TDC continued its refusal to contribute more than $1 million, and Reliance was, therefore, required to contribute $3.3 million toward the settlement, at the request of its insureds and under a reservation of rights, under which it is entitled to subrogation, contribution and any and all other relief arising out of TDC's denial of policy benefits owed to its insureds.

*Id.* at 1-5.

Based on the above allegations, Reliance sought contribution, indemnity and subrogation in the amount of $2 million plus costs. *Id.* at 1-5 to 1-8. On November 25, 2002, TDC filed Defendant's Motion for Summary Judgment. Docket 47.  On January 8, 2003, Reliance filed a Motion of Plaintiff Reliance Insurance Company (In Liquidation) for Partial Summary Judgment.  Docket 66. On February 24, 2003, the District Court heard the two motions and took them under advisement.  On March 14, 2003, Reliance filed a First Amended Complaint for Express and Equitable Contribution, Indemnity, Declaratory Relief, and Breach of the Implied Covenant of Good Faith and Fair Dealing, which added a claim for Breach of the Implied Duty of Good Faith and Fair Dealing.  Docket 99.  On March 25, 2003, TDC filed an amended answer and a Counterclaim asserting a right to setoff.  *See* ER 5.

10

EXHIBIT 3
PAGE 39

On April 11, 2003, Reliance moved to dismiss the Counterclaim in setoff, arguing, *inter alia*, that TDC's counterclaim should be dismissed under abstention principles to avoid interference with the liquidation proceedings in the Commonwealth Court of Pennsylvania. *See* Motion of Plaintiff Reliance Insurance Company (In Liquidation) for Dismissal of Counterclaim for Set Off or, in the Alternative, Motion to Strike Portions of Counterclaim for Which no Leave to File was Granted. "Motion to Dismiss," Docket 103. On May 9, 2003, TDC filed an Opposition to the Motion to Dismiss ("Opposition," Docket 105 and excerpts at ER 7), arguing, *inter alia*, that pursuant to both Pennsylvania and Hawaii state law, TDC was entitled to setoff mutual debts, and that the court was thus without judicial discretion to dismiss or otherwise deny the setoff. ER 7 at 7-7 to 7-13. On June 17, 2003 the District Court issued an order dismissing the Counterclaim. "Setoff Order," ER 8. On August 20, 2003, Reliance withdrew its claim for Breach of the Implied Duty of Good Faith and Fair Dealing. Docket 129. On September 25, 2003, the District Court filed its Order Denying Defendant's Motion for Summary Judgment Filed on 11/25/02 and Recognizing Defendant's Cross-Motion Filed on 2/6/03 as Moot and Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment Filed on 1/8/03 and Denying Plaintiff's Motion for a Continuance Under Fed. R. Civ. P. 56(f) Raised in its Memorandum of Opposition of 2/4/03 to Defendant's Motion for Summary Judgment. ER 9.

EXHIBIT 3
PAGE 40

On October 9, 2003, TDC filed a Motion for Reconsideration of the Summary Judgment Order. "Motion for Reconsideration," Docket 136. On January 29, 2004, the District Court filed its Order denying the Motion for Reconsideration. "Reconsideration Order," ER 11.

V.    SUMMARY OF ARGUMENT

   A.    The District Court Erred in Dismissing TDC's Counterclaim in Setoff

The District Court erred, as a matter of law, in dismissing TDC's counterclaim in setoff, as setoff is permitted by statute. The Hawaii statute, which is almost identical to the counterpart Pennsylvania statute, states: "Mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article, shall be set off and the balance only shall be allowed or paid . . . ." Haw. Rev. Stat. ("HRS") § 431:15-319 (Michie 2002); *see also* Pa. St. Ann. tit. 40 § 221.32 (West 2003). As these statutes are clear articulations of public policy as determined by the legislature, the District Court erred in failing to address the statutes in any manner and in dismissing the Counterclaim on public policy grounds. The District Court further erred by misconstruing portions of the Pennsylvania Court's orders to preclude the setoff claim and, even if those interpretations had been correct, by reading those orders to negate statutory law. As to its application of abstention doctrines, the District Court erred by finding the *Burford* doctrine applicable to TDC's counterclaim for

89993_2.DOC                                    12

EXHIBIT 3
PAGE 41

contract damages.  Even if the doctrine were applicable, the court erred by

dismissing rather than staying the action, and by dismissing the Counterclaim

alone and not the entire action.

    B.    <u>The District Court Erred in Denying TDC's Motion for Summary Judgment and Granting in Part and Denying in Part Reliance's Motion for Partial Summary Judgment</u>

    The District Court's determination that Reliance is entitled to

equitable or express subrogation of Straub's and Drs. Kubota's and Pearce's rights

under the TDC Policy, and that it is thus entitled to $2 million in insurance

coverage above and beyond the $1 million TDC already contributed to the Magday

Settlement, is erroneous for several reasons.  First, the credible evidence submitted

to the District Court indicates that Drs. Kubota and Pearce were not legally liable

and/or had viable defenses to any legal liability.  Thus, absent a determination of

legal liability on the part of Drs. Kubota and Pearce, TDC had no indemnification

obligations under the TDC Policy.

    Second, even assuming there were three limits of liability available

and a determination of legal liability, Reliance failed to establish the appropriate

allocation of fault as among Straub and Drs. Kubota and Pearce.

    C.    <u>The District Court Abused its Discretion in Denying TDC's Motion for Reconsideration</u>

    The District Court abused its discretion in denying TDC's Motion for

Reconsideration because, as argued in the motion, summary judgment was

EXHIBIT 3
PAGE 42

improperly granted because the order required the court to make a finding of fact that both Drs. Pearce and Kubota were legally liable for injuries to Magday up to the maximum limits of liability. The grant of summary judgment should also have been reversed based upon new deposition testimony of Reliance's own expert that the mere triggering of the insureds' potential limits of liability did not give rise to a legal obligation to pay under the TDC Policy. As no legal obligation to pay was established, there can be no right to subrogation.

VI.   STANDARD OF REVIEW

A district court's dismissal of a counterclaim is reviewed *de novo. See Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir. 2000). In addressing an appeal of a claim dismissed on the basis of abstention, an appellate court reviews *de novo* whether the requirements for abstention have been met. *City of Tucson v. U.S. West Communications, Inc.,* 284 F.3d 1128, 1132 (9th Cir. 2002), *Fireman's Fund Ins. Co. v. Quackenbush,* 87 F.3d 290, 294 (9th Cir. 1996). When the requirements for abstention are present, a court reviews the district court's decision to abstain for an abuse of discretion. *Id.*

A district court's interpretations of state law are reviewable under the same independent *de novo* standard as are questions of federal law. *Matter of McLinn,* 739 F.2d 1395, 1397 (9th Cir. 1984).

EXHIBIT 3
PAGE 43

A grant of summary judgment is reviewed *de novo*. *Delta Savings Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir. 2001). The grant of "partial" summary judgment is likewise reviewed *de novo*. *Id.* The appellate court's review is governed by the same standard used by the trial court under FRCP 56(c). *See id.*; *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir. 1999). Viewing the evidence in the light most favorable to the nonmoving party, the appellate court must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Delta Savings Bank*, 265 F.3d at 1021. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. *See Meade*, 164 F.3d at 1221. Summary judgment is not proper if material factual issues exist for trial. *Id.*

A motion for reconsideration is reviewed for abuse of discretion. *See Tyree v. Taylor*, 965 F.2d 773, 773 n.1 (9th Cir. 1992).

VII.   ARGUMENT

    A.   The District Court Erred in Dismissing TDC's Counterclaim in Setoff

        1.   Recognition of Full Faith and Credit to Orders of the Pennsylvania Commonwealth Court Does Not Preclude Setoff

In dismissing TDC's Counterclaim in setoff, the District Court disregarded completely the existence of relevant statutes, focusing instead on an erroneous interpretation of orders of the Pennsylvania Commonwealth Court.

EXHIBIT 3
PAGE 44

However, under Hawaii law specifically governing the liquidation of insurers, which Reliance concedes is applicable here, *see* ER 6 at 6-5, setoffs are *mandatory* and not within the discretion of the court. HRS § 431:15-319 states in pertinent part:

> Setoffs and counterclaims
>
> (a) Mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article ***shall be set off and the balance only shall be allowed*** or paid, except as provided in subsection (b) and section 431:15-323.

(Emphasis added). Significantly, the Pennsylvania statue similarly requires mutual debts to be set off: "Mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article shall be set off and the balance only shall be allowed or paid, except as provided in subsection (b)."[3] Pa. Stat. Ann. tit. 40 § 221.32. The intent of both the Pennsylvania and Hawaii legislatures is clearly evident in the wording of the respective statutes: in situations such as the present one, mutual debts *are to be set off*. Had the legislatures intended to provide judicial discretion, they undoubtedly would have used *permissive* words, rather than words *mandating* setoffs such as the setoff TDC seeks here. Thus, a court does *not* have broad latitude to deny TDC its rights in setoff. *See Prudential Reins. Co. v. Superior Court*, 842 P.2d 48, 62

---

[3] The statute provides for only four limited exceptions to the setoff requirement, and none of those exceptions are applicable in this case.

EXHIBIT 3
PAGE 45

(Cal. 1992) (*en banc*) (affirming the right to setoff, declaring that court could not "ignore [the] broad mandate" of a state statute providing for the setoff of mutual debts and credits against an insurer in liquidation).

Moreover, in its analysis, the District Court relied heavily on a misinterpretation of orders issued by the Pennsylvania Commonwealth Court, particularly the Order of Liquidation filed October 3, 2001.[4] The District Court gave great weight, for example, to the Liquidation Order's statement that "[u]nless the Liquidator consents thereto in writing, no action at law or equity . . . shall be brought against Reliance or the Liquidator, whether in this Commonwealth or elsewhere . . . ." ER 8 at 8-4. The District Court failed, however, to recognize that a mere assertion of setoff to a claim brought by Reliance is not an "*action* against Reliance." Indeed, Reliance itself was the plaintiff who filed the action in this case and invoked the power of the District Court in pursuing its claim.

TDC's position is supported by apposite cases. For example, in *O'Connor v. Insurance Company of North America*, 622 F. Supp. 611 (N.D. Ill. 1985) the court permitted a defendant insurance company to set off damages in an

---

[4] The Court's Setoff Order states that the Claims Filing Order declared that "the rehabilitation order of May 29, 2001 and subsequent Order of Liquidation of October 3, 2001 remained in full force and effect." ER 8 at 8-5. However, the Liquidation Order explicitly stated that it "supercedes any order entered by this Court prior to" the date of the Liquidation Order, ER 6 at Exh. "C" ¶ 29, and the Claims Filing Order likewise recognized that the Rehabilitation Order was superseded. ER 6 at Exh. "D" ¶ 22.

EXHIBIT 3
PAGE 46

action brought by another insurer's liquidator.  The court first analyzed the

applicable Illinois statute, which is virtually identical to the HRS § 431:15-319.

Acknowledging that the Illinois statute mandated setoffs in insurer liquidations, the

court reasoned:

> [T]here can be little question that Defendants are entitled to assert
> their set-off claims in this proceeding.  It is true, as the Liquidator
> urges, that the liquidation order in sweeping terms bars the assertion
> of "claims" against the Liquidator or Reserve, except in the liquidation
> proceedings; however, *the Liquidator's argument that the term*
> *"claim" in that order is broad enough to encompass set-offs is*
> *unavailing.  Such an interpretation of the liquidation court's order*
> *would mean that the set-off provision under Illinois law had been*
> *effectively overridden by the liquidation order.*
>
> . . .
>
> Defendants do not seek affirmative relief in this proceeding against
> assets held by the liquidation court, even though they claim that the
> set-offs asserted in this proceeding may exceed the amounts owed to
> the Liquidator . . . .  *Defendants concede that they must file with the*
> *liquidation court their affirmative claims for amounts exceeding*
> *that which the Liquidator seeks in this action.  All Defendants*
> *attempt to do in this action is to show that the Liquidator has no*
> *claim or a lesser claim against them.  The plain language of the*
> *statute gives Defendants that right.*

*O'Connor*, 622 F. Supp. at 616-17 (emphasis added); *see also Reliance Ins. Co. v.*

*Shriver, Inc.*, 224 F.3d 641 (8th Cir. 2000) (affirming district court's application of

Illinois insurer liquidation statute to permit setoff of mutual debts).

New York's interpretations of its parallel statutes are particularly

relevant to this analysis.  *See Four Star Ins. Agency v. Hawaii Elec. Indus., Inc.* 89

EXHIBIT 3
PAGE 47

Hawai`i 427, 433, 974 P.2d 1017, 1023 (1999) (Noting that provisions of New

York's insurance laws governing liquidation of insolvent insurers are similar to

those of Hawaii, so New York's interpretation of their parallel laws are useful in

construing HRS chapter 431:15).  For example, in *New York Title & Mortgage Co.*

*v. Irving Trust Co.*, 241 A.D. 246 (Sup. Ct. App. Div. 1934), *aff'd* 198 N.E. 397

(N.Y. 1935) the court rejected the liquidator's argument that allowing a set-off

would violate the liquidation order's prohibition against "bringing or further

prosecuting any action at law . . . against said corporation or its assets."  The court

stated:

> We do not so interpret the injunction.  It was said by the Court
> of Appeals in *Taylor et al. v. Mayor, etc., of City of New York*, 82 N.
> Y. 10, 19 [1880], in discussing a somewhat similar situation, where
> the defendant was under a disability to maintain an action:
>
>> 'So it must be when it is a statute that suspends the remedy
>> by action, but does not touch the cause of action.  *It might*
>> *be a fatal objection to maintaining an action to enforce as*
>> *plaintiff the cause of action, but it would not affect the*
>> *right to set off the debt as defendant at the action of*
>> *another.* . . .  Though a set-off is in the nature of a cross-
>> action, in the place and stead of a cross-action, it is not an
>> action. . . .  *The statute, speaking only of an action and to*
>> *be construed rigidly, may not be extended to a set-off.*
>> Hence a set-off of a debt which has not been presented in
>> the way laid down by the statute is not forbidden by the
>> statute, though an action upon the debt is.'
>
> The injunction order in this case merely restrained the securing of
> preferences or the bringing of actions.  It did not attempt to prevent
> defendant from setting up its undoubted right to set-off.
> The right to injunction in this proceeding is conferred by the

EXHIBIT 3
PAGE 48

provisions of section 410, and such right is necessarily limited by the provisions of section 420. ***Accordingly, an injunction which assumed to deprive the claimant of the right of set-off granted under section 420 would be invalid, since it would exceed the powers conferred upon the court by the statute.***

*New York Title*, 241 A.D. at 248. Similarly, in *Schenck v. Coordinated Coverage Corp.*, 50 A.D.2d 50 (N.Y. App. Div. 1975), the court distinguished affirmative counterclaims from "mere setoff[s]," and held that the stay on claims imposed by a liquidation order did not bar setoffs, although the stay did bar affirmative counterclaims. *Schenck*, 50 A.D.2d at 52. The court reasoned that an affirmative counterclaim "'is broader and more comprehensive than a setoff.' While a defendant who has asserted a counterclaim is entitled to an affirmative judgment, . . . a defendant who has pleaded set-off is not entitled to recover the excess of his claim over the plaintiff's demand." *Id.* at 53 (citation omitted).

In determining that it should abstain in the interest of extending full faith and credit to the Pennsylvania Court's orders, the District Court cited *Clark v. Fitzgibbons*, 105 F.3d 1049 (5th Cir. 1997) and *Rose v. Fidelity Mutual Life Insurance Co.*, 207 F. Supp. 2d 50 (E.D.N.Y. 2002). Both *Clark* and *Rose*, however, are inapposite to the instant case, as both those cases were *affirmative actions* brought by a *creditor* against an insurer undergoing liquidation proceedings in a state court; those cases did not address the right to setoff in *response* to an affirmative claim brought by an insurer in liquidation. Even if that

EXHIBIT 3
PAGE 49

were not the case, there appears to be no authority for the extension of full faith and credit to a court order that invalidates a state statute, as would be the case here.

Moreover, the District Court appeared to interpret overbroadly the language in the Rehabilitation Order precluding "all persons" from "making any assessment or indirectly collecting such assessments by setting them off against amounts otherwise payable to Reliance." Although the Rehabilitation Order was explicitly superseded by the Liquidation Order, *see* ER 6 at Exh. "C" ¶ 29, the Liquidation Order contains similar language and provides that "Reliance, its affiliates, or their directors, officers, . . . creditors, and any other persons, wherever located, are enjoined from . . . (k) making any *assessments* or indirectly collecting such *assessments* by setting them off against amounts otherwise payable to Reliance . . . ." *Id.* at ¶ 21. First, for purposes of the Pennsylvania statutes governing insurance liquidations, it appears the term "assessment" is one of art and inapplicable to the debts at issue here.[5] Pennsylvania statute 40 § 221.33 provides that a court in a liquidation proceeding "may levy one or more assessments against all members of the insurer who are subject to assessment." Logically, the Liquidation Order provision prohibiting collection of assessments would refer to

---

[5] Alternatively, *assessment* may be a reference to an "assessable" insurance policy whereby an insurer participating in a reinsurance policy may be "assessed" an additional cost for participating in such policy. The insurance policies that are included as part of TDC's counterclaim are not assessable policies. Therefore, in either event, the term "assessment" is inapplicable to the debts in this case.

these specific assessments against group members, as the provision does not refer more generally to "debts" or "claims."  Moreover, even if this provision could be construed to encompass *any* debt or claim, the provision cannot logically be construed to preclude setoff by order of a *court,* particularly in view of Pennsylvania's own requirement that such setoffs be made.  Although the provision extends to "any other persons," interpretation of that term to include the court would prohibit the *court itself* from carrying out its duties, as the provision precludes "any other persons" from "transferring . . . any assets, funds or property of any nature."  *Id.*  Consequently, the prohibition can only reasonably and logically be construed to extend to the setoff of "assessments" by a debtor *without an order of a court.*

2.    Policy Concerns Favor Setoff

In its Setoff Order, the District Court set out its understanding of the policy concerns favoring abstention.  Remarkably, in doing so, the District Court disregarded completely the clear articulation of relevant public policy evidenced by the statutes requiring setoff in actions brought by insurers in liquidation.  In fact, the Setoff Order does not even mention the setoff statute.   Policy determinations, however, are expressly within the constitutional purview of the legislature.  *See, e.g., Lee v. Corregedore*, 83 Hawai'i 154, 171, 925 P.2d 324, 341 (1996) (noting that broad public policy determinations are "best left to the branch

EXHIBIT 3
PAGE 51

of government vested with the authority and fact-finding ability to make such broad public policy decisions, namely the Hawaii legislature");  *State v. Mallan*, 86 Hawai'i 440, 456, 950 P.2d 178, 194 (1998) ("The mere fact that a court may differ with the legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference . . . .").

The Supreme Court in 1892 addressed the propriety of permitting setoffs in insolvency proceedings and held that it was customary both statutorily and as a matter of equity.  The Court stated that "where the mutual obligations have grown out of the same transaction, insolvency on the one hand justifies the set-off of the debt due upon the other."  *Scott v. Armstrong*, 146 U.S. 499, 507 (1892).  The Court went on to hold that "[w]here a set-off is otherwise valid, it is not perceived how its allowance can be considered a preference, and it is clear that it is only the balance, if any, after the set-off is deducted, which can justly be held to form part of the assets of the insolvent." *Id.* at 510.   Indeed, TDC's right to setoff would exist here even if it were not mandated by statute, as courts in the United States have recognized the right to setoffs in insurance liquidation cases, even in the absence of relevant statutes, for more than a century. *See, e.g., Carr v. Hamilton*, 129 U.S. 252 (1889); *Transit Cas. Co. v. Selective Ins. Co. of the Southeast*, 137 F.3d 540, 544-45 (8th Cir. 1998) (anticipating that Missouri

EXHIBIT 3
PAGE 52

Supreme Court would uphold right to setoff in insurance liquidation in the absence of a relevant statute, aligning Missouri with "almost all other states"). In *Transit*, the Eighth Circuit acknowledged that allowance of setoffs may involve competing policy interests, in that a setoff may work to the advantage of a particular creditor, but the court noted that, nevertheless, courts and legislatures have resolved this tension in favor of setoffs. *Transit*, 137 F.3d at 544. The Eighth Circuit did likewise. *Id.; see also Comm'r of Ins. v. Munich American Reins. Co.*, 706 N.E.2d 694, 696-97 (Mass. 1999) (cataloging cases in which setoffs were applied and noting that "[a]ny idea that, in such cases, the creditor who is allowed a setoff receives an improper preference is either explicitly or implicitly rejected"); *In re Midland*, 590 N.E.2d 1186, 1191 (N.Y. 1992) (observing that, although permitting offsets may conflict with the statutory purpose of providing for the pro rata distribution of the insolvent's estate to creditors, the Legislature resolved the competing concerns to recognize offsets as a species of lawful preference: "Indeed, if an offset is otherwise valid, there would seem to be no reason why its allowance should be considered a preference"); *In re Midland Ins. Co.*, 167 A.D.2d 75, 80 (N.Y. App. Div. 1991), *aff'd*, 590 N.E.2d 1186 (1992) (finding that "reinsurer offset is in the interests of the policyholders and the general public"). Addressing the right of a reinsurer to offset debts to an insurer in liquidation, the court in *O'Connor* stated: "It is true that the reinsurer would be paid in full if a set-off is

EXHIBIT 3
PAGE 53

permitted, but, of course, that is the case *anytime* a set-off is permitted. *The whole point of the statutory set-off section is to make clear that such actions are permissible, even though one creditor may be getting paid more than other creditors*." *O'Connor*, 622 F.Supp. at 619 (second emphasis added).

3.    The Court Erred in Dismissing TDC's Setoff Claim under the *Burford* Doctrine

In *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), the Supreme Court established a doctrine which held that, where timely and adequate state-court review is available,

> a federal court *sitting in equity* must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "*difficult questions of state law*" bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be *disruptive of state efforts to establish a coherent policy* with respect to a matter of substantial public concern."

*New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*"). This principle was further clarified in *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706 (1996), wherein the Court held that federal courts may dismiss or remand cases based on abstention principles *only where the relief being sought is discretionary in nature, and may not dismiss or remand an action for damages*. *See* 517 U.S. at 730.

The most obvious flaw in the District Court's reasoning in dismissing

EXHIBIT 3
PAGE 54

TDC's counterclaim in setoff is that the court dismissed *only the setoff claim* and *not the case in its entirety*. The court cited no cases in which a federal court dismissed—or even stayed—a counterclaim in setoff while retaining jurisdiction over a liquidator's original claim. Although the court cited *Corcoran v. Universal Reinsurance Corp.*, 713 F.Supp. 77 (S.D.N.Y. 1989) in support of this proposition, *Corcoran* was an action brought by a liquidator in state court, which the defendant then removed; the district court applied the *Burford* doctrine to remand not only the setoff claim but the ***entire action***. *Corcoran*, 713 F.Supp. at 82. To be sure, this is not a case in which a liquidator brought a state court action which the defendant removed; Reliance itself conceded, when it filed its Complaint in the District Court, that a federal court could properly exercise jurisdiction over contract-based claims that were connected to a Pennsylvania liquidation proceeding. It is difficult to see how it can then be that *Burford* abstention principles preclude exercise of jurisdiction *only* over the defendant's contract-based claim for setoff. The only apparent distinction is that abstention from the setoff claim could benefit Reliance and not TDC, but this ignores the clear mandate of the Hawaii setoff statute, and certainly does not support abstention under *Burford*. Such a precedent would invite insurer liquidators to avoid entirely a defendant's statutory entitlement to setoff merely by bringing actions in federal courts. Indeed, other federal courts have had no trouble applying state set-off statutes in actions

EXHIBIT 3
PAGE 55

brought by an insurer's liquidator, with no mention of abstention doctrines. *See, e.g., Reliance Ins. Co.*, 224 F.3d 641; *O'Connor*, 622 F.Supp. 611.

Abstention on the setoff claim is also inappropriate based on application of *Burford* doctrine standards. First, abstention is inappropriate under *Burford* because, contrary to the District Court's conclusion, TDC does not seek affirmative relief; TDC instead seeks a damages setoff that is required by statute. As discussed at length above, HRS § 431:15-319 *requires* that setoffs such as the one requested here be made. Although statutory setoff may have *evolved* from equitable principles, to the extent the setoff claim here is for damages and arises and is claimed pursuant to state law, it is not an equitable remedy, and *Burford* is inapplicable in the first instance. Although the court cited *Clark v. Fitzgibbons*, 105 F.3d 1049 (5th Cir. 1997) to support abstention, *Clark* has been criticized as failing to address the Supreme Court's "express holding in *Quackenbush* that a damages action allows the district court no discretion in exercising jurisdiction and may not be remanded under the *Burford* doctrine." *Kemp v. Metabolife Int'l, Inc.*, 2003 WL 1936381 (E.D. La. 2003).

As apparently conceded by Reliance when it filed its complaint in federal court, there are in this case no difficult questions of state law bearing on policy problems of substantial public import. In *Koken v. Cologne Reinsurance (Barbados), Ltd.*, 34 F. Supp. 2d 240 (M.D. Pa. 1999), the Commissioner of

EXHIBIT 3
PAGE 56

Insurance for the Commonwealth of Pennsylvania, in her capacity of liquidator of an insolvent insurer, brought an action for damages against a reinsurer. The reinsurer asserted a right to setoff, and removed the action to federal court. The court denied the liquidator's motion to remand, but granted the defendant's motion to stay the action and compel arbitration. In its *Burford* analysis, the court found that there were no difficult questions of state law to support abstention. Of particular relevance here is that the court explicitly agreed with the defendant that 40 Pennsylvania Statute § 221.32, the set-off statute, ***did not present uncertain or difficult questions***: "40 P.S. § 221.32 governs when a person can setoff mutual debts or mutual credits with an insolvent insurer. The arbitrators will have to apply this law, but just because they may not apply it in the manner argued by the Liquidator does not make these issues uncertain or difficult." *Cologne Reinsurance*, 34 F. Supp. 2d at 248. The court held that the *Burford* doctrine requirements were not met, and refused to abstain. *Id.* at 255.

The *Burford* doctrine also requires an analysis of whether the exercise of federal review of the question in this and similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *Grode v. Mutual Fire, Marine & Inland Ins. Co.*, 8 F.3d 953 (3d Cir. 1993) is relevant. *Grode* was a contract action brought by Pennsylvania's acting insurance commissioner in her capacity as rehabilitator of an insurer. The

EXHIBIT 3
PAGE 57

defendant removed the action, and the rehabilitator successfully moved to remand

on various abstention principles. On appeal, the Third Circuit, considering

applicability of the *Burford* doctrine, held that the case did not present matters of

important state regulatory concern:

> Although the regulation of insolvent insurance companies is surely an
> important state interest, this case does not involve the complex and
> highly regulated issues of insurance regulation; rather, it is a simple
> contract action involving an allegedly unpaid debt. The complex
> regulations relating to insolvent insurance companies have to do with
> plans of rehabilitation and payment to policy holders. Simple contract
> and tort actions that happen to involve an insolvent insurance
> company are not matters of important state regulatory concern or
> complex state interests.

*Grode*, 8 F.3d at 959. The court in *Grode* relied upon *NOPSI*, in which the

plaintiff had petitioned for an energy rate increase. Under federal law, such an

increase must be approved by the state regulatory commission. The City, however,

refused the increase, and NOPSI thus brought suit in federal district court. Upon

review, the Supreme Court held that abstention was not appropriate because,

"[w]hile *Burford* is concerned with protecting complex state administrative

processes from undue federal interferences, it does not require abstention whenever

there exists such a process." *Id.* at 362. The court in *Grode* stated, "In [the

*NOPSI*] case, as in the present one, a complex regulatory scheme was not at issue,

as the Court merely had to decide whether federal law preempted state law."

> Thus, like [*NOPSI*], the case *sub judice* does not involve complex
> state administrative processes or matters affecting vital state policy

EXHIBIT 3
PAGE 58

> interests. Although the state regulates insolvent insurance companies,
> simple contract actions that happen to involve such companies are not
> matters of important regulatory concern or actions interfering with
> important state policies.

*Grode*, 34 F. Supp. 2d at 959. The court acknowledged that courts abstain in suits

against insolvent insurance companies for the same reasons that district courts refer

bankruptcy cases to the bankruptcy courts, that is, insurance companies tend to

issue identical policies to a large number of people, rendering a single forum

necessary to dispose equitably of the company's limited assets so as to avoid a race

to the courthouse. *Id.* at 960. The court observed, however, that there was no

such concern in the case before it, as the case was not a suit against the insurance

company or the Insurance Commissioner; instead, the case was instituted by the

Commissioner against the defendants to recover an alleged debt.

> The insolvent insurance company, Mutual Fire, is the plaintiff, not the
> defendant. As a result, there is not a large number of similarly
> situated plaintiffs competing for a limited amount of money. The
> insolvent insurer in liquidation is not called upon "to dissipate its
> funds *defending* unconnected suits across the country." Rather, the
> insurance company is the only plaintiff and the defendants are not
> insolvent. Thus, this case is distinguishable from those in which the
> insolvent insurance company is the defendant, and there is no
> important state interest here involved to warrant abstention.

*Grode*, 34 F. Supp. 2d at 960. Concluding that *Burford* abstention was

inappropriate because "no important regulatory state interests are involved in an

ordinary action for monies," the court held that the district court had erred in

deciding to abstain pursuant to *Burford*. *Id.* at 960-61; *see also Crawford v.*

*Employers Reins. Corp.*, 896 F.Supp. 1101, 1103 (W.D. Okla. 1995) (holding *Burford* abstention inappropriate, as claims by insurer's liquidator against a reinsurer would not require determination of issues directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry, and issues were not difficult or unusual, as the allegation was one of breach of contract between two insurance companies and would not involve complex and specialized determinations); *accord American Sec. Life Assur. Co. of North Carolina v. Mason*, 836 F. Supp. 333 (E.D.N.C. 1993).

The analysis of *Grode* remains the same where a setoff is claimed against a plaintiff liquidator. For example, in *Cologne Reinsurance*, discussed above, the court relied heavily upon the Third Circuit's *Burford* analysis in *Grode* and, while the court recognized that the setoff statute would necessarily apply, the court did not alter its analysis of the case as a whole or separately analyze the original claim and the setoff claim. *See Cologne Reinsurance*, 34 F. Supp. 2d at 248-54.

In sum, the District Court erred in dismissing TDC's counterclaim in setoff, and the Setoff Order should accordingly be reversed.

EXHIBIT 3
PAGE 60

B.   The District Court Erred in Denying TDC's Motion for Summary
     Judgment and Granting in Part and Denying in Part Reliance's Motion
     for Partial Summary Judgment

     1.   Drs. Kubota and Pearce Have Not Been Determined to Be
          Legally Liable for Any Amounts Related to the Underlying
          Claim

Reliance's claim that TDC "was required to contribute" a total of $3

million in the Magday Settlement is based on the assertion that three separate

"claims" were made against Straub, Dr. Pearce and Dr. Kubota, automatically

triggering coverage for the maximum of three policy limits.  Reliance's assertion,

however, cannot be sustained because it misconstrues the nature of the TDC

Policy, which requires TDC to pay only where legal liability exists.  The mere fact

that a claim against the policy has been made does not establish legal liability, and

liability on the part of Drs. Kubota and Pearce has not otherwise been legally

established.  Moreover, a finding that Drs. Kubota and Pearce had a legal

obligation to pay would have been precluded by the fact that the Magdays had not

brought claims against Drs. Kubota and Pearce before a medical claim conciliation

panel, as required prior to bringing a medical malpractice action, and because the

statute of limitations as to claims against them had run.

Reliance is not entitled to subrogation from TDC for any amounts

related to the alleged liability of Drs. Kubota and Pearce, because no liability of

Drs. Kubota and Pearce has ever been legally established, and the TDC Policy

obligates TDC to pay only those amounts any insured is legally obligated to pay:

> A.    WHAT [TDC] WILL PAY
>
> [TDC] will pay on behalf of any insured all sums which any insured shall be *legally obligated to pay as damages for a claim* which alleges bodily injury arising from any insured's rendering or failing to render the hospital and professional services to which this insurance applies, . . . .

TDC Policy, ER 2, Exh. "G" at 2-101 (emphasis added). Stated otherwise, TDC is required to indemnify an insured when (1) a proper *claim* against an insured which alleges bodily injury has been asserted, and (2) the insured is *legally obligated* to pay that claim. Neither in the underlying Magday case, nor in this action by Reliance, have Drs. Kubota or Pearce ever been determined to be *legally liable* for damages to the Magdays; therefore, Drs. Kubota and Pearce had no legal obligation to pay the Magdays.

> a.    Drs. Kubota and Pearce were not Legally Liable at Settlement

The District Court acknowledged that a determination of liability must be established in order to trigger TDC's indemnification obligation, but found that Drs. Kubota and Pearce were legally liable as a result of the settlement of the *Magday* litigation. *See* ER 9 at 9-27 to 9-30. This is an extremely curious finding for several reasons. First, settlements are generally reached in lieu of any determination of liability. In the *Magday* action, the case was settled prior to a trial or other determination of liability. Therefore, contrary to the District Court's

finding, any settlement reached on behalf of Drs. Kubota and Pearce did not establish their liability under the *Magday* litigation.

Second, and importantly, it is questionable whether any monies were in fact paid by Reliance on behalf of Drs. Kubota and Pearce, a prima facie requirement for Reliance's subrogation claim. In fact, a chronology of the undisputed timeline of events indicates that Drs. Kubota and Pearce were dismissed from the *Magday* litigation prior to the payment of any monies by Reliance, and were not even a part of the final Release Agreement:

1.    On November 2, 1999, following an unsuccessful settlement conference three weeks prior, and at the apparent suggestion of the circuit court, the Magdays filed their First Amended Complaint adding Dr. Kubota and Dr. Pearce as defendants. *See* First Amended Complaint, ER 2, Exh. "D".

2.    On November 9, 1999, a court supervised settlement conference was held at which TDC, Reliance, the Magdays, Dr. Kubota and Straub placed a settlement agreement on the record.[6] *See* Supplemental Declaration of Paul F. Donsbach, ER 4, Exh. "B". The terms of the settlement were confidential.[7] *See id.*

3.    TDC and Reliance agreed to pay $1 million and $3.3 million respectively toward the settlement. ER 2 at ¶ 8.

4.    On November 19, 1999, the Magdays stipulated to dismiss with prejudice the claims against Drs. Kubota and Pearce and Perry. *See* TDC's Separate and Concise Statement of Facts in Opposition to Reliance's Motion for

---

[6] The District Court incorrectly indicates that Dr. Pearce, or his counsel, was present at the November 9 settlement conference. *Compare* ER 9, at 9-28 & note 37 *with* ER 4, Exh. "B".

[7] Although Reliance moved to unseal the settlement record in the *Magday* litigation, the transcripts of the settlement record were unavailable as result of possible clerical error. *See* ER 4, Exh. "A."

EXHIBIT 3
PAGE 63

Partial Summary Judgment, ER 3, Exh. "T". The claims against Straub, however, remained pending. *See id.*

       5.    On December 20, 1999, the Magdays executed a Release and Indemnification Agreement ("Release") in favor of Straub, TDC and Reliance. *See* ER 2, Exh. "F". In exchange for $4.3 million paid by TDC and Reliance, the Magdays released any and all claims against TDC, Reliance and Straub. *See id.*

       6.    Thereafter, on December 23, 1999, the Magdays stipulated to a dismissal with prejudice of all claims as to all parties. *See* ER 3, Exh. "U".

The above timeline critically demonstrates that Drs. Kubota and Pearce, and not

Straub, were dismissed from the *Magday* litigation prior to execution of the

Release and any payment of monies. In fact, through the Release, the Magdays

only released Straub, TDC and Reliance:

> THIS RELEASE AND INDEMNIFCATION AGREEMENT (hereinafter "RELEASE"), made and entered this 20th day of December, 1999, by ARSENIO J. MAGDAY and ESTHER MAGDAY, individually and on behalf of their children (hereinafter "RELEASOR"), in favor of STRAUB CLINIC & HOSPITAL, INC.; THE DOCTOR'S COMPANY; and RELIANCE NATIONAL (hereinafter "RELEASEE").

*See* Release, ER 2, Exh. "F". Indeed, there is no mention or reference at all in the

Release to Drs. Kubota and Pearce. *See id.* Even more significant is the fact that

Drs. Kubota and Pearce were dismissed *with prejudice* prior to the Release. Such

dismissal indicates that the Magdays no longer considered Drs. Kubota and Pearce

as part of the litigation, and thus not part of the settlement. Consistent with that

indication, only after the Release was executed by Straub, and the monies paid to

the Magdays by Reliance and TDC, was Straub dismissed from the *Magday*

EXHIBIT 3
PAGE 64

litigation.

The District Court and Reliance place reliance on the testimony of the Magdays' attorney, Rick Fried, who, by way of deposition, testified that it was his intention in executing the release to release Drs. Kubota and Pearce from liability. In other words, Drs. Kubota and Pearce were purportedly intended to be part of the Release, and thus part of the settlement. That testimony is completely contradicted by the timeline set forth above, which, at a minimum, creates a genuine issue of material fact regarding whether Drs. Kubota and Pearce were part of the *Magday* Settlement.

Moreover, even if Drs. Kubota and Pearce were intended to be included in the Release as the District Court suggests, that suggestion cuts against the District Court's determination that legal liability against Drs. Kubota and Pearce was established at settlement. Specifically, the Release provides in pertinent part:

> a.     Denial of Liability. Releasee denies liability, negligence, breach of any duty, breach of any applicable standard of care, breach of any agreement, misconduct, violation of statute, and/or wrongdoing of any kind, character or nature whatsoever, and the consideration paid by Releasee's insurance carrier to Releasor is solely to compromise and settle all disputes between Releasor and Releasee with respect to any matter relating to the subject lawsuit and subject incident.

*See* ER 2, Exh. "F" at 2-32. Thus, the presumption arising from Drs. Kubota and Pearce's participation in the settlement, if anything, is a *denial* of liability and not a

determination of liability as the District Court found.

Consequently, even under the broadest construction of the TDC Policy possible, the only Per-Claim Limit of Liability available under the TDC Policy for the Magdays' claim was the $1 million Per-Claim Limit of Liability available to Straub as the named insured, and on whose behalf the *Magday* litigation was settled. Accordingly, the District Court erred in finding that Drs. Kubota and Pearce were legally liable at settlement.

b.    <u>Drs. Kubota and Pearce Were Not Properly Brought as Defendants</u>

Additionally, legal liability on the part of Drs. Kubota and Pearce could not have been established because Drs. Kubota and Pearce were not proper defendants to the underlying suit, as they were never given the opportunity to have the allegations against them determined by a medical claim conciliation panel ("MCCP") as prescribed by state law. *See* ER 2 at ¶ 3. Drs. Kubota and Pearce were therefore improperly made defendants to the underlying action seven days prior to the *Magday* Settlement by the Magdays' First Amended Complaint.[8] HRS

---

[8] Notably, it was apparently at the urging of Reliance that Drs. Kubota and Pearce were named as defendants to the *Magday* Complaint because of Reliance's belief that naming them as defendants would trigger additional limits of liability under the TDC Policy. *See* Declaration of Lynn F. York, ER 2 at 2-6, ¶ 5. Those efforts were quite curious given that Reliance's apparent efforts exposed their insureds, Drs. Kubota and Pearce, to liability simply to reduce the amount of coverage Reliance believed it would be required to pay towards the *Magday* Settlement. *See id.*

EXHIBIT 3
PAGE 66

chapter 671 provides that all medical tort claims brought in the State must be

submitted to an MCCP hearing prior to commencement of a lawsuit:

> **§ 671-12.  Review by panel required; notice; presentation of claims; request for a more definite statement of the claim.**
>
> (a) Effective July 1, 1976, *any person or the person's representative claiming that a medical tort has been committed shall submit a statement of the claim to the medical claim conciliation panel before a suit based on the claim may be commenced* in any court of this State. . . .  *The claimant shall set forth facts upon which the claim is based and shall include the names of all parties against whom the claim is or may be made who are then known to the claimant.*
> (b) Within five business days thereafter the *panel shall give notice of the claim and the statement of the claim, by certified mail, to all health care providers and others who are or may be parties* to the claim . . . .

(Emphasis added).  The direct implication of the statute is that a plaintiff is barred

from claiming damages as a result of errors or omissions by a health care provider

until after the MCCP has heard arguments and made a decision and the plaintiff

rejects that decision:

> **§ 671-16 Subsequent litigation; excluded evidence.**  The claimant may institute litigation based upon the claim in an appropriate court *only after a party to a medical claim conciliation panel hearing rejects the decision of the panel*, . . . .

(Emphasis added).  "Therefore, under the plain and unambiguous language of HRS

§§ 671-12 and 671-16, a *plaintiff is precluded from filing a complaint against a*

*health care provider for a medical tort until the [MCCP] has rendered a decision*

and a party to the [MCCP] rejects the decision of the [MCCP]."  *Garcia v. Kaiser*

*Found. Hosp.*, 90 Hawai`i 425, 438, 978 P.2d 863, 876 (1999) (emphasis added).

The Hawaii Supreme Court has noted that the state legislature enacted this chapter

as a

> comprehensive system of medical malpractice dispute resolution,
> which is designed to weed out frivolous claims and promote
> negotiated settlements, thus avoiding the high costs associated with
> litigation. *Requiring participation in the conciliation process as a
> precondition to initiating a lawsuit is a rational method of ensuring
> full participation in the system.*

*Dubin v. Wakuzawa*, 89 Hawai`i 188, 197, 970 P.2d 496, 505 (1998) (emphasis

added).  In addition, "[t]he legislature created [MCCPs] to review medical tort

claims and render advisory opinions to encourage early settlement of the claims

and to provide confidentiality of the involved parties prior to the filing of a suit in

court.  The legislature viewed this system as an efficient and less costly way of

dealing with medical tort claims." *Lum v. Queens Med. Ctr.*, 69 Haw. 419, 422,

744 P.2d 1205, 1207 (1987) (citation omitted).

      Although the Magdays did bring their claim against *Straub* before an

MCCP within two years after the events cited in their complaint, Straub and the

Magdays agreed to a withdrawal of that claim in or about November 1998,

approximately one year *before* the Magdays named Drs. Kubota and Pearce as

defendants. ER 2 at ¶¶ 2, 4.  Because the notice to the MCCP and the withdrawal

occurred prior to their being named in the suit, Drs. Kubota and Pearce had no

opportunity to be heard by the MCCP--or to waive such a hearing--and thus had no

EXHIBIT 3
PAGE 68

opportunity to establish that they were not liable for the Magdays' injuries.[9] *See id.* at ¶ 3. The allegations asserted against them in the Magday's First Amended Complaint were public record, effectively depriving Drs. Kubota and Pearce of the right to have expunged any claim resolved in their favor, as provided by statute.

Moreover, because HRS § 671-12 "effectively operates to enjoin the commencement of a lawsuit against healthcare providers before a panel decision and a party's rejection of the advisory finding," *Garcia*, 90 Haw. at 441-42, 978 P.2d at 878-79, the circuit court improperly granted leave to the Magdays to amend their complaint to add Drs. Kubota and Pearce, because the court was without subject matter jurisdiction to do so. *Id.* at 442, 978 P.2d at 879 (where a claim was not previously brought before a MCCP, the court lacked subject matter jurisdiction over the claim as a result of the plaintiffs' failure to comply with HRS § 671-12).

The District Court's determination that TDC is precluded from raising the lack of an MCCP hearing as a defense to Drs. Kubota and Pearce's liability because TDC purportedly "agreed not to raise the lack of an MCCP hearing as a defense to any subsequent hearing in the state court proceeding," ER 9 at 9-30, is

---

[9] It is clear in both the language of the statute and under fundamental principles of due process, personal jurisdiction and fairness that a defendant must be personally named in any legal action. That the notice and hearing must involve those health care providers against whom allegations have been made is reinforced by the fact that, among other things, chapter 671 provides protections for health care providers when the MCCP renders a finding for the health care provider, including the right to apply for expungement of the records. *See* HRS § 671-15.5.

EXHIBIT 3
PAGE 69

not supported by the record. First, the instant case is not a "subsequent hearing in the state court proceeding," but is instead a subrogation action brought by Reliance against TDC in federal district court. Even assuming TDC made that agreement, it would not be valid in this action.

Second, and in any event, TDC was not entitled to make such an agreement. The *Magday* lawsuit concerned allegations against Straub and Drs. Kubota and Pearce, and TDC was not a party to the lawsuit; only Drs. Kubota and Pearce were entitled to make that agreement. More importantly, the evidence before the District Court indicates that Drs. Kubota and Pearce never agreed to waive their right to an MCCP hearing. In particular, Mr. Fried sent the MCCP panel a letter indicating that *Straub* and the Magdays agreed to withdraw the pending MCCP claim:

> *Both* parties to the above-noted matter have agreed to withdraw the pending MCCP claim scheduled to be heard on December 4, 1998. On behalf of his client, ***Straub Clinic & Hospital***, Mr. Char has placed in writing his request, in which I concur, to take off the MCCP claim with the hope that we will be able to resolve this matter short of litigation.

*See* ER 2, Exh. "C" (emphasis added). Evident from the above letter is the fact that Mr. Char only represented Straub, and any waiver or agreement that Mr. Char entered into was solely on behalf of Straub, and not Drs. Kubota or Pearce.

Third, the District Court's suggestion that the circuit court's granting of the Magdays' motion for leave to amend the complaint, to add Drs. Kubota and

EXHIBIT 3
PAGE 70

Pearce as defendants, disposed of their lack of MCCP hearing defense, is equally

unsupported. The grant of the Magdays' motion for leave to amend simply

permitted the Magdays to amend their complaint but did nothing to determine the

potential defenses available to Drs. Kubota and Pearce. In fact, Drs. Kubota and

Pearce were not parties at the time of the Magdays' motion and thus were unable to

even object or oppose such motion.

Accordingly, because of the lack of a prior MCCP hearing, Drs.

Kubota and Pearce were never properly before the court in the *Magday* litigation,

and therefore no *legal liability* could have been established against them in any

event.

c.    The Magdays' Claim Against Drs. Kubota and Pearce
      Was Barred by the Statute of Limitations

Even if Drs. Kubota and Pearce were properly named as defendants to

the underlying action, which they were not, the statute of limitations would have

precluded any action against them, as Hawaii law provides for a two-year statute of

limitations on medical malpractice claims. HRS § 657-7.3 provides in relevant

part:

> No action for injury or death against a . . . physician . . . based upon such
> person's alleged, professional negligence, . . . shall be brought more than
> two years after the plaintiff discovers . . . the injury . . . .

The Hawaii Supreme Court has held that, under the discovery rule, a plaintiff need

only have *factual* knowledge of the elements necessary for an actionable claim."

EXHIBIT 3
PAGE 71

*Buck v. Miles*, 89 Hawai`i 244, 249-250, 971 P.2d 717, 722-23 (1999).

Here, it is unquestionable that the Magdays had "factual knowledge" of the elements necessary for their claim against Drs. Kubota and Pearce at or around the time of Magday's injury in September 1996. *See* ER 2, Exh. "B". Dr. Kubota was the emergency room doctor who attended to Magday at the emergency room on September 4, 1996, and Dr. Pearce also examined Magday on the same day. *See id.* Shortly thereafter, Magday experienced paraplegia and underwent surgery to no avail. *See id.* Accordingly, as the Magdays had knowledge of the factual elements of their claim in or about September 1996, the Magdays' amended complaint, filed November 2, 1999 (over three years later), naming Drs. Kubota and Pearce as defendants was untimely and precluded by HRS § 657-7.3.

It is apparent by the filing of the MCCP claim on July 31, 1998 that the Magdays were cognizant that the statute of limitations on their tort claim against Straub, as a principal of Drs. Kubota and Pearce, accrued at or about September 1996, the time of Magday's injury. Although raising a claim before an MCCP will generally toll the statute of limitations, the MCCP claim was lodged only against Straub. *See* ER 2, Exh. "B". Therefore, since Drs. Kubota and Pearce were never made parties to that action,[10] the statute of limitations as to any claim

---

[10] The Magdays' notice to the MCCP explained that only Straub was being named as the principal under the theories of *respondeat superior* and agency.

EXHIBIT 3
PAGE 72

against them could not have been tolled.

The District Court, however, as with the lack of MCCP hearing defense, found that Drs. Kubota and Pearce waived any statute of limitations defense based on a letter from Mr. Char, Straub's attorney, to TDC. *See* ER 9 at 9-37. However, as noted above, Mr. Char was counsel only for *Straub*.[11]  Indeed, nowhere is there any indication that Mr. Char represented Drs. Kubota and Pearce and was otherwise entitled to waive their right to an MCCP hearing or to assert a statute of limitations defense on their behalf.  In fact, Mr. Char's opposition to the Magdays' Motion for Leave to Amend, arguing that leave to add Drs. Kubota and Pearce as defendants was improper until after an MCCP hearing, is consistent with Drs. Kubota and Pearce not waiving such defenses. *See* ER 3, Exh. "R".

Moreover, the fact that Drs. Kubota and Pearce provided their consent to the *Magday* Settlement does not, as the District Court suggests, operate as a waiver of any and all defenses to the Magday claims.  The issue before the District Court was whether, assuming there were three Per-Claim Limits of Liability available under the TDC Policy, Drs. Kubota and Pearce were "legally obligated" to pay for Magday's injuries resulting from their alleged negligence. *See* TDC Policy, ER 2, Exh. "G" at 2-101.  Thus, because that "legal obligation" was never

---

[11] Drs. Kubota and Pearce were eventually represented by other counsel. *See* ER 4, Exh. "B"; ER 2, Exh. "J".

established, as Drs. Kubota and Pearce were dismissed with prejudice by the Magdays *seventeen days* after they were named as defendants, the potential defenses available to Drs. Kubota and Pearce may be asserted by TDC in this case to demonstrate that there was no "legal obligation" by Drs. Kubota and Pearce to pay for Magday's injuries.

Accordingly, because the statute of limitations had run, no *legal liability* could have been established against Drs. Kubota and Pearce.

2.    Even if Legal Liability is Established Against Drs. Kubota and Pearce, Such Liability Must be Properly Allocated

Even if legal liability could be established against Drs. Kubota and Pearce, and assuming three limits of liability were available under TDC's Policy, Reliance failed to set forth any evidence demonstrating that TDC's obligation would have been $3 million.  In other words, Reliance failed to demonstrate the proportionate degree of liability that could be attributed to Straub and Drs. Kubota and Pearce.  For example, if the degree of negligence was apportioned as 90% to Dr. Kubota and 10% to Dr. Pearce, Dr. Kubota would be obligated to pay $3.87 million ($4.3 million x 90%) and Dr. Pearce would be obligated to pay $430K ($4.3 million x 10%).  Because each insured's Per-Claim Limit of Liability is $1 million, TDC's obligation under this hypothetical (and Reliance's theory) would be only $1.43 million ($1 million to Dr. Kubota; $430K to Dr. Pearce), not $3 million.

EXHIBIT 3
PAGE 74

Moreover, to the extent Reliance asserts that it is able to avail itself of HRS § 663-12 to establish a presumption of equal shares of responsibility as among Straub and Drs. Kubota and Pearce, that assertion is misplaced. HRS § 663-12 does not provide a presumption of equal responsibility among joint tortfeasors; if anything, it requires that "the relative degrees of fault of the joint tortfeasors shall be considered in determining their pro rata shares." HRS § 663-12. Second, even if HRS § 663-12 provides for a presumption of equal responsibility, in order to obtain that presumption as among Straub and Drs. Kubota and Pearce, HRS § 663-12 would require a contribution action among the parties. This action, however, is solely between Reliance and TDC. Notably, the District Court found that Reliance is not entitled to contribution in any event. *See* ER 9 at 9-42 to 9-44.

Accordingly, even if legal liability were established against Drs. Kubota and Pearce, which it was not, Reliance's failure to set forth any evidence demonstrating proportionate fault precludes any determination that TDC was obligated to contribute more than $1 million toward the *Magday* Settlement.

C.    The District Court Erred in Denying TDC's Motion for Reconsideration

In its Motion for Reconsideration, TDC urged the District Court to reconsider its previous orders. TDC argued that summary judgment was improper because the order depended upon a finding of fact, without evidence, that both Drs.

EXHIBIT 3
PAGE 75

Pearce and Kubota were legally liable, up to the maximum limits of liability, for injuries to Magday. Motion for Reconsideration, ER 10 at 10-8 to 10-13. TDC provided the Declaration of Lynn York, general counsel to TDC, who was involved in the *Magday* matter. Mr. York stated that all of the information available indicated liability only on the part of Dr. Kubota and not of Dr. Pearce or the other doctors or nurses who had involvement with Magday. *See* Declaration of Lynn York ("York Dec."), ER 10 at 10-44 to 10-46. Mr. York stated that TDC had tendered the $1 million on behalf of Straub for the vicarious liability of Dr. Kubota, and that no party subsequently provided information indicating liability of anyone other than Dr. Kubota. *Id.* at 10-46 to 10-49. Mr. York also expressed his understanding that counsel for Reliance had suggested that Drs. Kubota and Pearce be named as defendants in the *Magday* Action, based upon a recent review of Reliance's confidential settlement conference statement wherein counsel for Reliance expressly requested that Drs. Kubota and Pearce be named as additional defendants. York Dec. at 10-47 and Exh. "H". Thus, TDC argued that, at a minimum, the question of fact as to the legal liability of the insureds precluded summary judgment. ER 10 at 10-8 to 10-13. Moreover, based upon principles of respondeat superior, even if both Drs. Kubota and Pearce had been determined liable, TDC would be obligated to pay only two limits of liability. *Id.* at 10-13 to 10-15.

EXHIBIT 3
PAGE 76

In the Motion for Reconsideration, TDC also submitted recently-obtained deposition testimony to demonstrate that, *even according to Reliance's own expert*, the duty to indemnify is distinct from the mere triggering of potential limits of liability, and the narrower duty to indemnify arises *only when legal liability is established*. The import of this testimony is that TDC was not obligated to contribute three limits of liability to the *Magday* Settlement, because legal liability on the part of three separate insureds was never established. *See* ER 10 at 10-7. Specifically, TDC submitted excerpts from the deposition of Layton C. Severson ("Mr. Severson"), Reliance's insurance coverage expert, taken on August 26, 2003, subsequent to the briefing and hearing on the summary judgment motions. In his deposition, Mr. Severson testified that the occurrence of an event does not trigger indemnity, that indemnity is determined by the legal liability of the tortfeasor. *See* Deposition of Layton C. Severson, ER 10, Exh. "A", at 56:23-57:11. Mr. Severson testified:

> The fact that coverage applies does not automatically mean that a payment will be made. The fact that coverage applies means that the insurance company will investigate; and if the insured is negligent or in their opinions (sic) moneys are owed on it, then they will make payment. If their investigation shows the insured was not negligent, they would of course either defend or deny.

*Id.* at 58:3-9; *see also id.* at 60:8-18. Similarly, Mr. Severson identified the initial duties to investigate and to defend as separate from the duty to indemnify, and testified that the availability of limits does not establish a duty to make payment.

EXHIBIT 3
PAGE 77

*Id.* at 64:13-21; 65:13-19; *see also id.* at 102:20-104:11. This distinction was confirmed by the deposition testimony of Willis "Hap" Knutson, an insurance broker employed by Alexander and Aon who placed insurance for Straub, who was deposed on August 27, 2003, also subsequent to the briefings on the parties' respective Motions. *See* ER 10, Exh. "B" at 120:24-122:14.

The deposition testimony establishes that the mere triggering of the insureds' potential limits of liability did not give rise to their "legal obligat[ion] to pay" under the TDC Policy. As no legal obligation to pay was established, there can be no subrogation. Even if Drs. Pearce and Kubota were technically made defendants to the *Magday* litigation, that status *does not equate to legal liability* under the terms of the TDC Policy. Accordingly, the District Court erred in denying the Motion for Reconsideration.

VIII.  CONCLUSION

Based upon the foregoing, TDC respectfully requests that this Honorable Court reverse (1) the June 17, 2003 Order Granting Plaintiff's Motion for Dismissal of Counterclaim for Set Off; (2) the September 25, 2003 Order Denying Defendant's Motion for Summary Judgment; (3) the September 25, 2003 Order Granting in Part and Denying in Part Plaintiff's Motion for Summary

EXHIBIT 3
PAGE 78

Judgment; and (4) the January 29, 2004 Order Denying Defendant The Doctors'

Company's Motion for Reconsideration.

DATED:    Honolulu, Hawaii, _____ AUG 2 2004 _____

_____

DAROLYN H. LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT

Attorneys for Defendant-Counter-
Claimant-Appellant-Cross-Appellee
THE DOCTOR'S COMPANY

EXHIBIT 3
PAGE 79

## CERTIFICATE OF COMPLIANCE

I hereby certify that Defendant--Counter-Claimant-Appellant-Cross-Appellee The Doctor's Company's Opening Brief does not exceed 14,000 words. The actual word count of the entire text of the brief, exclusive of the cover page, the table of contents and authority, the statement of related cases, this certification, and the certificate of service is **12,398** words.

DATED:    Honolulu, Hawaii, _____ AUG  2 2004_____

_Darolyn H. Tues_

DAROLYN H. LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT

Attorneys for Defendant-Counter-Claimant- Appellant-Cross-Appellee
THE DOCTOR'S COMPANY

89993_2.DOC

EXHIBIT 3
PAGE 80

STATEMENT OF RELATED CASES

Defendant-Appellant The Doctor's Company is aware of no related

cases within the meaning of Circuit Rule 28-2.6.

DATED:    Honolulu, Hawaii,    _____AUG  2 2004_____


_____
DAROLYN H. LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT

Attorneys for Defendant-Counter-
Claimant- Appellant-Cross-Appellee
THE DOCTOR'S COMPANY

EXHIBIT 3
PAGE 82

ADDENDUM TO
DEFENDANT-COUNTER-CLAIMANT-APPELLANT-
<u>CROSS-APPELLEE THE DOCTOR'S COMPANY'S OPENING BRIEF</u>

## *<u>INDEX TO ADDENDUM</u>*

Haw. Rev. Stat. § 431:15-319

Haw. Rev. Stat. § 657-7.3

Haw. Rev. Stat. § 671-12

Haw. Rev. Stat. § 671-15.5

Haw. Rev. Stat. § 671-16

Pa. Stat. Ann. Tit. 40 § 221.32

EXHIBIT 3
PAGE 83



**c**
HAWAII REVISED STATUTES ANNOTATED
DIVISION 4. COURTS AND JUDICIAL PROCEEDINGS
TITLE 36. CIVIL REMEDIES AND DEFENSES AND SPECIAL PROCEEDINGS
CHAPTER 657. Limitation of Actions
PART I. PERSONAL ACTIONS
        § 657-7.3 Medical torts; limitation of actions; time.


No action for injury or death against a chiropractor, clinical laboratory
technologist or technician, dentist, naturopath, nurse, nursing home
administrator, dispensing optician, optometrist, osteopath, physician or surgeon,
physical therapist, podiatrist, psychologist, or veterinarian duly licensed or
registered under the laws of the State, or a licensed hospital as the employer of
any such person, based upon such person's alleged, professional negligence, or for
rendering professional services without consent, or for error or omission in such
person's practice, shall be brought more than two years after the plaintiff
discovers, or through the use of reasonable diligence should have discovered, the
injury, but in any event not more than six years after the date of the alleged act
or omission causing the injury or death. This     six year time limitation shall be
tolled for any period during which the person has failed to disclose any act,
error, or omission upon which the action is based and which is known to the person.


Actions by a minor shall be commenced within six years from the date of the
alleged wrongful act except the actions by a minor under the age of ten years
shall be commenced within six years or by the minor's tenth birthday, whichever
provides a longer period. Such time limitation shall be tolled for any minor for
any period during which the parent, guardian, insurer, or health care provider has
committed fraud or gross negligence, or has been a party to a collusion in the
failure to bring action on behalf of the injured minor for a medical tort. The
time limitation shall also be tolled for any period during which the minor's
injury or illness alleged to have arisen, in whole or in part, from the alleged
wrongful act or omission could not have been discovered through the use of
reasonable diligence.


[L 1973, c 92,  § 1; am L 1976, c 219,  § 17; am L 1977, c 167,  § 14; am imp L 1984,
  c 90, § 1; am L Sp 1986, c 2, § 15]

EXHIBIT 3
PAGE 84



**C**

HAWAII REVISED STATUTES ANNOTATED
DIVISION 2. BUSINESS
TITLE 24. INSURANCE
CHAPTER 431. Insurance Code
ARTICLE 15. INSURERS SUPERVISION, REHABILITATION AND LIQUIDATION
PART III. FORMAL PROCEEDINGS
        § **431:15-319** Setoffs and counterclaims.


(a) Mutual debts or mutual credits between the insurer and another person in
connection with any action or proceeding under this article shall be set off and
the balance only shall be allowed or paid, except as provided in subsection (b)
and section 431:15-323.


(b) No setoff or counterclaim shall be allowed in favor of any person where:


    (1) The obligation of the insurer to the person would not at the date of the
    filing of a petition for liquidation entitle the person to share as a claimant
    in the assets of the insurer;


    (2) The obligation of the insurer to the person was purchased by or transferred
    to the person with a view to its being used as a setoff;


    (3) The obligation of the person is to pay an assessment levied against the
    members or subscribers of the insurer, or is to pay a balance upon a
    subscription to the capital stock of the insurer, or is in any other way in the
    nature of a capital contribution; or


    (4) The obligation of the person is to pay premiums whether earned or unearned,
    to the insurer.


[L 1987, c 347, pt of § 2]


EXHIBIT 3
PAGE 85



**C**

HAWAII REVISED STATUTES ANNOTATED
DIVISION 4. COURTS AND JUDICIAL PROCEEDINGS
TITLE 36. CIVIL REMEDIES AND DEFENSES AND SPECIAL PROCEEDINGS
CHAPTER 671. Medical Torts
PART II. MEDICAL CLAIM CONCILIATION
        § 671-12 Review by panel required; notice; presentation of claims;
        request for a more definite statement of the claim.


(a) Effective July 1, 1976, any person or the person's representative claiming
that a medical tort has been committed shall submit a statement of the claim to
the medical claim conciliation panel before a suit based on the claim may be
commenced in any court of this State. Claims shall be submitted to the medical
claim conciliation panel in writing. The claimant shall set forth facts upon which
the claim is based and shall include the names of all parties against whom the
claim is or may be made who are then known to the claimant.


(b) Within five business days thereafter the panel shall give notice of the claim
and the statement of the claim, by certified mail, to all health care        providers
and others who are or may be parties to the claim and shall furnish copies of
written claims to such persons. Such notice shall set forth a date, not more than
twenty days after mailing the notice, within which any health care provider
against whom a claim is made shall file a written response to the claim, and a
date and time, not less than five days following the last date for filing a
response, for a hearing of the panel. Such notice shall describe the nature and
purpose of the panel's proceedings and shall designate the place of the meeting.
The times originally set forth in the notice may be enlarged by the chairperson,
on due notice to all parties, for good cause.


(c) If the statement of the claim in the notice is so vague or ambiguous that any
party receiving notice of the claim cannot reasonably be required to frame a
written response, the party may submit a written request to the director of
commerce and consumer affairs for a more definite statement before filing the
written response. Copies of the request shall be provided to the panel, the
claimant, and other affected parties. The request, which shall be ex parte and
stay the proceedings of the panel until notice of the director's decision is given
to the panel and all parties, shall specify the defects complained of and the
details desired. The director may deny, grant, or modify the request at the
director's own discretion, without the necessity of a hearing, although the
director may reach a decision after consulting with the panel or the claimant. The
director shall provide notice of the decision to the panel, the claimant, and
other affected parties. If the request is granted and the claimant fails to
provide a more definite statement of the claim within five days after notice of

EXHIBIT 3
PAGE 86



HI ST § 671-15.5                                               Page 1
  HRS § 671-15.5


C

HAWAII REVISED STATUTES ANNOTATED
DIVISION 4. COURTS AND JUDICIAL PROCEEDINGS
TITLE 36. CIVIL REMEDIES AND DEFENSES AND SPECIAL PROCEEDINGS
CHAPTER 671. Medical Torts
PART II. MEDICAL CLAIM CONCILIATION
        (§ 671-15.5). Expungement of records; malpractice insurance rates.


(a) Upon a decision by the medical claim conciliation panel finding for the health
care provider pursuant to section 671 -15(a), the health care provider may apply to
the panel for expungement of all records of the related proceedings. The panel
shall expunge all records if a majority of the panel finds that the complaint is
fraudulent or frivolous.


(b) No insurer providing professional liability insurance for a health care
provider shall increase any premium rate for the health care provider on the basis
of the filing of a medical tort claim against the health care provider that is
determined by the medical claims conciliation panel to be fraudulent or frivolous.


[L 1993, c 62, § 1]

H R S § 671-15.5, HI ST § 671-15.5


EXHIBIT 3
PAGE 87



HI ST § 671-16
  HRS § 671-16

**c**

HAWAII REVISED STATUTES ANNOTATED
DIVISION 4. COURTS AND JUDICIAL PROCEEDINGS
TITLE 36. CIVIL REMEDIES AND DEFENSES AND SPECIAL PROCEEDINGS
CHAPTER 671. Medical Torts
PART II. MEDICAL CLAIM CONCILIATION
    **§ 671-16** Subsequent litigation; excluded evidence.


The claimant may institute litigation based upon the claim in an appropriate court only after a party to a medical claim conciliation panel hearing rejects the decision of the panel, or after the twelve  -month period under section 671 - 18 has expired.


No statement made in the course of the hearing of the medical claim conciliation panel shall be admissible in evidence either as an admission, to impeach the credibility of a witness, or for any other purpose in any trial of the action; provided that such statements may be admissible for the purpose of section 671    -19, hereof. No decision, conclusion, finding, or recommendation of the medical claim conciliation panel on the issue of liability or on the issue     of damages shall be admitted into evidence in any subsequent trial, nor shall any party to the medical claim conciliation panel hearing, or the counsel or other representative of such party, refer or comment thereon in an opening statement, an argument, or at any other time, to the court or jury; provided that such decision, conclusion, finding, or recommendation may be admissible for the purpose of section 671     -19, hereof.


[L 1976, c 219, pt of § 2; am L 1980, c 88, § 3; am L 2003, c 211, § 3]


EXHIBIT 3
PAGE 88

Westlaw.

40 P.S. § 221.32

**c**
Purdon's Pennsylvania Statutes and Consolidated Statutes Annotated Currentness
 Purdon's Pennsylvania Statutes Annotated
  Title 40. Insurance (Refs & Annos)
   Chapter 1. Insurance Department
    Article V. Suspension of Business--Involuntary Dissolutions (Refs & Annos)
     (C) Formal Proceedings
      ◥◨ B. Liquidation
       ◥◨ 3. Estate of Insurer

        →§ 221.32. Setoffs and counterclaims

(a) Mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this article shall be setoff and the balance only shall be allowed or paid, except as provided in subsection (b).

(b) No setoff or counterclaim shall be allowed in favor of any person where:

(1) the obligation of the insurer to the person would not at the date of the filing of a petition for liquidation entitle the person to share as a claimant in the assets of the insurer;

(2) the obligation of the insurer to the person was purchased by or transferred to the person with a view to its being used as a setoff;

(3) the obligation of the person is to pay an assessment levied against the members or subscribers of the insurer, or is to pay a balance upon a subscription to the capital stock of the insurer, or is in any other way in the nature of a capital contribution; or

(4) the obligation of the person is to pay premiums, whether earned or unearned, to the insurer.

CREDIT(S)

1921, May 17, P.L. 789, art. V, § 532, added 1977, Dec. 14, P.L. 280, No. 92, § 2, imd. effective.

RULES OF CIVIL PROCEDURE

 <This section is not suspended or affected by the Rules of Civil Procedure, Rules 1501 to 1550, governing actions in equity. See Rule 1549.>

EXHIBIT 3
PAGE 89

Appeal Nos. 04-15558, 04-15598
(Dist. Ct. Civil No. CV-02-00159 HG-BMK)

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RELIANCE INSURANCE CO.,
(in Liquidation), a Pennsylvania
corporation,

          Plaintiff-Counter-Defendant-
          Appellee-Cross-Appellant,

vs.

THE DOCTORS COMPANY,

          Defendant-Counter-Claimant-
          Appellant-Cross-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE DISTRICT OF HAWAII

THE HONORABLE HELEN
GILLMOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that two (2) true and correct copies of the foregoing document were duly served upon the following individuals via hand delivery (HD) and/or via U.S. Postal Mail, postage prepaid (M), to their last known business address on the date of filing:

ELTON JOHN BAIN, ESQ.          (HD)
E. MASON MARTIN III, ESQ.
Kessner Duca Umebayashi Bain
 & Matsunaga
Central Pacific Plaza, 19th Floor
220 South King Street
Honolulu, Hawaii 96813

89993_2.DOC

2

EXHIBIT 3
PAGE 90

and

PAUL F. DONSBACH, ESQ.                    (M)
CHRISTOPHER D. GLOS, ESQ.
Kutak Rock LLP
18201 Von Karman, Suite 1100
Irvine, CA  92614-1077

Attorneys for Plaintiff
RELIANCE INSURANCE COMPANY
(IN LIQUIDATION)

Pursuant to Rule 25(a)(2)(B)(i) and Rule 25(d)(2) of the Federal Rules

of Appellate Procedure and Rule 25-2 of the Circuit Court Rules for the Ninth

Circuit, the undersigned counsel also hereby certifies that the foregoing document

was hand-delivered to a postal clerk at the United States Post Office, postage

prepaid, for mailing to the Clerk of the United States Court of Appeals for the

Ninth Circuit Court, on ___AUG 2 2004___, addressed as follows:

    Clerk, U.S. Court of Appeals
    for the Ninth Circuit
    P.O. Box 193939
    San Francisco, CA  94119-3939

DATED:    Honolulu, Hawaii, ___AUG 2 2004_____

                         _____
                         DAROLYN H. LENDIO
                         PHILIP W. MIYOSHI
                         BECKY T. CHESTNUT

                         Attorneys for Defendant-Counter-
                         Claimant- Appellant-Cross-Appellee
                         THE DOCTOR'S COMPANY

                                    EXHIBIT 3
                                    PAGE 91