Appeal Nos. 04-15558, 04-15598
(Dist. Ct. Civil No. CV-02-00159 HG-BMK)

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV - 1 2004

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RELIANCE INSURANCE CO. (in Liquidation), a Pennsylvania corporation, | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII |
| Plaintiff-Counter-Defendant-Appellee-Cross-Appellant, | THE HONORABLE HELEN GILLMOR |
| vs. | |
| THE DOCTORS' COMPANY, | |
| Defendant-Counter-Claimant-Appellant-Cross-Appellee. | |

DEFENDANT-COUNTER-CLAIMANT-APPELLANT-
CROSS-APPELLEE THE DOCTORS' COMPANY'S
COMBINED REPLY AND ANSWERING BRIEF

McCORRISTON MILLER
MUKAI MacKINNON LLP

DAROLYN HATSUKO LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT
500 Ala Moana Boulevard
Five Waterfront Plaza, 4th Flr.
Honolulu, Hawaii 96813
Tel.: (808) 529-7300 Fax: (808) 524-8293
E-mail: lendio@m4law.com

Attorneys for Defendant-Counter-
Claimant-Appellant-Cross-Appellee
THE DOCTORS' COMPANY

EXHIBIT 4
PAGE 92

95804_1.DOC

Appeal Nos. 04-15558, 04-15598
(Dist. Ct. Civil No. CV-02-00159 HG-BMK)

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| RELIANCE INSURANCE CO., (in Liquidation), a Pennsylvania corporation, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF HAWAII |
| | ) | |
| Plaintiff-Counter-Defendant-Appellee-Cross-Appellant, | ) ) | THE HONORABLE HELEN GILLMOR |
| | ) | |
| vs. | ) ) | |
| THE DOCTORS' COMPANY, | ) ) | |
| Defendant-Counter-Claimant-Appellant-Cross-Appellee. | ) ) ) | |

DEFENDANT-COUNTER-CLAIMANT-APPELLANT-
CROSS-APPELLEE THE DOCTORS' COMPANY'S
<u>COMBINED REPLY AND ANSWERING BRIEF</u>

EXHIBIT 4
PAGE 93

95804_1.DOC

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ......................................................................................... 1

II.  ARGUMENT ................................................................................................ 1

    A.   The District Court Erred in Dismissing TDC's
    Counterclaim in Setoff ................................................................... 1

        1.   Setoff Should Have Been Permitted as a Matter of
        State Law ................................................................................. 1

        2.   The McCarran-Ferguson Act Is Inapplicable ....................... 5

        3.   Abstention Principles Do Not Preclude Jurisdiction
        Over TDC's Setoff Claim ..................................................... 17

            a.   *Burford* Abstention is Inappropriate to the
            Instant Action ............................................................. 17

            b.   *Colorado River* Abstention is Inapplicable .................. 22

        4.   Neither Full Faith and Credit Nor Comity Bars
        TDC's Setoff Claim ............................................................. 25

    B.   The District Court Erred in Denying TDC's Motion for
    Summary Judgment and Granting in Part Reliance's
    Motion for Summary Judgment ......................................................... 28

        1.   Drs. Kubota and Pearce Were Not Legally Liable
        at Settlement ......................................................................... 28

        2.   Drs. Kubota and Pearce Were Not Properly
        Brought as Defendants ......................................................... 35

        3.   The Magdays' Claim Against Drs. Kubota and
        Pearce Was Barred by the Statute of Limitations .................. 37

        4.   Even if Legal Liability is Established Against Drs.
        Kubota and Pearce, Such Liability Must be
        Properly Allocated ................................................................. 39

EXHIBIT 4
PAGE 94

     C.    The District Court Properly Denied Reliance's Motion for
          Summary Judgment as to Its Equitable Contribution
          Claim .................................................................................. 41

III.   CONCLUSION ....................................................................... 47

**STATEMENT REGARDING ORAL ARGUMENT**

**CERTIFICATE OF COMPLIANCE**

EXHIBIT 4
PAGE 95

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*AmSouth Bank v. Dale,*
    2004 WL 2092997 (6th Cir. Sept. 21, 2004) ...................................... 13, 14, 18, 19

*Associated Mut. Ins. Co. v. Fireman's Fund Ins. Co.,*
    81 A.D.2d 949 (N.Y. App. Div. 1981) ............................................................... 44

*Bennett v. Liberty National Fire Insurance Co.,*
    968 F.2d 969 (9th Cir. 1992) ............................................................ 3, 14, 15, 16

*Burford v. Sun Oil Co.,*
    319 U.S. 315 (1943) ................................................................................... passim

*Clark v. Fitzgibbons,*
    105 F.3d 1049 (5th Cir. 1997) ......................................................................... 26

*Colonial Insurance Company of California v. American Hardware Mutual*
    *Insurance Company,*
    969 P.2d 796 (Colo. Ct. App. 1998) ................................................................ 45

*Colorado River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ...................................................................... 22, 23, 24, 25

*Commercial Union Ins. Co. v. The Farmers Mut. Fire Ins. Co.,*
    457 S.W.2d 224 (Mo. 1970) ....................................................................... 41, 44

*Costle v. Fremont Indem. Co.,*
    839 F.Supp. 265 (D. Vt. 1993) .............................................................. 9, 15, 16

*Employers Ins. of Wassau v. Musick, Peeler & Garrett,*
    954 F.2d 575 (9th Cir. 1992) ........................................................................... 41

*Erie R. v. Tompkins,*
    304 U.S. 64 (1938) ............................................................................................. 1

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.,*
    65 Cal.App.4th 1279 (1998) ............................................................................ 47

EXHIBIT 4
PAGE 96

*Forsyth v. Humana, Inc.*,
  114 F.3d 1467 (9th Cir. 1997); *aff'd* 525 U.S. 299 (1999) .................. 6, 7, 10, 12

*Garamendi v. Allstate Ins. Co.*,
  47 F.3d 350 (9th Cir. 1995) ........................................................... 20, 21

*Gerling Global Reins. Corp. of America v. Low*,
  240 F.3d 739 (9th Cir. 2001) .................................................................. 7

*Grode v. Mutual Fire, Marine & Inland Insurance Company*,
  8 F.3d 953 (3d Cir. 1993)....................................................... 7, 8, 17, 18

*Gross v. Weingarten*,
  217 F.3d 208 (4th Cir. 2000) .............................................. 11, 12, 13

*Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  885 F.2d 1149 (3d Cir. 1989) ................................................................ 16

*Herrington v. County of Sonoma*,
  706 F.2d 938 (9th Cir. 1983) ................................................................ 24

*In re Advanced Cellular Systems*,
  235 B.R. 713 (D.P.R. 1999)................................................................... 17

*Insurance Company of North America v. American Economy
  Insurance Company*,
  746 F.Supp. 59 (W.D. Okla. 1990)........................................................ 46

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  12 F.3d 908 (9th Cir. 1993) .................................................................. 24

*Iowa Nat'l Mut. Ins. Co. v. Universal Underwriters Ins. Co.*,
  150 N.W.2d 233 (Minn. 1967) ............................................................. 42

*LeMars v. Farm & City Insurance Co.*,
  494 N.W.2d 216 (Iowa 1992) ............................................................... 47

*Matter of Midland Insurance Co.*,
  590 N.E.2d 1186 (N.Y. 1992).................................................... 4, 7, 10

*Merch. Home Delivery Serv., Inc. v. Frank B. Hall & Co.*,
  50 F.3d 1486 (9th Cir. 1995) ..................................................... 7, 9, 10

EXHIBIT 4
PAGE 97

*Minucci v. Agrama*,
    868 F.2d 1113 (9th Cir. 1989) ............................................................. 23

*Moisenko v. Volkswagen AG*,
    10 F. Supp. 2d 853 (W.D. Mich. 1998) ............................................... 41

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................... 23, 25

*Mut. Ins. Co. of Arizona v. American Cas. Co. of Reading Pennsylvania*,
    938 P.2d 71 (Ariz. Ct. App. 1997) ......................................... 29, 30, 31

*NAACP v. American Family Mutual Insurance Co.*,
    978 F.2d 287 (7th Cir. 1992) ................................................................ 9

*National Casualty Company v. Great Southwest Fire Insurance Co.*,
    833 P.2d 741 (Colo. 1992) ................................................................. 46

*New Orleans Public Service, Inc. v. Council of New Orleans*,
    491 U.S. 350 (1989) ............................................................................ 18

*Nichols v. Vesta Fire Ins. Corp.*,
    56 F. Supp. 2d 778 (E.D. Ky. 1999) ......................................... 8, 19, 24

*O'Connor v. Ins. Co. of N. America*,
    622 F. Supp. 611 (N.D. Ill. 1985) ...................................................... 26

*Prudential Reinsurance Co. v. Superior Court*,
    842 P.2d 48 (Cal. 1992) ............................................................ 4, 5, 21

*Quackenbush v. Allstate*,
    517 U.S. 706 (1996) ................................................................... passim

*Reliance Ins. Co. v. Shriver, Inc.*,
    224 F.3d 641 (8th Cir. 2000) ............................................................. 26

*Reliance Insurance Co. v. Six Star Inc.*,
    2002 WL 342623 (S.D.N.Y. March 5, 2002) ................................ 27, 45

*Reliance Nat'l Indem. Co. v. Gen Star Indem. Co.*,
    85 Cal. Rptr. 2d 627 (Cal. Ct. App. 1999) ....................... 20, 42, 43, 45

EXHIBIT 4
PAGE 98

95804_1.DOC                                v

*Rose v. Fidelity Mutual Life Insurance Co.,*
  207 F. Supp. 2d 50 (E.D.N.Y. 2002) ................................................................. 26

*Ruthardt v. Sandmeyer Steel Co.,*
  1995 WL 434373 (E.D. Pa. July 21, 1995) ............................................. 3, 19, 20

*SEC v. Nat'l Sec., Inc.,*
  393 U.S. 453 (1969) .......................................................................................... 7

*Selcke v. New England Ins. Co.,*
  995 F.2d 688 (7th Cir. 1993) .......................................................................... 16

*Stamp v. Insurance Company of North America,*
  908 F.2d 1375 (7th Cir. 1990) .................................................................. 2, 24

*State Farm Fire & Casualty Co. v. Cooperative of American
Physicians, Inc.,*
  163 Cal. App. 3d 199 (1984) .......................................................................... 29

*Suter v. Munich Reins. Co.,*
  223 F.3d 150 (3d Cir. 2000) ............................................................................ 8

*Travelers Indem. Co. v. Madonna,*
  914 F.2d 1364 (9th Cir. 1990) ................................................................ 22, 24

*United of Omaha Life Insurance Co. v. Udisky,*
  2001 WL 102670 (S.D. Ohio Jan. 23, 2001) ................................................. 17

*United States Dept. of Treasury v. Fabe,*
  508 U.S. 491 (1993) .......................................................................................... 9

*United States Fid. & Guar. Co. v. Cont'l Cas. Co.,*
  556 N.E.2d 671 (Ill. App. 1990) .................................................................... 42

*United States Fid. & Guar. Co. v. Federated Rural Elec. Ins. Corp.,*
  37 P.3d 828 (Okla. 2001) .......................................................................... 42, 43

*United States Financial Corp. v. Warfield,*
  839 F.Supp. 684 (D. Ariz. 1993) ................................................................... 17

EXHIBIT 4
PAGE 99

## Statutes

15 U.S.C. § 1011 ............................................................................... passim

15 U.S.C. § 1012(b) ............................................................................ 6, 10

28 U.S.C. § 1332 ........................................................................... 6, 7, 9, 10

## Rules

Fed. R. App. P. 28 ................................................................................. 1

Fed. R. App. P. 28-1 .............................................................................. 1

## Other Authorities

18 Am. Jur. 2d § 9 (1985) ...................................................................... 42

EXHIBIT 4
PAGE 100

I.    INTRODUCTION

      Defendant-Counterclaimant-Appellant-Cross-Appellee The Doctors' Company ("TDC") hereby submits its Combined Reply and Answering Brief pursuant to Rule 28 of the Federal Rules of Appellate Procedure and Rule 28-1 of the Ninth Circuit Rules.

II.    ARGUMENT

    A.    The District Court Erred in Dismissing TDC's Counterclaim in Setoff

        1.    Setoff Should Have Been Permitted as a Matter of State Law

      In its Opening Brief, Reliance concedes that federal courts may be called upon to apply state law and, under the *Erie* doctrine, *must* apply state law when sitting in diversity.  Reliance's Opening Brief at 29-30 (citing *Erie R. v. Tompkins*, 304 U.S. 64 (1938)).  Even while acknowledging this rule, Reliance argues, ironically, that TDC is not entitled to setoff as provided by state statute, because state legislatures are without power to require a federal court to assume jurisdiction over particular issues.  *Id.* at 29.  The thrust of Reliance's argument is that a federal court may pick and choose among the applicable state laws it wishes to apply and that such selective application is appropriate here.  To be sure, Reliance argues vociferously that Pennsylvania has enacted a comprehensive regulatory scheme to which the federal courts must defer, but now Reliance entreats the Court to apply only parts of that scheme--the parts advantageous to Reliance--to the facts here.

EXHIBIT 4
PAGE 101

In *Stamp v. Insurance Company of North America*, 908 F.2d 1375 (7th Cir. 1990), the Seventh Circuit rejected arguments similar to those Reliance makes here. In *Stamp*, the liquidator for an insolvent insurer brought an action against reinsurers in an insurance pool to recover policy proceeds, and the district court entered judgment for the reinsurers. On appeal to the Seventh Circuit, the liquidator argued that allowing a setoff was tantamount to ordering the liquidator to pay a claim. In affirming the district court's decision, the court rejected the liquidator's theory, stating "[t]he only question is whether, in determining how much the pool owes the Liquidator, the district court may consider how much [the insolvent insurer] owed the pool." 908 F.2d at 1378. The court held that it could, as "no state may obliterate the diversity jurisdiction of a district court by claiming 'exclusive' authority over a subject." *Id.* at 1379. "[B]ecause the diversity jurisdiction supplies ample adjudicatory power, the district court was entitled to decide the setoff question." *Id.*

Both the Pennsylvania and Hawaii statutory insurance liquidation schemes provide for setoffs in mandatory terms, and Reliance has provided no rational support for its argument that only part of the statutory scheme should be recognized. Indeed, it appears disingenuous for Reliance to argue that state law must be followed only in state court, *see* Reliance's Opening Brief at 30, when Reliance brought its own claims, based upon the same state statutory scheme, to

EXHIBIT 4
PAGE 102

the district court sitting in diversity.

Reliance also gives no support for its assertion that setoff would "interfere with the equitable treatment of creditors." *See* Reliance's Opening Brief at 16. Reliance's Opening Brief is permeated with the presumption that the amounts at issue are "Reliance's assets," *see, e.g., id.* at 28, and that the liquidator, without interference of this Court, should be permitted to distribute these assets. *See id.* at 27-28. However, as recognized by this Court in the context of an interpleader action in *Bennett v. Liberty National Fire Insurance Co.*, 968 F.2d 969, 972 (9th Cir. 1992):

> "[u]ntil the contractual dispute regarding ownership of the assets is resolved, . . . the authority the . . . insolvency statute grants the liquidator does not vest. *Only if a court or arbitrator determines that the funds belong to [the insurer in liquidation] does that money become part of the estate that the liquidator will distribute.*

*See also Ruthardt v. Sandmeyer Steel Co.*, 1995 WL 434373, at *2 (E.D. Pa. July 21, 1995) (refusing to abstain from deciding counterclaims asserted by the defendant against the insurance company's liquidator, because the defendant was "not attempting to obtain from the receiver property which she owns or possesses"). The same is true here; until it is determined conclusively that TDC owes Reliance more than Reliance owes TDC, any funds that the court may find TDC owes to Reliance are *not* part of Reliance's assets subject to distribution.

EXHIBIT 4
PAGE 103

Moreover, despite Reliance's dislike of the setoff provisions of the insurer

liquidation statutes, those statues, including the setoff provisions, are legislative

articulations of public policy and federal courts sitting in diversity are bound to

apply them. The policy reasons supporting setoff in insurance liquidations were

examined in *Prudential Reinsurance Co. v. Superior Court*, 842 P.2d 48 (Cal.

1992) (*en banc*), in response to the argument of the liquidator of an insolvent

insurer that setoff would abrogate the liquidation statutes' intended protection of

policyholders and the public in general:

> As [*Matter of Midland Insurance Co.*, 590 N.E.2d 1186 (N.Y. 1992)]
> observed, "An important reason offset has been recognized as
> desirable is that it provides a form of security to insurers." Offsetting
> debts not only spreads risk but also acts as mutual security for
> performance. "Such security is especially important for smaller
> insurers; if the large firms could not count on the netting of balances
> to satisfy obligations, they would be more likely to exclude smaller or
> tottering firms--making new entry harder and precipitating failures of
> firms in difficulty. . . . If . . . one member fails the other members'
> exposure becomes the gross rather than the net obligation, then the
> mutual security of the offsetting debts is destroyed. [Reinsurance]
> become[s] less useful; the premium charged to bear risk will rise."

*Prudential*, 842 P.2d at 63 (internal citations omitted). The court reasoned that

"[t]he reinsurers prevail in this case because our Legislature has expressly and

broadly recognized their right of setoff, along with the similar right of others who

have dealt with insolvent carriers." *Id.*

While Reliance suggests in its Opening Brief at page 27 that a federal court's

recognition of TDC's right to setoff would somehow infringe upon "regulatory

decision-making," the court in *Prudential* found that the opposite would be true. In response to the economic policy arguments similar to those Reliance makes here, the court stated that the issue before it was one calling for construction of a statute, and that it was "unwilling to engage in complex economic regulation under the guise of judicial decisionmaking." *Id.* at 63.

In sum, for all the reasons stated above and in TDC's Opening Brief, the District Court erred, as a matter of state law, in dismissing TDC's setoff claim, and the order dismissing the claim therefore should be reversed.

## 2.    The McCarran-Ferguson Act Is Inapplicable

Reliance, for the first time in its Opening Brief, asserts that the McCarran-Ferguson Act bars TDC's counterclaim. First, because Reliance never mentioned the Act in any of the briefings to the court below, the argument should be disregarded. However, there exists a more fundamental reason for disregarding the argument -- it is wholly illogical, and Reliance urges this court to turn the McCarran-Ferguson Act on its head. Reliance brought this action--a garden-variety contract-based action--in federal court, apparently conceding that the District Court had jurisdiction over claims involving an insolvent insurer. Now, Reliance asks this court to disregard state insurance insolvency statutes providing for setoffs and to affirm dismissal of the setoff claim on grounds that, by operation of the McCarran-Ferguson Act, state law reverse-preempts diversity jurisdiction

under 28 U.S.C. § 1332 *only* over the setoff claim. Yet this is the very statute
under which Reliance brought the action. Quite simply, if the district court was
precluded from considering a setoff claim involving an insurer undergoing
liquidation, the district court was also precluded from considering Reliance's claim
as well. TDC, on the other hand, argues merely that the district court below *could*
*have and should have applied state law* to permit TDC's setoff claim.

The McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, was enacted
primarily to allow states to regulate the business of insurance free from inadvertent
preemption by federal statutes of general applicability. *Forsyth v. Humana, Inc.*,
114 F.3d 1467, 1479 (9th Cir. 1997); *aff'd* 525 U.S. 299 (1999). Section 2(b) of
the Act provides in pertinent part: "No Act of Congress shall be construed to
invalidate, impair or supersede any law enacted by any State for the purpose of
regulating the business of insurance . . . unless such Act specifically relates to the
business of insurance."

The Ninth Circuit has adopted a four-part test to determine when section
2(b) of the McCarran-Ferguson Act precludes application of a federal statute to
preempt a state insurance law:

> The [Act] precludes . . . preemption by a federal statute if: '(1) the
> statute does not 'specifically relate' to the business of insurance, (2)
> the acts challenged under the statute constitute the business of
> insurance, (3) the state has enacted a law or laws regulating the
> challenged acts, and (4) the state law would be superseded, impaired

EXHIBIT 4
PAGE 106

or invalidated by the application of the federal statute.' All four
factors must be satisfied.

*Forsyth*, 114 F.3d at 1479 (citing *Merch. Home Delivery Serv., Inc. v. Frank B.*

*Hall & Co.*, 50 F.3d 1486, 1488-89 (9th Cir. 1995)).

In the instant case, it is clear that the federal statute at issue, 28 U.S.C. §

1332, does not specifically relate to the business of insurance. It is also apparent

that both Hawaii and Pennsylvania have adopted their own statutory schemes for

the liquidation of insurance companies. Although the first and third factors of the

Ninth Circuit's test are satisfied, the second and fourth factors are not.

Here, the "acts challenged under the statute" do not constitute the "business

of insurance," as both Reliance and TDC seek damages based on contracts. The

phrase "'business of insurance' refers to the relationship between the insurance

company and the policyholder and includes the fixing of rates, the selling and

advertising of policies, and the licensing of companies and their agents." *Gerling*

*Global Reins. Corp. of America v. Low*, 240 F.3d 739, 744 (9th Cir. 2001) (quoting

in part *SEC v. Nat'l Sec., Inc.*, 393 U.S. 453, 460 (1969) (internal alterations and

citations omitted)).

Under circumstances analogous to those here, the Third Circuit in *Grode v.*

*Mutual Fire, Marine & Inland Insurance Company*, 8 F.3d 953 (3d Cir. 1993)

refused to entertain abstention under the McCarran-Ferguson Act, finding the Act

to be "totally irrelevant." *Grode*, 8 F.3d at 960. There, the Insurance

EXHIBIT 4
PAGE 107

Commissioner for the state of Pennsylvania brought an action in a Pennsylvania court to recover unpaid sums allegedly owed to the insolvent insurer under reinsurance contracts. The defendants removed to federal court. Although the district court remanded the action, the Third Circuit reversed. The court emphasized that the matter before it was "a simple contract action involving an allegedly unpaid debt," *id.* at 959, and that any federal intrusion . . . will be very limited and will have no negative effect on the state's regulatory program." *Id.* at 960. The Court observed, "In sum, the dispute underlying this appeal is an ordinary contract action in which the plaintiff happens to be an insolvent insurance company. The state regulatory scheme will not be disrupted by a federal court's disposal of such a claim." *Id.* at 961. The court continued:

> Moreover, the state's interest in regulating insurance companies does not stretch to this situation, because there is not a large number of similarly situated plaintiffs racing to the courthouse. Rather, the Commissioner is merely suing a party for an allegedly unpaid debt. To allow abstention here would be permitting abstention in any tort or contract action involving a regulated industry, no matter how attenuated the connection between the cause of action and the state regulations.

*Grode*, 8 F.3d at 961; *see also Suter v. Munich Reins. Co.*, 223 F.3d 150 (3d Cir. 2000) (where liquidator of insurer was plaintiff and suit was to enforce contract rights, there was no reverse preemption under McCarran-Ferguson); *Nichols v. Vesta Fire Ins. Corp.*, 56 F. Supp. 2d 778 (E.D. Ky. 1999) (McCarran-Ferguson did not conflict with state law conferring exclusive jurisdiction of insurance

EXHIBIT 4
PAGE 108

liquidations on state courts; action was a "common law breach of contract action which merely happens to involve an insolvent insurer"); *cf. Costle v. Fremont Indem. Co.*, 839 F.Supp. 265 (D. Vt. 1993) (citing *United States Dept. of Treasury v. Fabe*, 508 U.S. 491 (1993) to support the conclusion that, although every business decision made by an insurance company has some impact on its reliability to policyholders, indirect effects, such as the liquidator's collection of reinsurance proceeds at issue in *Costle*, are not within the McCarran-Ferguson concept of the business of insurance).

Likewise, the test's fourth factor is not satisfied here, because no state law would be "superseded, impaired or invalidated" by the exercise of diversity jurisdiction under 28 U.S.C. § 1332. This Court in *Merchants Home Delivery Service, Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486 (9th Cir. 1995) adopted a "direct conflict" construction of the McCarran-Ferguson Act to determine when a federal statute invalidates, impairs or supersedes a state law.[1] The Court looked to the reasoning of *NAACP v. American Family Mutual Insurance Co.*, 978 F.2d 287 (7th Cir. 1992) which held, in pertinent part, that state and federal laws that do not conflict with or displace one another may coexist under the McCarran-Ferguson Act. This Court held:

---

[1] Indeed, Reliance cites no specific statute, but appears to allege that exercise of diversity jurisdiction over the setoff claim would impair Pennsylvania's insurance insolvency scheme *in toto*.

EXHIBIT 4
PAGE 109

We adopt the Seventh Circuit's well-reasoned approach. The language of § 2(b) is inconsistent with a congressional intent to allow states to preempt the field of insurance regulation. First, § 2(b)'s exemption of federal laws which specifically relate to the business of insurance weighs against a congressional intent wholly to abandon the field to the states. Second, only federal statutes which "invalidate, impair, or supersede" state insurance statutes are "preempted." If Congress had intended to cede the field, it could have said: "No federal statute shall be construed to *apply* to the business of insurance." Instead, it allowed federal statutes to apply unless they conflict with the states' statutes.

*Merchants Home,* 50 F.3d at 1492. The Court thus held that, where RICO prohibited the same conduct as the state statute, but provided for different remedies, RICO did not invalidate, impair or supersede the state law under the McCarran-Ferguson Act. *Id.* Similarly, in *Forsyth v. Humana,* this Court observed that even where there is symmetry between a federal and state law prohibiting the same conduct but providing for different causes of action and remedies, there is no conflict. *Forsyth,* 114 F.3d at 1480. As stated by the Supreme Court in affirming that decision, "When federal law is applied in aid or enhancement of state regulation, and does not frustrate any declared state policy or disturb the State's administrative regime, the McCarran-Ferguson Act does not bar the federal action." *Humana,* 525 U.S. at 302.

There is likewise no conflict in the instant case. The federal statute at issue, 28 U.S.C. § 1332, merely confers jurisdiction over *both* Reliance's state-law cause of action and TDC's setoff claim, and 28 U.S.C. § 1332 does not preclude

EXHIBIT 4
PAGE 110

application of any state law related to contracts or to insurance insolvency. That statute permits the Court to resolve both Reliance's and TDC's contract-based claims, both of which find their basis in state law.

Ironically, the true thrust of Reliance's argument is not that the *federal statute itself* would "invalidate, impair or supersede" Pennsylvania insolvency statutes, but that *application of state law allowing setoffs would do so. See* Reliance's Opening Brief at 15-16. Although Reliance cloaks its argument in terms of protecting the integrity of the Pennsylvania insolvency proceeding, Reliance fails even to note that Pennsylvania's insurance insolvency statutes *provide specifically for setoffs* as a matter of public policy. Reliance also fails to explain how the federal courts can freely exercise diversity jurisdiction over Reliance's own claims but decline to exercise jurisdiction over a setoff claim created by the same statutory scheme that permits Reliance to seek relief in federal court. Quite simply, if McCarran-Ferguson divests federal courts of jurisdiction over claims involving an insurer in liquidation or, more specifically, claims that could affect the amount of funds available to creditors and policyholders in the liquidation action, then the court below was without jurisdiction not only over TDC's setoff claim, but Reliance's claims as well.

An argument similar to Reliance's was made--and rejected--in *Gross v. Weingarten*, 217 F.3d 208 (4th Cir. 2000). There, a receiver for an insolvent

EXHIBIT 4
PAGE 111

insurer brought claims, in federal court, against the insurer's directors and others,

who then brought counterclaims seeking equitable exoneration, indemnification,

and contribution for outlays in settling a separate class action. The court entered

judgment for the defendants but dismissed the counterclaims. On appeal, the

receiver argued that the state code governing insurance insolvency and liquidation

established an exclusive state forum for the defendant's counterclaims and,

implicitly, that assertion of federal jurisdiction would invalidate, impair or

supersede Virginia law by providing an alternate forum. The court rejected this

argument:

> We are skeptical that Congress intended, through the
> McCarran-Ferguson Act, to remove federal jurisdiction over every
> claim that might be asserted against an insurer in state insolvency
> proceedings. If nothing else, the argument proves too much, for it
> would operate to divest exclusively federal jurisdiction as effectively
> as it would diversity jurisdiction, leaving many plaintiffs with no
> forum in which to assert their federal rights. In any event, we do not
> believe that concurrent federal jurisdiction over the defendants'
> counterclaims threatens to "invalidate, impair, or supersede" (as those
> terms are used in the McCarran-Ferguson Act) Virginia's efforts to
> establish a single equitable proceeding to liquidate or rehabilitate
> insolvent insurers.

*Gross*, 217 F.3d at 222 (citing, *inter alia, Humana,* 525 U.S. at 307-10)). The

court thus held that the Virginia court's order "purporting to assert sole and

exclusive jurisdiction over all claims" against the insurer could not and did not

divest the federal courts of the jurisdiction conferred upon them by Congress. The

court further held that the Virginia statute, which conferred on the state courts

EXHIBIT 4
PAGE 112

jurisdiction over proceedings in connection with the rehabilitation and liquidation of an insolvent insurer, in conjunction with the McCarran-Ferguson Act, "does not preempt federal jurisdiction over the defendants' counterclaims." *Id.* at 223 (holding also that abstention was not warranted on counterclaims, and thus reversing dismissal of the counterclaims).

Moreover, courts have readily distinguished cases in which the liquidator of an insolvent insurer is the plaintiff from those cases in which the insolvent insurer is the defendant. In *AmSouth Bank v. Dale*, 2004 WL 2092997 (6th Cir. Sept. 21, 2004), two banks brought a declaratory judgment action against receivers of insolvent insurers, seeking a declaration that the banks were not liable to the receivers for losses connected to a money laundering scheme and seeking an injunction to bar suits by the receivers against the banks. The district court denied the receivers' motion to dismiss and issued a preliminary injunction, from which the receivers appealed. The receivers argued that the district court was without jurisdiction, pursuant to McCarran-Ferguson reverse preemption and *Burford*, but the Sixth Circuit rejected the argument:

> Reviewing the lines of cases cited by the parties, it becomes clear that often when faced with suit in the federal courts, a state commissioner of insurance as receiver or liquidator of an insurance company placed under the state's care will rely on one or both of these doctrines to attempt to defeat federal court jurisdiction. *Because state liquidation proceedings of insolvent insurers are exactly the sort of intricate state regulation on behalf of state-resident policyholders that these doctrines are intended to protect, these arguments have some force*

EXHIBIT 4
PAGE 113

> *when angry creditors attempt to sue insolvent insurance companies in*
> *federal court to jump ahead in the queue of claims, but they have less*
> *force here, where the insurance companies are themselves the natural*
> *plaintiffs, as Receivers vociferously argue. This dispute involves the*
> *Receivers' attempt to recover money in an ordinary common-law-*
> *damages suit; the Banks do not here attempt to disrupt a coherent*
> *state scheme in favor of enriching their own pockets.*

*AmSouth*, 2004 WL 2092997 at *10. The court thus held that the McCarran-

Ferguson Act did not apply and that *Burford* abstention was not warranted. *Id.* at

*13.

This Court's opinion in *Bennett v. Liberty National Fire Insurance Co.*, 968

F.2d 969 (9th Cir. 1992) is particularly relevant here. In *Bennett*, the liquidator for

an insolvent insurer brought a state court action against reinsurers to recover

payments allegedly due. The reinsurers removed the suit to federal district court

and the defendants moved, *inter alia*, to compel arbitration pursuant to the

reinsurance agreements. The district court remanded under abstention doctrines.

On appeal, this Court held that "because the liquidator, who stands in the shoes of

the insolvent insurer, is attempting to enforce [the insurer's] contractual rights, she

is bound by [the insurer's] pre-insolvency agreements." *Bennett,* 968 F.2d at 972.

The court observed that "if the liquidator wants to enforce [the insurer's] rights

under its contract, she must also assume its perceived liabilities." *Id.* at n4.

*Bennett* also refutes Reliance's argument that a federal court's determination

of TDC's right to setoff would grant it a "preferential position" with respect to

EXHIBIT 4
PAGE 114



other creditors.  Although the Court in *Bennett* recognized that the Montana

statutes conferred on the liquidator complete control over the insolvent's assets,

> [u]ntil the contractual dispute regarding ownership of the assets is
> resolved, however, the authority the [state] insolvency statute grants
> the liquidator does not vest.  Only if a court or arbitrator determines
> that the funds belong to the [insurer] does that money become part of
> the estate that the liquidator will distribute.

*Id.* at 972.  The Court rejected applicability of McCarran-Ferguson, because the

liquidator was "unable to explain why she is entitled to an advantage that the

insolvent company whose position she now occupies did not have.  Neither does

she articulate how arbitration interferes with a valid state regulatory purpose."  *Id.*

at 973.

Similarly, in *Costle v. Fremont Indemnity Co.*, 839 F.Supp. 265 (D. Vt.

1993), a liquidator of Ambassador, an insurer, brought a collection action against

an out-of-state reinsurer in state court.  The reinsurer removed the action, and then

moved to stay the action in favor of arbitration as provided in the reinsurance

agreements.  The liquidator opposed arbitration, arguing, *inter alia*, that arbitration

would impair the state regulatory scheme for liquidating insolvent insurers and that

it was therefore prohibited by the McCarran-Ferguson Act.  Relying in part upon

this Court's analysis in *Bennett*, the court observed that the Liquidator's argument:

> seems somewhat disingenuous.  As the Liquidator of Ambassador, she
> seeks to enforce contractual provisions requiring the payment of
> reinsurance proceeds, yet on the other hand, she seeks to avoid
> enforcement of arbitration provisions contained in the same contracts.

> This inconsistent approach has been rejected by several courts: if a liquidator seeks to enforce an insolvent company's rights under a contract, she must also suffer that company's contractual liabilities. This Court adopts the same analysis set forth in the above-noted cases and finds that the Liquidator herein stands in the shoes of Ambassador and is thus bound by Ambassador's pre-insolvency contracts, including arbitration provisions.

*Costle*, 839 F.Supp. at 272 (citing *Bennett*, 968 F.2d at 972 n. 4; *Selcke v. New England Ins. Co.*, 995 F.2d 688 (7th Cir. 1993) (holding liquidator of insolvent insurer bound to pre-insolvency arbitration agreement with reinsurer); *cf. Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1153 (3d Cir. 1989) (trustee-plaintiff stands in debtor's shoes and is bound to arbitrate to same extent debtor would be bound). Likewise, in the instant case Reliance must be bound by the terms and obligations of its pre-insolvency contracts.

Reliance argues broadly that "Federal courts cannot assert jurisdiction over claims against insolvent insurance companies on the sole basis of federal jurisdictional statutes because jurisdiction would invalidate, impair or supersede state liquidation statutes." Reliance's Opening Brief at 15. In light of the foregoing arguments, this argument is far too broad. Moreover, the cases cited by Reliance in support of the argument are readily distinguishable, as none of the cases involved setoffs or even counterclaims, all involved affirmative claims against the liquidator, and in none of the cases was the liquidator the plaintiff, as here. For example, Reliance cites *United States Financial Corp. v. Warfield*, 839

EXHIBIT 4
PAGE 116

F.Supp. 684 (D. Ariz. 1993), which was an action brought in federal court by a corporation *against* an insurer undergoing liquidation in Arizona courts. Similarly, in *United of Omaha Life Insurance Co. v. Udisky*, 2001 WL 102670 (S.D. Ohio Jan. 23, 2001) and *In re Advanced Cellular Systems*, 235 B.R. 713 (D.P.R. 1999) the liquidator was the *defendant*, not the plaintiff, in each action.

In sum, even if Reliance had timely raised its McCarran-Ferguson Act argument in the proceedings below, it nevertheless would not have precluded the district court from resolving TDC's right to setoff under state statutes.

      3.    **Abstention Principles Do Not Preclude Jurisdiction Over TDC's Setoff Claim**

          a.    *Burford* Abstention is Inappropriate to the Instant Action

As discussed in TDC's Opening Brief, the *Burford* abstention doctrine is inappropriate to TDC's setoff claim and, even if it were applicable, it would require abstention from deciding *all* claims in this case.

In *Grode v. Mutual Fire, Marine & Inland Insurance Co.*, 8 F.3d 953 (3d Cir. 1993) the court considered whether "under abstention doctrines a federal court may surrender jurisdiction to a state court of an ordinary contract claim initially brought in a state court [on] behalf of an insolvent insurance company and removed to a federal district court by foreign defendants on grounds of diversity." The court held that it may not.

EXHIBIT 4
PAGE 117

> Although the regulation of insolvent insurance companies is surely an important state interest, *this case does not involve the complex and highly regulated issues of insurance regulation; rather, it is a simple contract action involving an allegedly unpaid debt*. The complex regulations relating to insolvent insurance companies have to do with plans of rehabilitation and payment to policy holders. *Simple contract and tort actions that happen to involve an insolvent insurance company are not matters of important state regulatory concern or complex state interests*.

*Grode*, 8 F.3d at 959. Examining the Supreme Court's opinion in *New Orleans*

*Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350 (1989) ("*NOPSI*"),

the Supreme Court held that abstention was not appropriate because, "While

*Burford* is concerned with protecting complex state administrative processes from

undue federal interferences, it does not require abstention whenever there exists

such a process." *Id.* at 959 (quoting *NOPSI*, 491 U.S. at 362).

> "Thus, like [*NOPSI*], the case *sub judice* does not involve complex state administrative processes or matters affecting vital state policy interests. Although the state regulates insolvent insurance companies, simple contract actions that happen to involve such companies are not matters of important regulatory concern or actions interfering with important state policies. The federal court need not decide in this case if the state has misapplied its authority, but rather it must look only to the four corners of the treaties to determine if arbitration is appropriate . . . ."

*Id.* (holding *Burford* abstention inappropriate because, *inter alia*, no important

regulatory state interests are involved in an ordinary contract action).

In *AmSouth Bank v. Dale*, 2004 WL 2092997 (6th Cir. Sept. 21, 2004), a

declaratory judgment action brought by two banks against receivers for insolvent

EXHIBIT 4
PAGE 118

95804_1.DOC                                    18

insurance companies, the court likewise held that *Burford* was inapplicable, where the dispute involved "an ordinary common-law damages suit." *AmSouth*, 2004 WL 2092997 at *10, *13. The court noted that state liquidation proceedings might be excellent candidates for *Burford* abstention, "but it is difficult to see how a federal court's pronouncement on issues having nothing to do with insurance could be disruptive of those proceedings. Like under the McCarran-Ferguson analysis, that receivers are covered by the anti-suit provisions of the various liquidation laws seems mere coincidence, and abstention seems inappropriate." *Id.* at *13.

> Because *Burford* abstention is concerned with potential disruption of a
> state administrative scheme, rather than the mere existence of such a
> scheme, looking behind the action to determine whether it implicates
> the concerns of *Burford* is necessary, and the issues in this litigation,
> concerning the liability of the Banks for various non-insurance-related
> activities, federal law defenses, and state tort law, do not warrant
> *Burford* abstention. The district court thus did not abuse its discretion
> in refusing to abstain under *Burford*.

*Id.* at *14; *see also Nichols v. Vesta Fire Ins. Corp.*, 56 F. Supp. 2d 778 (E.D. Ky. 1999) (declining to abstain under *Burford* in contract action brought by liquidator of insurer, which was removed to federal court).

The existence of a setoff claim does not alter this analysis. In *Ruthardt v. Sandmeyer Steel Co.*, 1995 WL 434373 (E.D. Pa. July 21, 1995), the Massachusetts Insurance Commissioner, in her capacity as liquidator of two insolvent insurers, brought a breach of contract action in federal court to recover retrospective premiums from an insured. The insured counterclaimed, also for

EXHIBIT 4
PAGE 119

breach of contract. The court rejected the Commissioner's argument that *Burford*

abstention was appropriate as to the counterclaims, stating:

> [P]laintiff has not demonstrated that the counterclaims raise "difficult
> questions of state law bearing on policy problems of substantial public
> import" or that their resolution in this case "would be disruptive of
> state efforts to establish a coherent policy with respect to a matter of
> substantial public concern." It is plaintiff who elected to resolve the
> retroactive premium dispute in federal court. The counterclaims
> against plaintiff involve straightforward questions regarding
> contractual obligations.
>
> Plaintiff also contends that the counterclaims violate the order of the
> Massachusetts court which enjoined policy holders from maintaining
> actions against the insurance companies or the receiver and from
> attempting to attach or take possession of property owned by or in the
> possession of the companies or the receiver. It is the receiver who
> instituted this action. Defendant seeks only to recoup to the extent of
> any award for premiums which plaintiff may obtain. Defendant is not
> attempting to obtain from the receiver property which she owns or
> possesses.

*Ruthardt*, 1995 WL 434373 at *2.

Reliance argues that *Burford* is appropriate to TDC's setoff claims because

the setoff claim is "equitable in nature."[2]  However, the analysis of the Ninth

Circuit and the Supreme Court in *Garamendi v. Allstate Ins. Co.*, 47 F.3d 350 (9th

Cir. 1995), *aff'd sub nom. Quackenbush v. Allstate*, 517 U.S. 706 (1996), which

---

[2] Reliance's own claims are based in subrogation and contribution and are therefore
equitable in nature. *See Reliance Nat'l Indem. Co. v. Gen Star Indem. Co.*, 85 Cal.
Rptr. 2d 627, 635 (Cal. Ct. App. 1999) ("the concepts of contribution and
subrogation are both equitable in nature"). Should *Burford* be held to apply here, it
should apply to the case in its entirety.

EXHIBIT 4
PAGE 120

involved facts closely analogous to the instant case, disproves this theory.  In

*Quackenbush*, the California Insurance Commissioner, as liquidator of the assets of

insolvent Mission Insurance Company, brought an action in state court against

Allstate to recover reinsurance proceeds under common-law tort and contract

theories.  Allstate removed the action, and the Commissioner moved to remand, on

grounds that the district court should abstain under *Burford* because the question of

whether Allstate could set off its own contract claims against Mission was pending

before the state courts in another insolvency case.[3]  The district court concluded

that the setoff question should be resolved by state courts and thus *Burford*

abstention was appropriate.  On appeal, the Ninth Circuit concluded that *Burford*

was limited to equitable actions and that abstention was inappropriate in the case

before it, which was one for damages.  *See Garamendi*, 47 F.3d at 356.  The Ninth

Circuit concluded that the district court's remand order was inappropriate because

"*Burford* abstention does not apply to suits seeking solely legal relief." *Id.* at 354.

The Supreme Court affirmed, stating that "[t]o the extent the Ninth Circuit held

only that a federal court cannot, under *Burford,* dismiss or remand an action when

the relief sought *is not discretionary*, its judgment is consistent with our abstention

---

[3] Apparently, the Commissioner had claimed that any recovery by Allstate on its
setoff claims would amount to an illegal "preference" under state law, but the
question was resolved to permit reinsurers to assert setoff claims in suits filed by
the Commissioner in the Mission insolvency. *Quackenbush*, 517 U.S. at 729
(citing *Prudential Reins. Co. v. Superior Court of Los Angeles Cty.*, 842 P.2d 48
(Cal. 1992)).

EXHIBIT 4
PAGE 121

cases." *Quackenbush*, at 730 (emphasis added).  The Court concluded:

> Under our precedents, federal courts have the power to dismiss or remand cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary.  *Because this was a damages action, we conclude that the District Court's remand order was an unwarranted application of the Burford doctrine.*  The judgment is affirmed.

*Id.* at 731.  Thus, both the Ninth Circuit and the Supreme Court considered the action, to include the setoff claim, to be one solely for damages, and both courts found *Burford* abstention to be inappropriate.  There is no basis for distinguishing the case at issue.

        b.    *Colorado River* Abstention is Inapplicable

This Court has observed that *Colorado River* deference to state court proceedings rests on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1367 (9th Cir. 1990) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal alterations omitted)).  Because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," however, "generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ." *Id.* (quoting *Colorado River*, 424 U.S. at 817)).

EXHIBIT 4
PAGE 122

The *Colorado River* abstention is inapplicable to the instant matter, first,

because the doctrine applies only where there is a *concurrent* state proceeding, and

there was no such state proceeding at the time of the District Court's June 17, 2003

Setoff Order. To support its new theory, Reliance has filed a "Request for Judicial

Notice" of proofs of claims filed by TDC in the Pennsylvania proceedings to

liquidate Reliance. Significantly, these proofs were filed on or about December

22, 2003, *subsequent* to the June 17, 2003 Order Granting Plaintiff's Motion for

Dismissal of Counterclaim for Set Off and the September 25, 2003 Order Denying

Defendant's Motion for Summary Judgment.[4] *See* Exhibit "A" to Reliance's

Request for Judicial Notice. This Court, in *Minucci v. Agrama*, 868 F.2d 1113,

1115 (9th Cir. 1989) explored the boundaries of the *Colorado River* doctrine and

stated:

> The *Colorado River* doctrine allows a district court to stay or dismiss
> a federal suit "due to the presence of a ***concurrent*** state proceeding
> for reasons of wise judicial administration." Such stays or dismissals
> are permitted only in exceptional circumstances because the "federal
> courts have a 'virtually unflagging obligation . . . to exercise the
> jurisdiction given them.'" Moreover, the *Colorado River* doctrine
> only applies to claims under the ***concurrent*** jurisdiction of the federal
> and state courts.

*Minucci*, 868 F.2d at 1115 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 15 (1983)). Here, at the time the District Court issued its order

---

[4] As with its McCarran-Ferguson argument, Reliance did not previously seek
abstention under *Colorado River*, but raises the argument only on appeal. The
argument therefore should be disregarded.

EXHIBIT 4
PAGE 123

dismissing TDC's setoff claim, the Pennsylvania court had no jurisdiction over TDC or its contract claims, so the *Colorado River* doctrine was inapplicable and could not have been a basis for dismissing the setoff claim. *See Nichols v. Vesta Fire Ins. Co.*, 56 F. Supp. 2d 778, 780 (E.D. Ky. 1999) (finding *Colorado River* abstention "not applicable" to suit by liquidator for insolvent insurer where there was no concurrent state proceeding pending between the parties). Even now, "[t]he mere existence of a case on the state docket in no way causes a substantial waste of judicial resources nor imposes a burden . . . which would justify abstention." *Travelers Indemnity,* 914 F.2d at 1370 (quoting *Herrington v. County of Sonoma,* 706 F.2d 938 (9th Cir. 1983)).

Moreover, Reliance's argument is without merit to the extent the *Colorado River* abstention doctrine is based upon "[c]onsiderations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Intel Corp. v. Advanced Micro Devices, Inc.,* 12 F.3d 908, 912 (9th Cir. 1993). Indeed, Reliance itself brought its contract claim in district court, so the district court was already expending resources on state law claims that could have been resolved in state court; TDC merely asserted its right to setoff in the context of Reliance's claim. *Cf. Stamp v. Ins. Co. of N. America,* 908 F.2d 1375, 1397 (7th Cir. 1995) (affirming application of setoff against insurer's liquidator, and finding *Colorado River* inappropriate where the

EXHIBIT 4
PAGE 124

liquidator himself brought the action in federal court "ensuring the affairs of [the insurer] will *not* be wound up in a single forum"). Moreover, if *Colorado River* could be held applicable retroactively, it should apply not only to TDC's setoff claim but to Reliance's claim as well.

Application of the *Colorado River* abstention doctrine to TDC's setoff claim would also have been inappropriate because it would provide neither complete nor prompt relief as envisioned by the state statute providing for setoff. The Supreme Court has declared:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the ***complete and prompt*** resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 28. In the instant case, abstention purportedly to permit Pennsylvania courts to determine TDC's setoff claim would not only deprive TDC of its statutory entitlement to setoff, but would be incomplete, as it realistically would result in a recovery of only pennies on the dollar, and would be anything but "prompt."

 4. Neither Full Faith and Credit Nor Comity Bars TDC's Setoff
 Claim

Reliance's argument that TDC's setoff claim is barred by the doctrine of full faith and credit is without merit, and the court below erred in so holding. As

EXHIBIT 4
PAGE 125

discussed at length in TDC's Opening Brief, the District Court relied heavily on a

misinterpretation of orders issued by the Pennsylvania Commonwealth Court,

particularly the Order of Liquidation filed October 3, 2001. The District Court

gave great weight, for example, to the Liquidation Order's statement that "[u]nless

the Liquidator consents thereto in writing, no action at law or equity . . . shall be

brought against Reliance or the Liquidator, whether in this Commonwealth or

elsewhere . . . ." ER 8 at 8-4. The District Court failed, however, to recognize that

a mere assertion of setoff to a claim brought by Reliance is not an "*action* against

Reliance." As this Court has explained, "set-off is a defense to liability; it is not an

affirmative claim for payment." *Quackenbush v. Allstate Ins. Co.*, 131 F.3d 1372

(9th Cir. 1997); *see also* Opening Brief at 15-22; *O'Connor v. Ins. Co. of N.

America*, 622 F. Supp. 611 (N.D. Ill. 1985) (term "claim" was not broad enough to

encompass setoffs, and observing that such an interpretation would override the

specific setoff provision in state law); *Reliance Ins. Co. v. Shriver, Inc.*, 224 F.3d

641 (8th Cir. 2000) (affirming district court's application of Illinois insurer

liquidation statute to permit setoff of mutual debts). As did the court below,

Reliance cites *Clark v. Fitzgibbons*, 105 F.3d 1049 (5th Cir. 1997) and *Rose v.

Fidelity Mutual Life Insurance Co.*, 207 F. Supp. 2d 50 (E.D.N.Y. 2002) for

support. These cases, however, are inapposite to the instant case, as both those

cases were *affirmative actions* brought by a *creditor* against an insurer undergoing

EXHIBIT 4
PAGE 126

liquidation proceedings in a state court; those cases did not address the right to setoff in *response* to an affirmative claim brought by an insurer in liquidation. Even if that were not the case, there appears to be no authority for the extension of full faith and credit to a court order that would effectively *invalidate* a state statute, as would be the case here.

As Reliance concedes, comity is a "voluntary decision of one state to defer to the policy of another in an effort to promote uniformity of laws . . . ." Reliance's Opening Brief at 25. However, the Supreme Court has recognized repeatedly that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress. *See, e.g., Quackenbush*, 517 U.S. at 716. The sole federal case upon which Reliance relies, *Reliance Insurance Co. v. Six Star Inc.*, 2002 WL 342623 (S.D.N.Y. March 5, 2002), is inapposite because it was brought by Reliance prior to being ordered into liquidation and, after counsel for Reliance advised the court that it no longer had authority to act on Reliance's behalf, the Court determined that it should "maintain this action in its entirely [sic] on the suspense calendar." *Six Star*, 2002 WL 342623 at *3. Moreover, it is significant that the court placed the *entire* action--not only the counterclaims--on the suspense calendar.

Reliance has failed to show that abstention doctrines or doctrines of full faith and credit or comity apply here, and have cited no cases in which a court, pursuant

EXHIBIT 4
PAGE 127

to any of these doctrines, has stayed or dismissed only a setoff claim while retaining jurisdiction of the original claim.

For all the foregoing reasons, the District Court erred in dismissing TDC's setoff claim, and the June 17, 2003 Order Granting Plaintiff's Motion for Dismissal of Counterclaim for Set Off should therefore be reversed.

B.    The District Court Erred in Denying TDC's Motion for Summary Judgment and Granting in Part Reliance's Motion for Summary Judgment

1.    Drs. Kubota and Pearce Were Not Legally Liable at Settlement

The plain language of the TDC Policy obligates TDC to provide indemnification for those amounts an insured is legally obligated to pay:

A.    WHAT [TDC] WILL PAY

[TDC] will pay on behalf of any insured all sums which any insured shall be legally obligated to pay as damages for a claim which alleges bodily injury arising from any insured's rendering or failing to render the hospital and professional services to which this insurance applies, . . . .

TDC Policy, ER 2, Exh. "G" at 2-101 (emphasis added). In other words, TDC is required to indemnify an insured when (1) a proper *claim* against an insured which alleges bodily injury has been asserted, and (2) the insured is *legally obligated* to pay that claim. As submitted in TDC's Opening Brief, neither in the underlying *Magday* case, nor in this action by Reliance, have Drs. Kubota or Pearce ever been determined to be *legally liable* for damages to the Magdays.

EXHIBIT 4
PAGE 128

Reliance does not dispute and apparently concedes that TDC is not required to indemnify its insured unless such insured is legally obligated to pay for damages, but argues, as the District Court found, that Drs. Kubota and Pearce became legally obligated to pay for Magday's injuries as a result of the *Magday* Settlement. Reliance's position cannot be sustained for several reasons. First, the fallacy of the District's Court's decision, and Reliance's argument, that Drs. Kubota and Pearce were legally liable at settlement is that such a determination is based solely on the District Court's finding that "there is no material issue of fact as to the inclusion of Drs. Kubota and Pearce in the settlement." *See* Order at 28. Surprisingly, the District Court fails to offer any legal or factual explanation or rationale as to why the inclusion of Drs. Kubota and Pearce in the settlement would automatically lead to a determination of liability of Drs. Kubota and Pearce in a subsequent coverage action between TDC and Reliance.

More significantly, and contrary to the District Court's determination, a defendant's inclusion in settlement does not automatically lead to a determination of liability of the defendant, and such liability must be adjudicated on the merits. *See, e.g., Mut. Ins. Co. of Arizona v. American Cas. Co. of Reading Pennsylvania*, 938 P.2d 71 (Ariz. Ct. App. 1997); *State Farm Fire & Casualty Co. v. Cooperative of American Physicians, Inc.*, 163 Cal. App. 3d 199, 206 (1984) (noting that in a subrogation coverage dispute between two insurers, there is no legal impediment to

EXHIBIT 4
PAGE 129

a jury trial on the issue of the defendant's negligence in order to determine damages).

*Mutual Insurance* is instructive. There, the family of an injured patient brought a malpractice action, naming as defendants two hospitals and two doctors. Although the complaint identified two nurses who were involved in the events giving rise to the injury, neither was named as a defendant. *Mut. Ins. Co.*, 938 P.2d at 73. Both nurses had additional malpractice insurance through other carriers. *Prior to trial, the hospitals' carrier settled the action on behalf of the defendants and the nurses.* The carrier then arbitrarily allocated 20% of the settlement to a doctor, and distributed the remaining 80% between the nurses. The hospitals' carrier then demanded contribution of the respective portions of the settlement from the nurses' carriers. *Id.*

The court first noted that, where two or more insurers share responsibility for a loss, "it should not be left to the discretion of the loss claimant to decide which insurer should pay the entire claim." *Id.* at 75. The court observed that the risk insured against was the *actual* negligence of the insureds. *Id.* While the court found that the Hospitals' carrier was *potentially* entitled to contribution from the nurses' carriers,[5] the court made clear that before such contribution was made, the

---

[5] The court noted that the initiation of a lawsuit against an insured was not necessarily a prerequisite to a duty to settle "in a clear case." *Mut. Ins. Co.*, 938 P.2d at 75 n.7.

EXHIBIT 4
PAGE 130

hospitals' carrier "*must be able to establish the negligence of the mutual insured[s]*." *Id.* at 76 (emphasis added).

*Mutual Insurance* is analogous to the facts of this case. Here, as in *Mutual Insurance*, although Drs. Pearce and Kubota may have been included in the settlement of Magdays' claim, Reliance must still establish the negligence of Straub and Drs. Kubota and Pearce before Reliance can recover in a subrogation action against TDC. Stated otherwise, the issue of Straub and Drs. Kubota and Pearce's negligence was a factual issue for determination by the jury and not the court. The District Court's determination that Drs. Kubota and Pearce were legally liable at settlement was simply erroneous and deprived TDC of its right to submit the negligence issue to a jury.

Second, at no time did Reliance—or even the Magdays—show reasonably clearly which of the doctors, or Straub, were legally liable for the injury to Magday. Although Straub may have vicarious liability for the legal liability of one or both of the doctors, liability separate and apart from the liability of the doctors has never been established. Indeed, contrary to Reliance's assertion,[6] the evidence

---

[6] Inexplicably, Reliance incorrectly asserts that "TDC offered no rebuttal evidence or expert testimony in its opposition to Reliance's motion and effectively conceded the issue of legal liability." *See* Reliance's Answering Brief at 34. As evidenced by the expert opinions submitted by TDC, *see* TDC's Supplemental Excerpts of the Record ("SER") 20, in opposition to Reliance's Motion for Partial Summary Judgment, that assertion is absolutely false and an improper attempt to mislead this Court.

EXHIBIT 4
PAGE 131

submitted to the District Court by TDC demonstrates that Straub (Rhonda Perry,

P.A.) and Dr. Pearce were not responsible for Magday's injuries. TDC's expert Ms.

Peggy Sale, RN, MSN, CEN, FNP, opined that Rhonda Perry was not negligent in

her care of Magday:

> Based on my review of the records, Ms. Parry (sic) did the appropriate
> examination, including straight leg raising and immediately reporting
> her findings to the attending physician.... It is my opinion that Ms.
> Parry (sic) met the standard of practice for a physician assistant
> working under the direct supervision of an emergency physician.

*See* TDC's Supplemental Excerpts of the Record ("SER") 20. Similarly, TDC's

other expert, Anthony James Mauro, M.D., C.M., opined that Dr. Pearce was not

negligent in his care of Magday:

> Primary responsibility for patient management rests in the hands of
> attending physicians, in this instance, personnel of the emergency
> department. Dr. James Pearce cannot be responsible for the
> management or mismanagement by emergency personnel in his
> absence, before he was officially engaged in the medical care of Mr.
> Magday.... In the management of a patient presenting to the
> emergency room with paraperesis and progressing while under
> emergency room supervision to paraplegia, as in the case of Mr.
> Magday, it is the chief, primary and ultimate responsibility of the
> physicians present to orchestrate appropriate evaluation and treatment.
> Any information garnered from Dr. Pearce by telephone on that
> morning would have constituted little more than peripheral
> impressions, and would not have substituted for the discretion, clinical
> judgment, and responsibility of the physicians present.

*See* SER 20. In fact, under the facts and law as they existed *at the time of the*

*Magday settlement* a reasonable person would have concluded that TDC would

have only been obligated under one limit of liability (Dr. Kubota's), even if there

were three potential limits of liability available. As the record makes clear, Dr.

Kubota (the emergency room physician), and not Dr. Pearce (the neurologist), was

the primary focus of liability for Magday's injuries:

> . . . Third, the primary focus of the claim has been on the
> emergency room care and treatment rather than in any delays in taking
> the patient to surgery after he was seen by the neurologist.
>
> As an attorney, I can only say that the facts do raise factual
> issues as to the involvement of the neurologist and neurosurgeon, but I
> am not a specialist in neuroscience.

SER 21 (Letter from Peter C.-P. Char to Toni Magbago of Feb. 11, 1999). Mr.

Char's (Straub's attorney) position was consistent with TDC's position:

> Q.     Separate and apart from the discussion you had with Mr.
> York, did you do any analysis or investigation on your own to
> determine whether separate-per claim limits were implicated for the
> two physicians at that point?
>
> A.     You know, there were -- there would have been, but the
> thing is that if there were no liability, then we would not be paying
> any money on their behalf, that is, the doctors'. ***Dr. Pearce, we felt,
> had no liability***. And Dr. Kubota, if there were, then his policy would
> be the lead-off policy. There was only one policy in that -- in this
> entire lawsuit from TDC's standpoint, and that was the one on Straub.
> And it would have been on Kubota, and he would have been -- they
> would have found -- if it had gone to MCCP, they would have found
> against Kubota and then, you know, he would have been the lead
> defendant with Straub being vicariously liable. And that's just the
> way it works.
>
> . . . .

EXHIBIT 4
PAGE 133

Q.    Okay. Let's break it down. The first thing you mentioned is Dr. Pearce and that you had done an analysis indicating that he would have no liability.

A.    That was primarily what we saw, that he could be defended, at least at that point.

Q.    What do you mean by that?

A.    Well, at that time, *on November 9th, we felt that we could defend Dr. Pearce*.

Q.    What, in your mind, at that point, would have been the defenses?

A.    He was a neurologist and the whole treatment of Mr. Magday was in … pardon me, was with the Straub Hospital and Dr. Kubota, and it was while he was in the emergency room where the alleged malpractice took place. Now, whether it was -- what we surmised was that it was during the time he was being seen by Dr. Kubota, who was the ER doc, and -- and everyone else worked for him. Straub was his employer. And so that is the way we look at it.

SER 22 (Deposition of John Edward Suesens) at deposition pages 155-57

(emphases added). Thus, if anything, a genuine issue of material fact existed as to

the negligence of Straub and Drs. Kubota and Pearce and summary judgment on

this issue was improper.

Third, Reliance's citation to the "DAMAGES" provision set forth in the

TDC Policy fails to support Reliance's argument that Drs. Kubota and Pearce were

legally liable at settlement:

TDC's argument that no insured is "legally obligated" to pay damages absent an adjudication of liability is erroneous and contradicted by the language of the TDC Policy.

EXHIBIT 4
PAGE 134

> The TDC Policy does not define the phrase "legally obligated" but it
> does define "damages" broadly to include amounts to be paid under
> settlements.... It defines "damages" in relevant part as follows:
> DAMAGES means any compensatory amount which an insured is
> legally obligated to pay for any claim to which this insurance applies
> and shall include judgments, awards, and settlements entered into with
> [TDC's] prior written consent....

*See* Reliance's Opening Brief at 33.  The definition of damages, however, if

anything, simply indicates that TDC was obligated to pay for its portion of the

settlement, as damages, that was entered into with its consent.  In this instance,

TDC consented to pay $1 million of the $4.3 million settlement negotiated by

Reliance, and made such payment on behalf of its insured, Straub.  There is

nothing in the definition of "damages" that even remotely suggests that Drs.

Kubota and Pearce were legally liable for Magday's injuries as a result of their

inclusion in the settlement.

Accordingly, the District Court erred in finding that Drs. Kubota and Pearce

were legally liable at settlement.

2.    Drs. Kubota and Pearce Were Not Properly Brought as
      Defendants

As submitted in TDC's Opening Brief, legal liability on the part of Drs.

Kubota and Pearce could not have been established because Drs. Kubota and

Pearce were not proper defendants to the underlying suit, as they were never given

the opportunity to have the allegations against them determined by a medical claim

EXHIBIT 4
PAGE 135

conciliation panel ("MCCP") as prescribed by state law. Reliance first argues, consistent with the District Court's determination, that TDC is somehow precluded from raising this defense because TDC "relinquished" such defense when it consented to the settlement. This argument is similar to Reliance's argument that Drs. Kubota and Pearce were legally liable at settlement and is equally fallacious. The logical end to Reliance's proposition is an insurer that settles on behalf of its insured is precluded from raising any defense against the liability of the insured in a subsequent action for subrogation by another insurer. In other words, under Reliance's construction, TDC cannot assert any defenses to liability that the insured could have asserted in the underlying tort action. Such a proposition makes no logical sense and is inconsistent with the requirement submitted above that Reliance affirmatively establish the negligence of Drs. Kubota and Pearce.

Reliance appears to concede that the circuit court's granting of the Magdays' motion for leave to amend the complaint, to add Drs. Kubota and Pearce as defendants, did not dispose of their lack of MCCP hearing defense, but incorrectly argues that claims against Drs. Kubota and Pearce were presented to the MCCP but later withdrawn with TDC's consent. That argument is unsupported by the records. As submitted in TDC's Opening Brief, the *Magday* lawsuit concerned allegations against Straub and Drs. Kubota and Pearce, and TDC was not a party to the lawsuit; only Drs. Kubota and Pearce were entitled to enter into an agreement to

95804_1.DOC

36

EXHIBIT 4
PAGE 136

waive their MCCP rights. More importantly, the evidence submitted before the

District Court indicates that Drs. Kubota and Pearce never agreed to waive their

right to an MCCP hearing. In particular, Mr. Fried sent the MCCP panel a letter

indicating that *Straub* and the Magdays agreed to withdraw the pending MCCP

claim:

> *Both* parties to the above-noted matter have agreed to withdraw the
> pending MCCP claim scheduled to be heard on December 4, 1998.
> On behalf of his client, **Straub Clinic & Hospital**, Mr. Char has
> placed in writing his request, in which I concur, to take off the MCCP
> claim with the hope that we will be able to resolve this matter short of
> litigation.

*See* ER 2, Exh. "C" (emphasis added). Evident from the above letter is the fact that

Mr. Char only represented Straub, and any waiver or agreement that Mr. Char

entered into was solely on behalf of Straub, and not Drs. Kubota or Pearce.

Accordingly, the District Court erred in finding that the lack of hearing for

Drs. Kubota and Pearce is not determinative as to the doctors' legal liability.

### 3. The Magdays' Claim Against Drs. Kubota and Pearce Was Barred by the Statute of Limitations

Even if Drs. Kubota and Pearce were properly named as defendants to the

underlying action, which they were not, the statute of limitations would have

precluded any action against them. As with the lack of MCCP hearing defense,

Reliance takes the position that TDC is precluded from asserting this defense as a

result of settling the underlying tort action. For the reasons already set forth above,

EXHIBIT 4
PAGE 137

Reliance's position cannot be sustained.

Reliance also argues that, in any event, Magday's claims against Drs. Kubota and Pearce would have been saved by the relation back doctrine, *i.e.*, that the amended complaint filed against Drs. Kubota and Pearce on November 2, 1999 related back to the original complaint filed on February 4, 1999. However, as submitted in TDC's Opening Brief, it is unquestionable that the Magdays had "factual knowledge" of the elements necessary for their claim against Drs. Kubota and Pearce at or around the time of Magday's injury in September 1996 and that the initial complaint against Straub was filed on February 4, 1999, approximately five months after the two years statute of limitations had run. Therefore, the relation back doctrine is not applicable as the original complaint itself was untimely.

Moreover, although the filing of an MCCP claim generally tolls the statute of limitations, it only acts as a toll against the individual or entity that is a party to the MCCP claim. The MCCP claim made on July 31, 1998 only formally named Straub as a party, explaining that Straub was being named as the principal under the theories of *respondeat superior* and agency. Therefore, since Drs. Kubota and Pearce were never made parties to that MCCP claim, the statute of limitations as to any claim against them could not have been tolled.

EXHIBIT 4
PAGE 138

Accordingly, the District Court erred in finding that the Magdays' claims against Drs. Kubota and Pearce were not barred by the statute of limitations.

   4. <u>Even if Legal Liability is Established Against Drs. Kubota and Pearce, Such Liability Must be Properly Allocated</u>

Finally, even if legal liability could be established against Drs. Kubota and Pearce, and assuming three limits of liability were available under TDC's Policy, Reliance failed to set forth any evidence demonstrating that TDC's obligation would have been $3 million. In other words, Reliance failed to demonstrate the proportionate degree of liability that could be attributed to Straub and Drs. Kubota and Pearce. For example, as submitted in TDC's Opening Brief, if the degree of negligence was apportioned as 90% to Dr. Kubota and 10% to Dr. Pearce, Dr. Kubota would be obligated to pay $3.87 million ($4.3 million x 90%) and Dr. Pearce would be obligated to pay $430K ($4.3 million x 10%). Because each insured's Per-Claim Limit of Liability is $1 million, TDC's obligation under this hypothetical (and Reliance's theory) would be only $1.43 million ($1 million to Dr. Kubota; $430K to Dr. Pearce), not $3 million.[7]

Reliance apparently does not dispute that liability amongst Straub and Drs. Kubota and Pearce must be allocated to determine relative degrees of fault but

---

[7] Notwithstanding the fact that TDC set forth this argument at pages 19-20 of its Memorandum in Opposition to Reliance's Motion for Partial Summary Judgment (*see* SER 23 at 23-2 to 23-3), the District Court did not address this argument in the summary judgment order.

instead argues that under Hawaii Revised Statutes section 663-12 such allocation is only appropriate where a "disproportion of fault" is established:

> By its clear terms, the statute imposes a presumption that a joint tortfeasor's "pro rata" share will be apportioned in an "equal distribution" among the joint tortfeasors. Only if a disproportion of fault is established, rendering an equal distribution inequitable, will the relative degrees of fault be considered in determining the pro rata shares.

*See* Reliance's Answering Brief at 39. Reliance further argues that the burden was on TDC to prove a "disproportion of fault" and asserts that "TDC made no effort to meet this burden and presented no evidence whatsoever of a 'disproportion of fault' among the Hospital and the two physicians." *Id.* Reliance's assertion that it submitted no evidence of a disproportion of fault is simply false and as with its statement at page 34 of its Answering Brief ("TDC offered no rebuttal evidence or expert testimony in its opposition to Reliance's motion and effectively conceded the issue of legal liability") is nothing more than an obvious attempt to mislead this Court.

The uncontroverted facts of this case are that, in opposition to Reliance's Motion for Partial Summary Judgment, TDC submitted the credible expert testimony of Peggy Sale and Dr. Mauro opining that Rhonda Perry and Dr. Pearce acted properly in their respective care of Magday, which both the District Court and Reliance apparently chose to disregard. *See* SER 20. TDC's expert evidence is consistent with an allocation of liability apportioning 100% of the liability to Dr.

Kubota, thus making it inappropriate for the District Court to award Reliance $2 million in subrogation. If anything, the evidence indicates that TDC acted properly in paying the limits of one policy ($1 million) towards the settlement of the *Magday* claim.

Accordingly, assuming that the liability of Drs. Kubota and Pearce had been established, which it had not, the District Court erred in not properly allocating the relative degree of fault among Straub and Drs. Kubota and Pearce.

C.    The District Court Properly Denied Reliance's Motion for Summary Judgment as to Its Equitable Contribution Claim

It is well established that contribution applies only in cases where the "parties are under a common burden, obligation or liability." *Commercial Union Ins. Co. v. The Farmers Mut. Fire Ins. Co.*, 457 S.W.2d 224, 227 (Mo. 1970); *see also Employers Ins. of Wassau v. Musick, Peeler & Garrett*, 954 F.2d 575, 578 (9th Cir. 1992) (stating that "[i]f an individual pays more than her 'fair share of the common liability,' then an action for contribution will lie"); *Moisenko v. Volkswagen AG*, 10 F. Supp. 2d 853, 855 (W.D. Mich. 1998) (recognizing that the main purpose of a contribution action is to "ensure that a common burden of liability is equitably distributed among responsible parties").

Thus, to state a claim for contribution, a party must demonstrate that 1) common liability exists among the parties; and 2) compulsory payment or other discharge of more than the party's fair share of the common obligation. *See* 18

95804_1.DOC

41

EXHIBIT 4
PAGE 141

Am. Jur. 2d Contribution § 9 (1985).

The theory of equitable contribution is inapplicable here because TDC and Reliance shared no common liability in the underlying matter. In the context of insurance coverage by more than one insurer, it has widely been held that equitable contribution "applies only when co-insurers have covered the same insured and the same particular risk *at the same level of coverage*." *United States Fid. & Guar. Co. v. Federated Rural Elec. Ins. Corp.*, 37 P.3d 828, 832 (Okla. 2001) (emphasis added); *see also Reliance Nat'l Indem. Co. v. Gen. Star Indem. Co.*, 85 Cal. Rptr. 2d 627, 637 (App. 1999) ("Equitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share . . . , on the theory the debt it paid was *equally* and *concurrently* owed by the other insurers . . . "). Thus, as a general rule, "there is no contribution between a primary and excess carrier without a specific agreement to the contrary." *General Star*, 85 Cal. Rptr. 2d at 637 (holding contribution not available between primary and excess insurer); *see also United States Fid. & Guar. Co.*, 286 F.3d at 1218 (no right of contribution between primary and excess insurer absent a contract); *Federated Rural Electric*, 37 P.3d at 832 (generally no right of contribution between a primary and excess insurer); *Iowa Nat'l Mut. Ins. Co. v. Universal Underwriters Ins. Co.*, 150 N.W.2d 233, 237 (Minn. 1967) (same); *United States Fid. & Guar. Co. v. Cont'l Cas. Co.*, 556 N.E.2d 671, 675 (Ill. App. 1990)

EXHIBIT 4
PAGE 142

(doctrine of equitable contribution does not apply to primary/excess insurer issues).

The rationale for denying a claim of equitable contribution as between primary and excess insurers was explained by the Oklahoma Supreme Court:

> Equitable contribution is the right to recover, not from a party primarily liable for the loss, but from a co-obligor or co-insurer who shares *common liability* with the party seeking contribution. ***The doctrine applies only when co-insurers have covered the same insured and the same particular risk at the same level of coverage.*** The right of contribution is not derivative of the rights of the insured, but belongs to each insurer independently to seek reimbursement from a co-insurer those sums which were paid in excess of an insurer's proportionate share of the common obligation. ***Therefore two primary insurers will have the right of contribution from each other, but in the absence of an agreement there is generally no right of contribution between a primary and excess insurer, because they do not share a common obligations with common rights.***

*Federated Rural Electric*, 37 P.3d at 832 (emphasis added).

*General Star* illustrates these distinctions. There, a primary insurer ("Reliance National") brought a suit against an excess insurer ("General Star") seeking indemnity or contribution for amounts paid on a claim for a personal injury that occurred at a music festival. After concluding that Reliance National's obligation was primary and General Star's obligation was excess, the court rejected Reliance National's claim for contribution. *See Reliance*, 85 Cal. Rptr. 2d at 637. The court, noting that there is generally no contribution between a primary and excess carrier, explained that the insurers "did not share the same level of coverage" since "General Star had no obligation for any part of the loss, damage,

EXHIBIT 4
PAGE 143

or defense covered by" Reliance National's insurance policy. *Id.; see also Associated Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 81 A.D.2d 949, 950 (N.Y. App. Div. 1981) (rejecting contribution claim where there was no common or concurrent liability between the parties, since the insurance contracts were independent of each other).

Here, too, no common burden, obligation or liability exists between TDC and Reliance. Reliance argues that TDC is liable to Reliance for $2 million in contribution based upon the respective insurance policies issued by TDC and Reliance. In its Complaint, Reliance asserts that TDC, as the "primary insurer" was obligated under its policies to pay the first $3 million of the $4.3 million *Magday* Settlement. *See* ER 1 at ¶ 18). Reliance further asserts that it, as the "excess insurer," was only obligated to pay the remaining $1.3 million of the *Magday* Settlement. *See id.* at 3 ¶ 13. Therefore, on the face of the allegations contained in the Complaint, the $2 million Reliance seeks in contribution does not arise from a "common burden, obligation or liability," but instead arises from a purported obligation exclusive to TDC, pursuant to TDC's "primary" policies, and independent of Reliance's obligations under its "excess" policies. *Cf., e.g., Associated Mutual*, 81 A.D.2d at 950; *Commercial Union*, 457 S.W.2d at 227. Accordingly, the theory of equitable contribution is inapplicable here.

EXHIBIT 4
PAGE 144

Reliance's assertion that *General Star*'s holding "is limited to a theory of contribution asserted by a *primary* insurer against an *excess* insurer, not the other way around" Reliance's Opening Brief at 42 is without merit.  In the primary/excess insurer context, the basic requirement of a "common liability" to support a contribution claim can simply not be met, regardless of which insurer is the plaintiff.  Reliance's suggestion that an insurer would otherwise be without a remedy is also incorrect, as *General Star* itself recognized that, where different insurers cover differing risks or liabilities, they may proceed against one another under the theory of subrogation rather than contribution.  *General Star,* 85 Cal. Rptr. 2d at 636.

The cases cited by Reliance for the proposition that some courts have "recognized that an excess insurer may obtain contribution from a breaching primary insurer" are inapposite.  For example, *Colonial Insurance Company of California v. American Hardware Mutual Insurance Company*, 969 P.2d 796 (Colo. Ct. App. 1998), did not involve policies that were explicitly for primary or excess coverage of the same risk.  The court did not examine the requirements for or the distinction between causes of action for subrogation and contribution and appeared to rely solely upon cases in which permitted contribution between insurers covering the same risk.  *See Colonial,* 969 P.2d at 801 ("Our supreme court has determined that in cases in which a liability insurer voluntarily pays *more*

EXHIBIT 4
PAGE 145

*than its share* of the loss in the defense of an insured, the insurer is entitled to demand contribution of its defense costs . . . .") (emphasis added). In addition, the primary case cited by *Colonial* for support of this proposition, *National Casualty Company v. Great Southwest Fire Insurance Co.*, 833 P.2d 741 (Colo. 1992), involved only insurers covering common liabilities, and did not discuss cases involving differing levels of risk. Reliance's Opening Brief also misstates the holding of *Insurance Company of North America v. American Economy Insurance Company*, 746 F.Supp. 59 (W.D. Okla. 1990). In that case, the court merely granted the plaintiff's motion for summary judgment "insofar as it has argued the priorities of the policies." Indeed, the court explicitly commented upon the absence in the plaintiff's complaint of a clear theory of recovery, stating that the court agreed with the defendant "that the matter is essentially equitable and in the nature of *subrogation or contribution*. Although the Complaint does not specify or otherwise indicate the plaintiff's theory, the nature of the action is equitable because it requires the Court to determine the rights of the parties *inter se*." *American Economy Insurance*, 746 F.Supp. at 61-62. Thus, the court recognized but did not discuss the requirements of or distinctions between the two theories, much less apply the theories to the case before it. Similarly, in *LeMars v. Farm &*

EXHIBIT 4
PAGE 146

*City Insurance Co.*, 494 N.W.2d 216 (Iowa 1992) the court affirmed the lower courts' determination that a primary policy had to be exhausted before the umbrella policy could be reached, but did not discuss the theories of contribution or subrogation, or their requirements. It may well be that the cases arose from misapplication of the theories because, while courts have observed that the concepts are distinct, they have also commented on confusion surrounding the two concepts. *See, e.g., Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1291-92 (1998). Nevertheless, these cases hardly stand for the proposition for which Reliance cites them.

Because Reliance failed to state a cause of action for equitable contribution, the District Court correctly denied Reliance's motion for summary judgment as to that cause of action.

III.   CONCLUSION

Based upon the foregoing, TDC respectfully requests that this Honorable Court reverse (1) the June 17, 2003 Order Granting Plaintiff's Motion for Dismissal of Counterclaim for Set Off; (2) the September 25, 2003 Order Denying Defendant's Motion for Summary Judgment; (3) the September 25, 2003 Order Granting in Part and Denying in Part Plaintiff's Motion for Summary Judgment;

EXHIBIT 4
PAGE 147

and (4) the January 29, 2004 Order Denying Defendant The Doctors' Company's

Motion for Reconsideration.

DATED:    Honolulu, Hawaii, _____ OCT 27 2004 _____

_____
DAROLYN H. LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT

Attorneys for Defendant-Counter-
Claimant-Appellant-Cross-Appellee
THE DOCTORS' COMPANY

## STATEMENT REGARDING ORAL ARGUMENT

The Doctors' Company objects to Reliance's request that oral argument be heard only on the issue which Reliance's own appeal is based.  The Doctors' Company respectfully requests that if this Court deems oral argument appropriate, that oral argument be held for all issues on appeal in this case.

DATED:     Honolulu, Hawaii, _____ OCT 27 2004 _____

_____

DAROLYN H. LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT

Attorneys for Defendant-Counter-
Claimant- Appellant-Cross-Appellee
THE DOCTORS' COMPANY

95804_1.DOC

EXHIBIT 4
PAGE 149

## CERTIFICATE OF COMPLIANCE

I hereby certify that Defendant--Counter-Claimant-Appellant-Cross-Appellee The Doctors' Company's Combined Reply and Answering Brief does not exceed 14,000 words. The actual word count of the entire text of the brief, exclusive of the cover page, the tables of contents and authority, the statement regarding oral argument, this certification, and the certificate of service is <u>12,051</u> words.

DATED:     Honolulu, Hawaii, _____ <u>OCT 2 7 2004</u> _____

<u>Darolyn H. Funk</u>
DAROLYN H. LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT

Attorneys for Defendant-Counter-Claimant- Appellant-Cross-Appellee
THE DOCTORS' COMPANY

95804_i.DOC

EXHIBIT 4
PAGE 150

(Dist. Ct. Civil No. CV-02-00159 HG-BMK)

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RELIANCE INSURANCE CO., (in Liquidation), a Pennsylvania corporation, | ) ON APPEAL FROM THE UNITED ) STATES DISTRICT COURT FOR ) THE DISTRICT OF HAWAII ) |
| Plaintiff-Counter-Defendant-Appellee-Cross-Appellant, | ) THE HONORABLE HELEN ) GILLMOR ) |
| vs. | ) ) |
| THE DOCTORS' COMPANY, | ) ) |
| Defendant-Counter-Claimant-Appellant-Cross-Appellee. | ) ) ) |

CERTIFICATE OF SERVICE

The undersigned hereby certifies that two (2) true and correct copies of the foregoing document were duly served upon the following individuals via hand delivery (HD) and/or via U.S. Postal Mail, postage prepaid (M), to their last known business address on the date of filing:

ELTON JOHN BAIN, ESQ.                    (HD)
E. MASON MARTIN III, ESQ.
Kessner Duca Umebayashi Bain
 & Matsunaga
Central Pacific Plaza, 19th Floor
220 South King Street
Honolulu, Hawaii 96813

and

95804_1.DOC

EXHIBIT 4
PAGE 151

PAUL F. DONSBACH, ESQ.          (M)
CHRISTOPHER D. GLOS, ESQ.
Kutak Rock LLP
18201 Von Karman, Suite 1100
Irvine, CA 92614-1077

Attorneys for Plaintiff
RELIANCE INSURANCE COMPANY
(IN LIQUIDATION)

Pursuant to Rule 25(a)(2)(B)(i) and Rule 25(d)(2) of the Federal Rules

of Appellate Procedure and Rule 25-2 of the Circuit Court Rules for the Ninth

Circuit, the undersigned counsel also hereby certifies that the foregoing document

was hand-delivered to a postal clerk at the United States Post Office, postage

prepaid, for mailing to the Clerk of the United States Court of Appeals for the

Ninth Circuit Court, on _____ OCT 2 7 2004 _____, addressed as follows:

Clerk, U.S. Court of Appeals
   for the Ninth Circuit
P.O. Box 193939
San Francisco, CA 94119-3939

DATED:    Honolulu, Hawaii, _____ OCT 2 7 2004 _____

_____
DAROLYN H. LENDIO
PHILIP W. MIYOSHI
BECKY T. CHESTNUT

Attorneys for Defendant-Counter-
Claimant- Appellant-Cross-Appellee
THE DOCTORS' COMPANY

95804_1.DOC

EXHIBIT 4
PAGE 152